Nos. 25-4673 (L) and 25-4674

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———————————————

UNITED STATES OF AMERICA,
Plaintiff-Appellant
v.
LETITIA JAMES,
Defendant-Appellee

———————————————

UNITED STATES OF AMERICA,
Plaintiff-Appellant
v.
JAMES COMEY, JR.,
Defendant-Appellee

———————————————

On Appeal from the United States District Court for the
Eastern District of Virginia, Nos. 2:25-CR-122, 1:25-CR-272
(Hon. Cameron McGowan Currie (D.S.C.))

———————————————

### OPENING BRIEF FOR THE UNITED STATES

———————————————

PAMELA BONDI
  Attorney General

TODD W. BLANCHE
  Deputy Attorney General

HENRY C. WHITAKER
  Counselor to the Attorney General
950 Pennsylvania Ave. NW
Washington, D.C. 20530
Tel: (202) 445-8942
henry.whitaker@usdoj.gov

## TABLE OF CONTENTS

STATEMENT OF JURISDICTION ............................................................... 1

INTRODUCTION ....................................................................................... 1

STATEMENT OF THE ISSUES ................................................................. 3

STATEMENT OF THE CASE ..................................................................... 3

    A.    Statutory Background ................................................................. 3

    B.    Factual Background ................................................................... 6

    C.    Prior Proceedings...................................................................... 9

    D.    Rulings Under Review ............................................................. 11

SUMMARY OF ARGUMENT ................................................................... 11

ARGUMENT .............................................................................................. 16

I.     STANDARD OF REVIEW ................................................................ 16

II.    HALLIGAN WAS VALIDLY APPOINTED AS INTERIM U.S.
      ATTORNEY UNDER 28 U.S.C. § 546 ............................................ 16

    A.    Under Section 546(a), the Attorney General's appointment of
         Halligan as interim U.S. Attorney was valid because the office was
         vacant and the Senate had not refused to give its advice and
         consent to Halligan's appointment ............................................ 16

    B.    The district court erred in holding that the Attorney General's
         appointment of Halligan as interim U.S. Attorney under Section
         546(a) was invalid .................................................................. 18

        1.  Section 546(c)(2)'s time limit applies on a per-appointment
            basis and does not limit the Attorney General's authority to
            make interim appointments to a total of 120 days ................. 18

2. Section 546(d)'s authorization of court-appointed U.S. Attorneys does not impliedly displace the Attorney General's parallel authority in Section 546(a) ........................................ 23

3. The statutory history of Section 546 confirms that Halligan's appointment was valid ........................................................ 31

III. THE INDICTMENTS ARE VALID REGARDLESS OF THE VALIDITY OF HALLIGAN'S APPOINTMENT ........................... 37

A. Halligan validly obtained and signed the indictments as an attorney for the government ....................................................... 37

B. Even if Halligan were not a government attorney, her actions in securing and signing the indictments would be entitled to de facto validity ................................................................................. 42

C. The Attorney General has ratified the indictments, curing any defect .................................................................................. 46

D. Any defect in securing the indictments was harmless ................. 52

CONCLUSION ........................................................................................ 56

CERTIFICATE OF COMPLIANCE .......................................................... 57

CERTIFICATE OF SERVICE .................................................................. 58

# TABLE OF AUTHORITIES

## Cases

*Agostini v. Felton*, 521 U.S. 203 (1997) ........................................................... 45

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) .................... 52, 53, 55

*Brnovich v. DNC*, 594 U.S. 647 (2021) ........................................................... 36

*Buckley v. Valeo*, 424 U.S. 1 (1976)..........................................................42, 45

*Costello v. United States,* 350 U.S. 359 (1956) ................................................. 53

*Dalton v. Specter*, 511 U.S. 462 (1994) ........................................................... 44

*David v. King*, 109 F.4th 653 (4th Cir. 2024)................................................. 41

*Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018)................................................. 34

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) ..................... 34

*FCC v. Fox Television Stations*, 556 U.S. 502 (2009) ....................................... 30

*FEC v. NRA Pol. Victory Fund*, 513 U.S. 88 (1994) ...................................47, 49

*Guedes v. ATF*, 356 F. Supp. 3d 109 (D.D.C. 2019) ...................................... 26

*Hale v. Henkel*, 201 U.S. 43 (1906) ................................................................ 53

*Hamling v. United States*, 418 U.S. 87 (1974) ................................................. 54

*In re Grand Jury Proceedings*, 671 F. Supp. 5 (D. Mass. 1987) .............. 32, 33, 36

*In re Sealed Case*, 838 F.2d 476 (D.C. Cir. 1988) ............................................. 5

*Kaley v. United States*, 571 U.S. 320 (2014) ................................................... 52

*Kelley v. United States*, 989 F.3d 67 (1st Cir. 2021)......................................... 53

*Little v. United States*, 524 F.2d 335 (8th Cir. 1975) ........................................ 39

*Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235 (1964) .......... 40

*Morrison v. Olson*, 487 U.S. 654 (1988) ....................................................... 30

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) ......................................... 21

*Muskrat v. United States*, 219 U.S. 346 (1911) ............................................... 30

*Nadler v. Mann*, 951 F.2d 301 (11th Cir. 1992) ............................................... 4

*People ex rel. Bush v. Collins*, 7 Johns. 549 (N.Y. Sup. Ct. 1811) ...................... 43

*Phillips v. Payne*, 92 U.S. 130 (1876) ........................................................... 43

*Rivera v. Garland*, 108 F.4th 600 (8th Cir. 2024) ........................................... 22

*Robers v. United States*, 572 U.S. 639 (2014) ................................................. 21

*Ryder v. United States*, 515 U.S. 177 (1995) ...................................... 43, 44, 45

*Salomon-Guillen v. Garland*, 123 F.4th 709 (4th Cir. 2024) ...................... 22, 33

*Seila Law LLC v. CFPB*, 591 U.S. 197 (2020) ............................................... 27

*Stirone v. United States*, 361 U.S. 212 (1960) ............................................... 55

*Stumm v. Wilkie*, 796 F. App'x 292 (7th Cir. 2019) ....................................... 42

*Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020) .......................................... 31

*Trump v. United States*, 603 U.S. 593 (2024) ........................................... 3, 30

*United States v. Bolden*, 325 F.3d 471 (4th Cir. 2003) .................................... 16

*United States v. Council*, 77 F.4th 240 (4th Cir. 2023) ................................... 16

*United States v. Crysopt Corp.*, 781 F. Supp. 375 (D. Md. 1991) ...................... 49

*United States v. Derrick*, 163 F.3d 799 (4th Cir. 1998) ..................................... 53

*United States v. Easton*, 937 F.2d 160 (5th Cir. 1991) ..................................... 38

*United States v. Friedman*, 649 F.2d 199 (3d Cir. 1981) ................................... 50

*United States v. Gaubert*, 499 U.S. 315 (1991) ............................................... 25

*United States v. Gillespie*, 666 F. Supp. 1137 (N.D. Ill. 1987) ......................... 49

*United States v. Giraud*, 795 F. Supp. 3d 560 (D.N.J. 2025)........................26, 32

*United States v. Hilario*, 218 F.3d 19 (1st Cir. 2000) ........................... 24, 28, 30

*United States v. Italiano*, 894 F.2d 1280 (11th Cir. 1990) ...........................49, 50

*United States v. Milstein*, 401 F.3d 53 (2d Cir. 2005) ...................................... 49

*United States v. Nixon*, 418 U.S. 683 (1974) .................................................. 38

*United States v. Ojedokun*, 16 F.4th 1091 (4th Cir. 2021)...........................49, 50

*United States v. Promise*, 255 F.3d 150 (4th Cir. 2001) ................................... 55

*United States v. Smith*, 962 F.3d 755 (4th Cir. 2020).................................26, 53

*United States v. Suescun*, 237 F.3d 1284 (11th Cir. 2001) ............................... 55

*United States v. Trevino*, 299 F. App'x 384 (5th Cir. 2008)............................. 38

*United States v. Williams*, 504 U.S. 36 (1992) ................................................ 52

*Wash. All. Of Tech. Workers v. DHS*, 50 F.4th 164 (D.C. Cir. 2022) ................ 33

*Wille v. Lutnick*, 158 F.4th 539 (4th Cir. 2025)..............................46, 47, 48, 52

## **Statutes and Rules**

5 U.S.C. § 101.................................................................................... 3

5 U.S.C. § 105 ................................................................................. 3

5 U.S.C. § 3345 ..................................................................... 1, 5, 26

5 U.S.C. § 3346 ............................................................................. 30

15 U.S.C. § 18a ............................................................................. 25

18 U.S.C. § 1001 ............................................................................. 7

18 U.S.C. § 1014 ............................................................................. 7

18 U.S.C. § 1344 ............................................................................. 7

18 U.S.C. § 1505 ............................................................................. 7

18 U.S.C. § 3231 ............................................................................. 1

18 U.S.C. § 3288 ..................................................................... 50, 51

28 U.S.C. § 501 ............................................................................... 3

28 U.S.C. § 503 ............................................................................... 3

28 U.S.C. § 508 ..................................................................... 25, 27

28 U.S.C. § 509 ...................................................................... passim

28 U.S.C. § 510 ...................................................................... passim

28 U.S.C. § 515 ...................................................................... passim

28 U.S.C. § 516 ................................................................. 6, 38, 47

28 U.S.C. § 517 ............................................................................... 6

28 U.S.C. § 518 ................................................................. 6, 38, 47

28 U.S.C. § 519 ................................................................... 6, 38

28 U.S.C. § 533 ................................................................6, 39

28 U.S.C. § 541 ...............................................................passim

28 U.S.C. § 542 .................................................................. 54

28 U.S.C. § 543 .................................................................. 38

28 U.S.C. § 546 ...............................................................passim

28 U.S.C. § 547 ................................................................... 4

Fed. R. App. P. 4 ................................................................. 1

Fed. R. Crim. P. 1 .............................................................. 38

Fed. R. Crim. P. 6 ......................................................... 37, 39, 42

Fed. R. Crim. P. 7 ..........................................................37, 42

Fed. R. Crim. P. 52 ............................................................ 52

Pub. L. No. 99-646, 100 Stat. 3592 (1986) .................................. 32

Pub. L. No. 109-177, 120 Stat. 192 (2006) .................................. 33

Pub. L. No. 110-34, 121 Stat. 224 (2007) ................................... 33

U.S. Const. ..............................................................4, 16, 30, 44

8 C.F.R. § 1003.1 (2022) ..................................................... 22

## Other Authorities

16 Op. Att'y Gen. 656 (1880) ................................................. 20

132 Cong. Rec. H11294 (daily ed. Oct. 17, 1986) ......................... 36

153 Cong. Rec. S3227 (daily ed. Mar. 15, 2007) .......................... 34

153 Cong. Rec. S3250 (daily ed. Mar. 19, 2007) ...................................32, 34

153 Cong. Rec. S3301 (daily ed. Mar. 20, 2007) ......................................... 34

153 Cong. Rec. S3302 (daily ed. Mar. 20, 2007) ......................................... 34

*Designating an Acting Attorney General*, 42 Op. O.L.C. 182 (2018) ................. 26

Henry B. Hogue, Cong. Rsch. Serv. RS21412, *Temporarily Filling Presidentially Appointed, Senate-Confirmed Positions* (Jan. 25, 2008) .................................. 32

Floyd R. Mechem, *A Treatise on the Law of Public Offices and Officers* (1890)..... 20

Memorandum from Samuel A. Alito, Jr., Deputy Ass't Att'y Gen., to William P. Tyson, Director, Exec. Office for U.S. Att'ys (Nov. 13, 1986) .............. 35

*Restoring Checks and Balances in the Confirmation Process of United States Attorneys: Hearing Before the Subcomm. on Comm'l & Admin. Law of the H. Comm. on the Judiciary*, 110th Cong. 132 (2007) ........................................................ 34

*Term of a Member of the Miss. River Comm'n*, 23 Op. O.L.C. 123 (1999)........... 20

## STATEMENT OF JURISDICTION

The United States appeals from the district court's orders dismissing the indictments against Defendants-Appellees Letitia James and James Comey, Jr. The district court had jurisdiction under 18 U.S.C. § 3231. The district court dismissed the indictments on November 24, 2025. J.A. 117, J.A. 307-308. The government filed timely notices of appeal on December 19, 2025. J.A. 118, J.A. 309; *see* Fed. R. App. P. 4(b)(1)(B)(i). This Court has jurisdiction under 18 U.S.C. § 3731.

## INTRODUCTION

Congress has provided for a series of overlapping statutory tools to deal with vacancies in the office of U.S. Attorney. The Attorney General may appoint an interim U.S. Attorney to a 120-day term under 28 U.S.C. § 546(a). Section 546(d) says that the district court may also appoint an interim U.S. Attorney in certain circumstances. Still other ways of designating officials to perform the functions of U.S. Attorney exist in the Federal Vacancies Reform Act and in the statutes that confer on the Attorney General broad authority to delegate litigation authority to her subordinates. *See, e.g.*, 5 U.S.C. § 3345; 28 U.S.C. § 515.

Here, the Attorney General invoked one of those tools—Section 546(a)—to appoint Lindsey Halligan to serve as interim U.S. Attorney for the Eastern

District of Virginia, where she obtained and signed the grand-jury indictments against defendants Letitia James and James Comey. The district court, however, held that the district court's authority under § 546(d), where it applies, ousts the Attorney General of her appointment authority under 546(a). That holding mistakenly aggrandizes the district court's appointment authority at the expense of the Executive Branch's, which is where the Constitution assigns authority to prosecute crime. The court's holding adds extratextual limits on the Attorney General's appointment authority that are nowhere to be found in the statute, contravenes the practice of administrations of both parties since the statute's inception, and needlessly creates interbranch conflict where the statute provides for harmony. There can be no dispute the President can remove even a judicially appointed interim U.S. Attorney, yet under the district court's view, the Executive Branch has no authority, following expiration of an interim U.S. Attorney's 120-day term, to appoint the very officials the President may remove.

The district court compounded those errors by imposing the strong medicine of dismissing indictments duly returned by two grand juries. The Attorney General, even apart from Section 546(a), has broad authority to employ subordinates to litigate on behalf of the federal government and to prosecute crime. The appointment error alleged here therefore boils down to the idea that the Attorney General cited the wrong statute in authorizing

Halligan to seek and obtain the indictments at issue here. Even if that paperwork mistake was legal error, it was not one that prejudiced defendants; and it has in any event been cured several times over by Attorney General orders ratifying Halligan's actions before the grand juries and her signature on the indictments.

The Court should reverse.

## STATEMENT OF THE ISSUES

1.      Whether the Attorney General's appointment of Lindsey Halligan as interim U.S. Attorney for the Eastern District of Virginia was lawful under 28 U.S.C. § 546.

2.      If the appointment of Lindsey Halligan as interim U.S. Attorney was invalid, whether the indictments are nonetheless valid.

## STATEMENT OF THE CASE

### A.    Statutory Background

The Department of Justice is an executive department of the United States. 5 U.S.C. §§ 101, 105; 28 U.S.C. § 501. The Attorney General "is the head of the Department of Justice," 28 U.S.C. § 503, and she "acts as the President's chief law enforcement officer," *Trump v. United States*, 603 U.S. 593, 620 (2024) (quotation omitted). U.S. Attorneys, appointed for each federal judicial district, act as "the chief federal law enforcement official[s] for the

judicial district[s] [they] serve[]," subject to the Attorney General's supervision. *Nadler v. Mann*, 951 F.2d 301, 305 (11th Cir. 1992); *see* 28 U.S.C. § 547.

Congress has provided for the appointment of U.S. Attorneys for four-year terms by the President with the advice and consent of the Senate. 28 U.S.C. § 541(a)-(b). But because U.S. Attorneys are "inferior officer[s]" subject to the control of the Attorney General and, ultimately, the President, *Myers v. United States*, 272 U.S. 52, 159 (1926), Congress may also "by Law" vest the power to appoint U.S. Attorneys in "the President alone, in the Courts of Law, or in the Heads of Departments," such as the Attorney General. U.S. Const. art. II, § 2, cl. 2.

Exercising that power, Congress has authorized the appointment of U.S. Attorneys on an interim basis, in the absence of a Senate-confirmed officer, under 28 U.S.C. § 546. Section 546(a) supplies the topline grant of authority: "Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant." Section 546(b) provides a single exception: "The Attorney General shall not appoint as United States attorney a person to whose appointment by the President to that office the Senate refused to give advice and consent."

Section 546(c) provides a time limit on an interim appointment: "A person appointed as United States attorney under this section may serve until the earlier of—(1) the qualification of a United States attorney for such district appointed by the President under section 541 of this title," *i.e.*, Senate confirmation, or "(2) the expiration of 120 days after appointment by the Attorney General under this section." Section 546(d) establishes yet another fallback option: "If an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled." Regardless of appointment, "[e]ach United States attorney is subject to removal by the President." 28 U.S.C. § 541(c); *see In re Sealed Case*, 838 F.2d 476, 521 (D.C. Cir. 1988) (R.B. Ginsburg, J., dissenting) ("Under § 546, of course, the executive branch is free to replace the interim U.S. Attorney at any time.").

In the absence of a confirmed or interim U.S. Attorney, Congress has authorized designation of an acting U.S. Attorney. In particular, under the Federal Vacancies Reform Act (FVRA), certain individuals may temporarily perform the duties of vacant offices that require Senate confirmation, such as U.S. Attorney. *See* 5 U.S.C. § 3345(a).

Finally, Congress has vested the Attorney General herself with "[a]ll functions" of Department of Justice officers and employees, including U.S. Attorneys, 28 U.S.C. § 509, plus the general authority to conduct and supervise

5

litigation on behalf of the United States, *id.* §§ 516-519.  Congress has further allowed the Attorney General to delegate those powers to any Department of Justice officer or employee, *id.* § 510, and she may appoint attorneys to "conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings . . . ," which United States attorneys are authorized by law to conduct," *id.* § 515(a).  The Attorney General may also "retain[]" "special assistant[s]" or "special attorney[s]," *id.* § 515(b), and appoint "officials . . . to detect and prosecute crimes against the United States," *id.* § 533(1).

### B.    Factual Background

On January 20, 2025, the incumbent U.S. Attorney for the Eastern District of Virginia resigned.  J.A. 92, J.A. 285-286.  The next day, the Acting Attorney General appointed Erik Siebert interim U.S. Attorney under Section 546(a).  J.A. 92, J.A. 286.  Siebert's initial appointment expired 120 days later, on May 21, 2025.  J.A. 92, J.A. 286; *see* 28 U.S.C. § 546(c)(2).  The judges of the Eastern District of Virginia reappointed him under Section 546(d).  J.A. 92, J.A. 286.

On September 19, 2025, Siebert departed the U.S. Attorney's Office.  J.A. 92, J.A. 286.  The next day, the President announced his intention to nominate Lindsey Halligan as U.S. Attorney with the Senate's advice and consent under 28 U.S.C. § 541(a).  Donald J. Trump (@realDonaldTrump), Truth Social (Sept. 20, 2025), https://tinyurl.com/4vmk765f.  To lead the office in the interim, on

September 22, the Attorney General named Halligan interim U.S. Attorney under Section 546(a).  J.A. 93, J.A. 287 (quoting Att'y Gen. Order No. 6402-2025).  The Senate received Halligan's nomination on September 30.  PN559 – Lindsey Robyn-Michelle Halligan – Department of Justice, Congress.gov, https://tinyurl.com/5fpmud7y.  The nomination was neither confirmed nor rejected during the session at which it was made, and it was returned to the President on January 3, 2026.  *Id.*

On September 25, 2025, a grand jury in the Eastern District of Virginia returned a two-count indictment charging Comey with making false statements to Congress, in violation of 18 U.S.C. § 1001(a)(2); and obstructing a congressional proceeding, in violation of 18 U.S.C. § 1505.  J.A. 28-29.  The grand jury found probable cause that Comey falsely testified under oath in a Senate hearing that, during his time as Director of the FBI, he "had not 'authorized someone else at the FBI to be an anonymous source in news reports' regarding an FBI investigation" when he in fact had given such authorization.  J.A. 28.  On October 9, a grand jury in the Eastern District of Virginia returned an indictment charging James with bank fraud, in violation of 18 U.S.C. § 1344; and making false statements to a financial institution, in violation of 18 U.S.C. § 1014.  J.A. 142-146.  The grand jury found probable cause that James fraudulently misrepresented on a mortgage loan application that she intended to

use the property as a secondary residence when she in fact intended to and did use it as a rental investment property.  J.A. 143.  Halligan was the only government attorney to sign both indictments.  J.A. 29, J.A. 146.

On October 31, 2025, to address any doubt about the validity of Halligan's appointment to lead the U.S. Attorney's Office, the Attorney General appointed Halligan under 28 U.S.C. §§ 509, 510, and 515 to the additional position of Special Attorney, effective September 22, 2025, and ratified her employment as an attorney of the Department of Justice from that date forward.  J.A. 38.  The Attorney General also ratified Halligan's actions in obtaining and signing the indictments at issue in these appeals.  J.A. 38-39.

The appointment as Special Attorney gave Halligan authority to conduct any kind of proceeding in the Eastern District of Virginia, and it further specified that if a court were to conclude that a Special Attorney appointment must be limited to specific matters, Halligan was authorized to conduct and supervise the particular prosecutions that are the subject of these appeals.  J.A. 38.

On November 14, 2025, the Attorney General issued additional ratification orders stating that she had "reviewed the entirety of the record . . . available to the government" and "ratif[ied] Ms. Halligan's actions before the grand jury and her signature on the indictment[s] returned."  J.A. 50, J.A. 282.

On January 20, 2026—120 days after the Attorney General appointed her interim U.S. Attorney—Halligan's term expired under Section 546(c)(2). Halligan departed the Department of Justice the following day.

## C.    Prior Proceedings

On October 20, 2025, Comey moved to dismiss the indictment against him with prejudice on the ground that Halligan had been invalidly appointed as interim U.S. Attorney under 28 U.S.C. § 546.  J.A. 13.  And on October 24, James moved to dismiss the indictment against her on similar grounds.  J.A. 131.  The motions were transferred to Senior Judge Cameron McGowan Currie of the District of South Carolina.  J.A. 14, J.A. 131.  After a hearing, the district court dismissed the indictments against Comey and James without prejudice.  J.A. 117, J.A. 307-308.

1.    The district court concluded that the Attorney General's authority under Section 546 to appoint an interim U.S. Attorney lasts for "a total of 120 days" from when she first invokes her authority under that statute after the departure of a Senate-confirmed U.S. Attorney.  J.A. 105, J.A. 297.  It further concluded that if the position remains vacant at the end of the 120-day period, the district court has exclusive authority to make further interim appointments until the President's nominee is confirmed by the Senate.  J.A. 105, J.A. 297-298.  Under that reading of the statute, the Attorney General's authority to

appoint an interim U.S. Attorney under Section 546 ended on May 21, 2025—
when Siebert's interim appointment expired after 120 days—and her interim
appointment of Halligan on September 22, 2025, was therefore invalid.  J.A.
105, J.A. 298.

2.     Having concluded that Halligan's appointment was invalid, the
district court dismissed the indictments without prejudice.  J.A. 105-117, J.A.
299-308.  It stated that dismissal was warranted because Halligan's unlawful
appointment rendered void *ab initio* her appearing before the grand juries and
obtaining the indictments against Comey and James.  J.A. 107-108, J.A. 299-
300.

The district court rejected the government's argument that Halligan
validly obtained and signed the indictments as an attorney for the government,
regardless of her proper title.  J.A. 108-109, J.A. 300-301.  It further rejected the
government's argument that Halligan's actions are entitled to de facto validity,
concluding that the de facto officer doctrine does not apply when an officer's
appointment violates the Appointments Clause.  J.A. 110-111, J.A. 302-304.  It
also rejected the government's argument that the indictments were valid because
the Attorney General ratified Halligan's actions before the grand juries and her
signature on the indictments.  J.A. 113-115, J.A. 305-306.

Finally, the district court rejected the government's argument that the grand juries' independent decisions to indict Comey and James rendered any error in Halligan's appointment harmless. J.A. 112, J.A. 304-305. It viewed the presentation to the grand juries by Halligan as not susceptible to harmless-error review because her improper title rendered the proceedings "fundamentally unfair." J.A. 112, J.A. 304.

The court thus dismissed the indictments without prejudice. J.A. 115-117, J.A. 306-308.

### D.    Rulings Under Review

The United States appeals the district court's orders dismissing the indictments against Comey and James. J.A. 89-117, J.A. 283-308.

## SUMMARY OF ARGUMENT

1.    The district court erred in concluding that Halligan was not validly appointed as U.S. Attorney for the Eastern District of Virginia. Section 546(a)'s plain text authorizes the Attorney General to appoint a U.S. Attorney in any district with a vacancy, as there was in the Eastern District of Virginia when she appointed Halligan on September 22, 2025. The Attorney General's selection complied with the sole restriction placed upon her authority by Section 546(b): the Senate had not refused to confirm Halligan.

The district court erred in reading into the statute additional, extratextual limits on that authority. Section 546(c)(2) provides that "[a] person appointed as United States attorney" under Section 546(a) "may serve until . . . the expiration of 120 days after appointment." The court read subsection (c)(2) as authorizing the Attorney General to make interim appointments only for "a total of 120 days" from when she first invokes Section 546(a) after the departure of a Senate-confirmed U.S. Attorney, J.A. 105, J.A. 297, but that is not what the statute says. The 120-day period applies on a per-appointment basis and defines the duration of the appointee's term (*i.e.*, when the appointee "may serve until")—not the duration of the Attorney General's appointment authority. 28 U.S.C. § 546(c)(2). The district court's contrary approach reads extra words into the statute, as if it said that an interim appointment lasts until the expiration of 120 days after "the initial appointment by the Attorney General."

The district court also was wrong to conclude that Section 546(d) impliedly displaces the Attorney General's authority to make interim appointments under subsection (a). Section 546(a) is explicit that subsection (b) serves as the only limit on the Attorney General's authority to fill a U.S. Attorney vacancy with an interim appointment. If Congress had intended subsection (d) to serve as an additional constraint, it could easily have written "except as provided in subsections (b) *and (d)* . . . ." It did not.

The district court tethered its interpretation to subsection (d)'s use of the word "until," finding that subsection (d) defines the duration of the district court's authority to make appointments, which lasts "until" Senate confirmation. But subsection (d) instead describes the durational limit of the court-appointed U.S. Attorney's term—she is appointed "*to serve until*" the vacancy is filled. And Section 546(d) says that the district court "may appoint" a U.S. attorney, not "shall appoint," and certainly not "*only* shall appoint." Where a court-appointed U.S. attorney vacates the position before a Senate-confirmed appointee is installed, the Attorney General and the district court have parallel authority to make additional interim appointments. The district court's concerns that the Attorney General might minimize the district court's role or circumvent Senate confirmation by making robust use of her authority are best addressed to Congress. And to the extent Section 546 is ambiguous, constitutional avoidance favors the government's reading, where the authority to select the Nation's top prosecutors rests with the Executive, not the Judiciary.

The district court's reading of Section 546 also contradicts the statute's history. While the statute was in effect from 1986-2006, the Attorney General exercised her authority to make successive 120-day appointments many times. In 2006, Congress gave her *more* authority and eliminated the district court's role in selecting interim U.S. Attorneys. Then one year later, it put things back the

way they were before. Reenacting a statute that had long been understood to authorize successive appointments cannot plausibly be construed as an implicit attempt to prohibit such appointments.

2.    Even if the Attorney General lacked authority to appoint Halligan as interim U.S. Attorney, the indictments were still valid and not subject to dismissal for four reasons.

First, acquiring the office of U.S. Attorney is not a prerequisite to obtaining and signing indictments. Any attorney for the government in a criminal case can perform those functions. Whatever her proper title, Halligan was at minimum an attorney for the government and thus authorized to seek and obtain indictments on its behalf—especially given her additional appointment as a Special Attorney.

Second, because Halligan obtained the indictments under the color of official office, her actions are entitled to de facto validity even if she was unlawfully appointed. Since the founding, the de facto officer doctrine has operated to prevent the chaos and uncertainty that would ensue if all past actions of someone occupying an office were suddenly rendered invalid. Historically, only prospective relief has been available when challenging title to official office. The district court side-stepped the de facto officer doctrine by instead deeming Halligan's appointment a violation of the Appointments Clause and holding that

14

the de facto officer doctrine categorically does not apply to Appointments Clause challenges. But in no circumstance does this case involve an Appointments Clause violation—at most, the issue is whether the appointment exceeded the Attorney General's statutory authority. And regardless, the Supreme Court has itself applied the de facto officer doctrine to Appointments Clause challenges.

Third, any defect in Halligan's authority to obtain and sign the indictments was cured when the Attorney General ratified the indictments. It is well-established that an action taken by an official who lacked authority because of an invalid appointment can be ratified by an official with proper authority, curing the defect. There is no question that the Attorney General would have had the authority to obtain and sign the indictments, and thus her ratification of Halligan's actions cured any defect caused by her appointment.

Fourth, even assuming an incurable defect from Halligan's appointment, a defect in securing a grand-jury indictment does not invalidate the indictment unless the error prejudiced the defendant. If the error did not substantially influence the grand jury's decision to indict, then the indictment is valid. Neither the district court nor the defendants seriously contend that the grand juries' decisions to indict in these cases were substantially influenced by the title Halligan claimed, when it is indisputable that she could have presented the cases

15

as a Special Attorney rather than an interim U.S. Attorney. Nor is it fundamentally unfair to the defendants, as the court claimed, that Halligan presented the evidence to the grand juries in her capacity as interim U.S. Attorney rather than in some other capacity.

## ARGUMENT

### I.     STANDARD OF REVIEW

This Court "review[s] de novo a challenge to the validity of an indictment." *United States v. Bolden*, 325 F.3d 471, 486 (4th Cir. 2003). Furthermore, the Court reviews questions of statutory interpretation *de novo*. *United States v. Council*, 77 F.4th 240, 246 (4th Cir. 2023).

### II.    HALLIGAN WAS VALIDLY APPOINTED AS INTERIM U.S. ATTORNEY UNDER 28 U.S.C. § 546

#### A.     Under Section 546(a), the Attorney General's appointment of Halligan as interim U.S. Attorney was valid because the office was vacant and the Senate had not refused to give its advice and consent to Halligan's appointment

U.S. Attorneys are inferior officers whose appointment the Constitution permits Congress to vest "by Law" in a "Head[] of Department[]" like the Attorney General. U.S. Const. art. II, § 2, cl. 2; *see Myers v. United States*, 272 U.S. 52, 159 (1926). In Section 546, Congress vested the Attorney General with the power to appoint U.S. Attorneys on an interim basis. Under a straightforward reading of that statute, the Attorney General has authority to

appoint Halligan as interim U.S. Attorney in the circumstances presented here: where a previous interim U.S. Attorney vacated the office after serving 120 days and being reappointed by the district court.

Section 546(a) provides: "Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant." The cross-referenced subsection (b) is the only provision in Section 546 that limits that appointment authority: The Attorney General cannot appoint someone "whose appointment by the President to that office the Senate refused to give advice and consent." The appointment criteria are plainly met here: The "office of United States attorney" for the Eastern District of Virginia was "vacant" after Siebert left office on September 19, 2025. 28 U.S.C. § 546(a). The Attorney General then appointed Halligan under Section 546(a) on September 22, 2025, and the Senate received her nomination to the office on September 30, 2025. J.A. 35; PN559 – Lindsey Robyn-Michelle Halligan – Department of Justice, Congress.gov, https://tinyurl.com/5fpmud7y. But the Senate never refused to confirm Halligan—it returned her nomination to the President at the end of its last session without confirming or rejecting it. *Id.* Case closed: The Attorney General therefore lawfully appointed Halligan as interim U.S. Attorney under

Section 546(a) to a term that expired "120 days after appointment by the Attorney General," 28 U.S.C. § 546(c)(2), which ended on January 20, 2026.

**B.    The district court erred in holding that the Attorney General's appointment of Halligan as interim U.S. Attorney under Section 546(a) was invalid**

The district court nonetheless ruled that Section 546(a) did not authorize Halligan's appointment.  It concluded that Section 546(c)(2) and (d) impliedly restrict the Attorney General's appointment authority to a *total* of 120 days—for one or more interim appointees—and then transfer exclusive authority to the district court to make any further interim appointments.  The court misread the statute and its history.    Subsection (c)(2)'s time limit—like any term appointment—applies on a per-appointment basis and does not impose an overall 120-day limit on the Attorney General's authority.  And subsection (d) does not prohibit the Attorney General from making further interim appointments to fill U.S. Attorney vacancies after the district court's parallel appointment authority is triggered.

**1.    Section 546(c)(2)'s time limit applies on a per-appointment basis and does not limit the Attorney General's authority to make interim appointments to a total of 120 days.**

In rejecting the plain import of the statute's text, the district court relied in part on Section 546(c), which states, as relevant here, that "[a] person appointed as United States attorney under this section may serve until . . . the expiration

of 120 days after appointment by the Attorney General under this section." J.A. 99, J.A. 291; *see* 28 U.S.C. § 546(c)(2). Halligan's appointment fully complied with that provision: She was "[a] person appointed as United States attorney under this section." 28 U.S.C. § 546(c). And Halligan, at the time she obtained the indictments, had not yet served "120 days after appointment by the Attorney General under this section." *Id.* § (c)(2). Nothing in the text of subsection (c) explicitly or impliedly precludes the Attorney General from making additional appointments under Section 546(a) after 120 days if a new vacancy arises. Section 546 identifies only one exception to the Attorney General's appointment authority: subsection (b), not subsection (c).

The district court read Section 546(c)(2) as authorizing the Attorney General to make interim appointments for "a total of 120 days" from when she first invokes her authority under that statute after the departure of a Senate-confirmed U.S. Attorney. J.A. 105, J.A. 297. But that is not what the statute says. Defendants conceded below, and the court did not dispute, that Section 546(c) expressly contemplates that the Attorney General may make multiple interim appointments by referring to "*A* person appointed as United States attorney under this section" rather than "*The* person" appointed. 28 U.S.C. § 546(c) (emphasis added). The natural reading of the statute is that the time-limit applies to each "person appointed" by the Attorney General under Section

19

546(a), and each "appointment" triggers a 120-day clock under subsection (c)(2). *Id.* By contrast, it is decidedly unnatural to read the statute, as the district court did, to force the Attorney General to cram multiple interim U.S. Attorney appointments into a paltry "total of 120 days from the date she first invokes" it, J.A. 105, J.A. 297.

The per-appointment reading tracks the ordinary presumption that, "when a statute provides for an appointee to serve a term of years, the specified term of service begins with the appointment." *Term of a Member of the Miss. River Comm'n*, 23 Op. O.L.C. 123, 123 (1999); *see* Floyd R. Mechem, *A Treatise on the Law of Public Offices and Officers*, § 386, at 254 (1890); 16 Op. Att'y Gen. 656 (1880). For example, if a Senate-confirmed U.S. Attorney resigns before the end of her four-year term, 28 U.S.C. § 541(b), a new Senate-confirmed U.S. Attorney is entitled to her own four-year term, not the remaining days of her predecessor's term. Likewise, each new appointment of an interim U.S. Attorney by the Attorney General triggers a new 120-day clock under Section 546(c)(2).

Section 546's other uses of the term "appointment" also make clear that it means the appointment of the specific person at issue. Subsection (b) prohibits the Attorney General from appointing a person "whose *appointment* by the President" was rejected by the Senate. 28 U.S.C. § 546(b) (emphasis added). That unquestionably refers to an appointment specific to that person. Likewise,

20

subsection (d) requires that an "order of *appointment* by the court shall be filed with the clerk of the court." *Id.* § 546(d) (emphasis added). That requirement undoubtedly applies to each person appointed by the district court, not just the first. Thus, when subsection (c)(2) provides that "[a] person appointed as United States attorney under this section may serve until . . . the expiration of 120 days after *appointment* by the Attorney General," that means that the appointee may serve until the expiration of 120 days after *her* appointment, not the Attorney General's first appointment. Otherwise, the word "appointment" would have a different meaning in Section 546(c)(2) than it does in every other instance the statute uses it. *See Robers v. United States*, 572 U.S. 639, 643 (2014) ("Generally, identical words used in different parts of the same statute are presumed to have the same meaning." (cleaned up)).

The district court's contrary approach, J.A. 105, J.A. 297, reads Section 546(c)(2) as if it said that an interim appointment lasts until "the expiration of 120 days after *the initial* appointment by the Attorney General under this section." But courts may not "add words . . . to the statute Congress enacted." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). Section 546(c)(2)'s clock on interim service by "[a] person appointed" runs from "appointment," not "the initial appointment" of someone else.

This Court's decision in *Salomon-Guillen v. Garland*, 123 F.4th 709 (4th Cir. 2024), which the district court did not even acknowledge, is directly on point. *Salomon-Guillen* addressed a regulation authorizing the appointment of "temporary Board [of Immigration Appeals] members for terms not to exceed six months." *Id.* at 716 (quoting 8 C.F.R. § 1003.1(a)(4) (2022)). An alien challenged the Attorney General's reappointment of a temporary Board member to four successive six-month terms. *Id.* This Court rejected that challenge, determining that successive terms are permissible because the regulation's "language doesn't restrict the power to appoint the same person to multiple consecutive terms." *Id.* at 717.

In rejecting a similar argument, the Eighth Circuit explained that implying a limitation on successive appointments "would be inconsistent with the Attorney General's broad power to make appointments and delegate his duties to subordinates." *Rivera v. Garland*, 108 F.4th 600, 606 (8th Cir. 2024). Likewise, nothing in Section 546(c)'s text limits the Attorney General's authority to make successive interim appointments, meaning that the Attorney General retains her appointment authority under Section 546(a).

2.    **Section 546(d)'s authorization of court-appointed U.S. Attorneys does not impliedly displace the Attorney General's parallel authority in Section 546(a).**

The district court also erred in concluding that the district court's authority to make interim appointments impliedly displaces the Attorney General's authority to make additional interim appointments. *See* J.A. 99, J.A. 291 (stating that if an appointment expires under subsection (c)(2), the district court—"and only the district court"—may appoint a United States attorney to serve until the vacancy is filled). That reading posits conflict between the Attorney General's appointment authority and the district court's that does not exist. If an interim appointment of the Attorney General expires, the district court and the Attorney General have parallel authority under Section 546 to make further interim appointments.

Subsection (d) provides that "[i]f an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled." Here, Siebert's initial appointment expired on May 21, 2025, and the judges of the Eastern District of Virginia appointed him to a new, indefinite term that would last until the vacancy was filled by a Senate-confirmed candidate, subject as always to presidential removal. J.A. 92, J.A. 286; 28 U.S.C. § 541(c)(1). But when Siebert then vacated the office on September 19, nothing in subsection (d) explicitly or impliedly limited the

Attorney General's parallel authority to appoint an interim U.S. Attorney. Instead, it simply authorized the district court to make a new interim appointment of another individual for an indefinite term: The statute says that the district court "may appoint a United States Attorney to serve until the vacancy is filled,"—not "shall appoint" and certainly not "only shall appoint," 28 U.S.C. § 546(d). The district court did not exercise that appointment authority, and its failure to do so did not somehow preclude the Attorney General from exercising her appointment authority under Section 546(a).

Resisting that reading of Section 546(d), the court below opined that, once the district court's appointment authority is triggered, that authority becomes exclusive of the Attorney General because the word "until" in subsection (d) "defines the duration of the district court's authority" to make appointments, which lasts until the vacancy is filled by a Senate-confirmed appointee. J.A. 100, J.A. 291-292. But the word "until" in subsection (d) establishes the durational limit of a court-appointed U.S. Attorney's term, not the duration of any exclusive appointment authority for the district court—just like the 120-day term in subsection (c)(2). A court-appointed U.S. Attorney is permitted "*to serve until* the vacancy is filled." 28 U.S.C. § 546(d) (emphasis added); *see United States v. Hilario*, 218 F.3d 19, 23 (1st Cir. 2000) (describing subsection (d) as referring to the "the duration of . . . service" of the interim appointee). The word "until"

therefore just establishes that, if the district court makes an appointment, that appointee may serve indefinitely, not that the Attorney General lacks parallel authority to appoint an interim U.S. Attorney for a shorter term.

The district court also mistakenly drew a "negative implication," J.A. 100, J.A. 292-293, that Subsection (d)'s granting of appointment authority to the district court must be exclusive of the Attorney General's appointment authority under subsection (a). Subsection (d), however, says that "the district court for such district may appoint" a U.S. attorney once a 120-day appointment has expired, not that "*only* the district court . . . may appoint" a U.S. Attorney. Subsection (d) thus provides a permissive, parallel grant of authority; it does not displace subsection (a). When it comes to the federal government's powers, it is not uncommon for Congress to grant "parallel authority." *United States v. Gaubert*, 499 U.S. 315, 329 (1991) (parallel regulatory authority for banking agencies); *e.g.*, 15 U.S.C. § 18a(b)(2) (authorizing both the Federal Trade Commission and the Department of Justice to review mergers under the Clayton Act).

Parallel tracks are especially common in the appointments context to ensure the continuity of government and provide the Executive Branch with flexibility to implement its priorities with its preferred personnel. For example, 28 U.S.C. § 508(b) allows the Attorney General to designate certain

subordinates to serve as Acting Attorney General during a future vacancy, while the FVRA authorizes the President to select different people to temporarily perform Senate-confirmed offices, including Attorney General. 5 U.S.C. § 3345(a)(2), (3). Those two authorities, this Court has held, are "alternative[s]," not mutually exclusive." *United States v. Smith*, 962 F.3d 755, 763 n.1 (4th Cir. 2020); *accord Guedes v. ATF*, 356 F. Supp. 3d 109, 138-44 (D.D.C. 2019), *aff'd*, 920 F.3d 1 (D.C. Cir. 2019); *Designating an Acting Attorney General*, 42 Op. O.L.C. 182, 186-90 (2018). Indeed, even the district court acknowledged that the Attorney General may make at least 120 days' worth of interim U.S. Attorney appointments notwithstanding that the FVRA says "the first assistant . . . *shall* perform the functions and duties of the office temporarily" during a vacancy. 5 U.S.C. § 3345(a)(1) (emphasis added); *see United States v. Giraud*, 795 F. Supp. 3d 560, 575 (D.N.J. 2025) (agreeing that the FVRA and Section 546(a) are "alternative[s]"). Sections 546(a) and (d) similarly provide parallel authority to ensure that the office of U.S. Attorney does not stay vacant if the Attorney General or the district court does not make an appointment.

That reading makes sense. If both the Attorney General and the district court attempt to make an appointment, the President can remove the court's appointee to ensure that the Attorney General's choice prevails. *See* 28 U.S.C. § 541(c). The same would be true if the Attorney General attempted to designate

26

one successor under 28 U.S.C. § 508(b) and the President preferred someone else under the FVRA. "Under our Constitution, the 'executive Power'—all of it—is 'vested in a President.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020). To the extent there is a dispute over whether a district court or the President should decide who gets to wield executive power, the Constitution provides a clear answer: the President and his subordinates.

The district court viewed its interpretation as necessary to avoid rendering its own appointment authority under subsection (d) "insignificant." J.A. 100, J.A. 293. The court feared that otherwise, the Attorney General could prevent the district court from making appointments by making her own before the expiration of 120 days following one of her appointments. J.A. 100, J.A. 293. But there should be nothing surprising about Congress giving courts only a limited back-up role in deciding who should wield quintessential Executive power. And the district court did not dispute that, even under its reading, the President could fire any district court appointee the Attorney General does not wish to serve. Reading the statute to permit the Attorney General to choose an appointee to the exclusion of the district court's choice is therefore congruent with the statutory design, not an anomaly. What subsection (d) actually offers is a failsafe should the Attorney General not make an appointment. It does not indefinitely transfer sole appointment authority to the district court.

27

Regardless, even the district court's reading does not guarantee district-court appointments. If the government never invokes Section 546 for a vacancy—for example, by using the FVRA instead of Section 546(a)—the district court's authority is indisputably never triggered. Likewise, because Subsection (d) is triggered only when "an *appointment* expires under subsection (c)(2)," the district court cannot appoint if the Attorney General's appointee vacates office *before* expiration of the appointment after 120 days. 28 U.S.C. § 546(d) (emphasis added). Nothing in the statute supports attributing to Congress an overriding desire for district court appointments to occur in place of appointments by the Attorney General, let alone to be anything more than rare.

To the extent the district court was concerned about the Attorney General exercising her authority to make interim appointments under Section 546(a) to circumvent Senate confirmation and Presidential appointment, *see* J.A. 102, J.A. 295, the district court's reading raises the same concern, if not more so, because court-appointed U.S. Attorneys can serve indefinitely. *E.g.*, *Hilario*, 218 F.3d at 21 (court-appointed U.S. Attorney served over six years). Historically, district courts have overwhelmingly reappointed the Attorney General's choice, as happened with Siebert and multiple other U.S. Attorneys in this Circuit last

28

year.[1]  In practice, the district court's reading would frequently allow the Attorney General's pick to serve an entire four-year term or longer without Senate confirmation or even periodic reassessment.  By contrast, if the Attorney General makes multiple 120-day appointments, those appointees do not serve indefinitely.  Rather, the Attorney General must still revisit and renew her interim appointments every 120 days.  That process provides political accountability, ensuring that an appointee without Senate confirmation cannot serve without frequent, personal review by the Attorney General.

There is a reason, however, that lengthy interim appointments are the exception, not the rule.  In addition to obviating the need to revisit an appointment every 120 days, the imprimatur of Senate confirmation offers tangible benefits, telling courts and litigants that the U.S. Attorney has the backing of two branches of government and will presumptively lead the office for four years with a direct line of accountability to the President.  *See* 28 U.S.C. § 541(b).  The Executive has little incentive to forgo those benefits across the board, which is why presidential appointment and Senate confirmation remain

---

[1]     *See, e.g.*, W.D.N.C., U.S. Att'y's Office, *United States Attorney Russ Ferguson* (Aug. 4, 2025), https://tinyurl.com/3zcbkb5s; Press Release, D. Md., U.S. Att'y Office, *Court Appoints Hayes U.S. Attorney for the District of Maryland* (June 25, 2025), https://tinyurl.com/yryd4bu7; Order, *In re Appointment of Bryan P. Stirling*, No. 3:25-mc-626 (D.S.C. Aug. 19, 2025).

the norm, even though the FVRA allows the Executive to fill vacancies with acting appointees for far longer than 120 days.  *See* 5 U.S.C. § 3346 (general 210-day limit on acting designations, with lengthy extensions if nominations are made).

To the extent Section 546 is ambiguous, constitutional avoidance favors the government's reading.  *See FCC v. Fox Television Stations*, 556 U.S. 502, 516 (2009) ("[A]mbiguous statutory language [should] be construed to avoid serious constitutional doubts.").    There are few functions more "quintessentially executive" than the "[i]nvestigation and prosecution of crimes."  *Trump*, 603 U.S. at 620.    Article II therefore requires that the President have "*complete* control over investigation and prosecution of violations of the law," including over the prosecutors who carry out those duties.  *Morrison v. Olson*, 487 U.S. 654, 710 (1988) (Scalia, J., dissenting).  Conversely, Article III requires courts to "carefully abstain from exercising any power that is not strictly judicial in its character, and which is not clearly confided to it by the Constitution."  *Muskrat v. United States*, 219 U.S. 346, 355 (1911); *see* U.S. Const. art. III, § 1.  Congress may permit "Courts of Law" to appoint some inferior officers.  U.S. Const. art. II, § 2, cl. 2.  But Congress may not do so in a way that is incongruous with the appointers' judicial duties or unduly interferes with the proper functioning of the Executive Branch.  *Hilario*, 218 F.3d at 26.

30

The district court's reading steers straight into that constitutional concern by allowing Article III courts to control the appointment of a paradigmatic executive official *even over the President's objection*. On the district court's view, once the 120-day clock has run on the Attorney General's initial appointment, only the district court can appoint an interim U.S. Attorney until there is a Senate-confirmed replacement. The President, of course, remains free to remove whomever the court selects. 28 U.S.C. § 541(c). But that arrangement raises the possibility that the court could continue making appointments unacceptable to the President, and the President could continue removing those appointees until the court picks someone to his satisfaction. That regime is far more destabilizing than one in which the Attorney General and district court have parallel authority to make interim appointments and the Executive's choice prevails (because of the President's removal power). Courts ordinarily strive to avoid, not embrace, such "interbranch conflict." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 868 (2020). Yet the district court failed to even acknowledge those serious constitutional issues raised by its reading.

### 3. The statutory history of Section 546 confirms that Halligan's appointment was valid.

In addition to rewriting the text of Section 546, the district court's construction of the statute also contradicts the statutory history. As the court acknowledged, between 1986 and 2006, Section 546 was identical to the current

version.  Pub. L. No. 99-646, § 69, 100 Stat. 3592, 3616-17 (1986).  In 1987—
within a year of the statute's enactment—the Attorney General reappointed an
interim U.S. Attorney after the initial 120-day clock had run—an appointment
that was challenged in court and upheld.  *In re Grand Jury Proceedings*, 671 F.
Supp. 5, 6-7 (D. Mass. 1987) (holding that it is "reasonable to interpret § 546(a)
to permit such a second interim appointment").  The Congressional Research
Service reports that, "between January 1993 and March 9, 2006, at least eight
U.S. Attorney vacancies—three under the Clinton Administration and five
under the Bush Administration—were filled through successive 120-day
appointments by the Attorney General under the provisions of 28 U.S.C. § 546."
Henry B. Hogue, Cong. Rsch. Serv. RS21412, *Temporarily Filling Presidentially
Appointed, Senate-Confirmed Positions* 6 n.23 (Jan. 25, 2008),
https://tinyurl.com/4fbm8p9m.  As far as the government is aware, the only
district court to consider the practice contemporaneously approved it, *In re Grand
Jury*, 671 F. Supp. at 7, and until last year, no court questioned it, *see Giraud*, 795
F. Supp. 3d at 578-81.  For example, in debating later amendments to Section
546, Senator Kyl identified two pre-2006 instances when interim U.S. Attorneys
served three or even four successive 120-day terms. 153 Cong. Rec. S3250 (daily
ed. Mar. 19, 2007).

In 2006, Congress amended Section 546 to eliminate the district court's appointment power and permit the Attorney General's appointee to serve indefinitely.  Pub. L. No. 109-177, § 502, 120 Stat. 192, 246 (2006).  But following controversy over the Bush Administration's firings of U.S. Attorneys, in 2007, Congress restored the previous language—language that was still well-understood to authorize successive appointments by the Attorney General.  Pub. L. No. 110-34, § 2, 121 Stat. 224, 224 (2007).  Where "Congress has chosen to maintain the relevant provisions"—and, here, affirmatively reenacted them—against "decades" of executive-branch practice, Congress should be understood to have ratified that practice.  *Wash. All. Of Tech. Workers v. DHS*, 50 F.4th 164, 190 (D.C. Cir. 2022); *see Salomon-Guillen*, 123 F.4th at 718 (relying on "agency practice" of successive Board of Immigration Appeals appointments).

The district court dismissed the historical evidence as "a handful of successive 120-day appointments across the Clinton and Bush administrations." J.A. 103, J.A. 295.  That dismissal is wholly insufficient to refute the historical backdrop against which Congress acted when it restored Section 546 to its original language—including the 1987 reappointment of an interim U.S. Attorney after the initial 120-day clock had run.  *See In re Grand Jury Proceedings*, 671 F. Supp. at 6-7.  The district court instead focused on statements from individual legislators in 2007 reflecting an understanding that the Attorney

General's 120-day appointment power should not be exercised more than once. J.A. 103-105, J.A. 296-297. "But legislative history is not the law." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018). And the legislative history identified by the district court reflects the proverbial "looking over a crowd and picking out your friends." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005).

While some members of Congress certainly wanted to prohibit successive appointments, Senator Kyl correctly pointed out that, "because [the bill] reinstates the exact language that existed before the statute was amended in 2006[,] the Attorney General could make consecutive 120-day appointments of interim U.S. attorneys." 153 Cong. Rec. S3250 (Mar. 19, 2017). Congress was thus "aware that even upon a return to the previous version of section 546," the Attorney General could rely on "preexisting legal rationales" to make "successive interim appointments." *Restoring Checks and Balances in the Confirmation Process of United States Attorneys: Hearing Before the Subcomm. on Comm'l & Admin. Law of the H. Comm. on the Judiciary*, 110th Cong. 132 (2007) (statement of T.J. Halstead, Cong. Rsch. Serv.). And the Senate rejected an amendment that would have repealed the Attorney General's interim appointment authority. 153 Cong. Rec. S3227 (daily ed. Mar. 15, 2007), S3301-3302 (daily ed. Mar. 20, 2007). If Congress had intended to block successive

appointments in 2007, as the district court found, reenacting text that had long been understood to authorize such appointments was not an effective way of doing so.

Instead, the 2007 amendment means what it says: The Attorney General can no longer make a single indefinite appointment under Section 546(a) as she could under the 2006 version; she must revisit her choice every 120 days. And courts may once again appoint interim U.S. Attorneys for an indefinite period as a backstop. That amendment marks a significant change from the *2006* version. But in reenacting the pre-2006 text, Congress presumptively ratified the Executive's longstanding use of successive 120-day appointments under *that* earlier version of the statute.

Finally, the district court observed in a footnote (J.A. 101-102 n.14, J.A. 294 n.12), that, after the 1986 law was enacted, then-Deputy Assistant Attorney General Samuel Alito wrote an Office of Legal Counsel memorandum concluding that Section 546 does not allow the Attorney General to "make another appointment pursuant to [subsection (a)] after the expiration of the 120-day period." *See* Memorandum from Samuel A. Alito, Jr., Deputy Ass't Att'y Gen., to William P. Tyson, Director, Exec. Office for U.S. Att'ys 3 (Nov. 13, 1986) (Alito Mem.), https://perma.cc/SD5Q-7CPH. But consistent with the era in which it was written, the extent of the memorandum's analysis is a citation

35

of a single House floor statement. *Id.*; *see Brnovich v. DNC*, 594 U.S. 647, 667 (2021) (Alito, J.) (declining to follow the approach of a 1986 case that "jumped right" to legislative history rather than "start[ing] with a careful consideration of the text"). And the cited floor statement does not even suggest that the Attorney General cannot make multiple appointments that total over 120 days; the congressman merely said that once an interim appointment "*expires*, the district court appoints a United States Attorney." 132 Cong. Rec. H11294 (daily ed. Oct. 17, 1986) (emphasis added). That statement does not speak to the Attorney General's authority before the period expires, or to the Attorney General's parallel appointment authority alongside the district court's once the period does expire. The memo also contemplates that the Attorney General might make successive interim appointments if the district court fails to act, Alito Mem. 4, thereby confirming that the statute does not transfer appointment authority exclusively to the district court after 120 days. In any event, less than 10 months after the memorandum issued, the first of many successive interim appointments was made and upheld by a court. *In re Grand Jury Proceedings*, 671 F. Supp. at 6. That subsequent practice, known to the 2007 Congress when it re-enacted Section 546, refutes any purported intent of the 1986 Congress that the Attorney General is limited to a single 120-day period. *See supra* p. 33.

## III.   THE INDICTMENTS ARE VALID REGARDLESS OF THE VALIDITY OF HALLIGAN'S APPOINTMENT

Even if the district court were correct that Halligan was not properly appointed interim U.S. Attorney, it erred in dismissing the indictments because they were independently valid for several reasons.  First, regardless of whether Halligan was properly titled, she was in all events an attorney for the government and thus authorized to secure indictments on its behalf.  Second, any official action Halligan took before her appointment was held invalid would be entitled to de facto validity.  Third, any defect has been cured because the Attorney General has ratified both indictments.  And finally, any defect in securing an indictment does not invalidate the indictment unless it prejudices the defendant, and the purported defect here was indisputably harmless.

### A.    Halligan validly obtained and signed the indictments as an attorney for the government

Even if the Attorney General could not appoint Halligan to the office of interim U.S. Attorney, it does not follow that Halligan was unauthorized to obtain and sign indictments on behalf of the United States.  One need not be a U.S. Attorney to obtain and sign indictments—one need only be an "attorney for the government."  Fed. R. Crim. P. 6(d)(1), 7(c)(1). "Attorney[s] for the government" include not only U.S. attorneys, but their "authorized assistant[s]," "the Attorney General" and her "authorized assistant[s]," and

37

"any other attorney authorized by law to conduct proceedings . . . as a prosecutor." Fed. R. Crim. P. 1(b)(1). For example, Assistant U.S. Attorneys often obtain and sign indictments without a U.S. Attorney. *See*, *e.g.*, *United States v. Trevino*, 299 F. App'x 384, 385 (5th Cir. 2008); *United States v. Easton*, 937 F.2d 160, 161 (5th Cir. 1991). Thus, the question for purposes of Halligan's authority to obtain the indictments is not whether the Attorney General properly appointed Halligan as a U.S. Attorney, but simply whether the Attorney General authorized her to represent the United States in criminal proceedings. The answer is plainly yes.

The Attorney General has plenary authority over the prosecution of federal crimes. *See* 28 U.S.C. §§ 509, 515(a), 516, 518(b), 519. To that end, she has broad power "to appoint subordinate officers to assist [her] in the discharge of [her] duties." *United States v. Nixon*, 418 U.S. 683, 694 (1974). She may "specially appoint[]" attorneys to "conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings . . . which United States attorneys are authorized by law to conduct." 28 U.S.C. § 515(a). She may appoint "attorneys to assist United States attorneys when the public interest so requires." *Id.* § 543(a). She may make "provisions as [s]he considers appropriate" to authorize "any other officer, employee, or agency of the Department of Justice" to perform "any function of the Attorney General." *Id.*

§ 510; *see id.* § 509.  And she may appoint "officials . . . to detect and prosecute crimes against the United States."  *Id.* § 533(1).  The Attorney General thus has broad authority to employ attorneys to obtain and sign indictments on behalf of the United States, independent from any authority to appoint interim U.S. Attorneys.

Whatever Halligan's proper title, she was plainly employed as an "attorney for the government" when she sought and obtained the indictments. She was hired by the Attorney General, covered by the government's attorney–client privilege, bound by the grand-jury secrecy rule applicable to attorneys for the government, *see* Fed. R. Crim. P. 6(e)(2)(B)(vi), and entitled to a federal paycheck.  The Attorney General indisputably intended the scope of that employment at minimum to include obtaining and signing indictments because she intended it to include all the authority of a U.S. Attorney.  *See Little v. United States*, 524 F.2d 335, 336 (8th Cir. 1975) (holding that the authority of a government attorney to sign indictments need not be granted explicitly if it is "implicit in the powers expressly given").  Halligan was thus authorized to obtain and sign indictments on behalf of the United States even if she was not appointed to the office of U.S. Attorney.

To be sure, the Attorney General purported to do more than just authorize Halligan to obtain and sign indictments as an attorney for the government: She

appointed Halligan as the interim U.S. Attorney under Section 546(a). But the only aspect of Halligan's authority at issue here is her authority to obtain and sign indictments, which does not depend on her status as U.S. Attorney. And there is no question that the Attorney General had the power to hire Halligan and give her that authority. Whether the Attorney General correctly cited "the source of [her] power is without legal significance." *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248 (1964). "[T]here is not the slightest ground for assuming that if the [Attorney General] had been apprised of the correct source of [her] authority, [she] would have made a[n appointment] different in substance, as distinguished from wording." *Id.* at 247. The indictments are not invalid simply because the appointment happened to label Halligan an interim U.S. Attorney instead of a Special Attorney or Assistant U.S. Attorney.

Moreover, even if the label mattered, the Attorney General also appointed Halligan as a Special Attorney under 28 U.S.C. §§ 509, 510, and 515, and authorized her to conduct legal proceedings on behalf of the United States in the Eastern District of Virginia, including grand-jury proceedings, effective September 22, 2025. J.A. 38. So even if the interim U.S. Attorney appointment were somehow insufficient to convey the Attorney General's intent to employ

Halligan as an attorney to represent the government in criminal proceedings, the Special Attorney appointment undoubtedly does so.

The district court barely engaged with any of that. According to the district court, the indictments are invalid because "all actions flowing from Halligan's defective appointment [as interim U.S. Attorney] constitute unlawful exercises of executive power and must be set aside." J.A. 108, J.A. 300. But as discussed, the authority to obtain and sign indictments did not depend on Halligan's purportedly invalid U.S. Attorney appointment because that authority belongs to any "attorney for the government," not just U.S. Attorneys. The district court's only response on that point focused on the Attorney General's subsequent order appointing Halligan as a Special Attorney. The court concluded that the Attorney General could not "retroactively confer Special Attorney status on Halligan." J.A. 109, J.A. 301. But that flawed reasoning overlooks that the original appointment itself made Halligan an "attorney for the government" even if it could not confer the office of interim U.S. Attorney. In any event, it is not uncommon for an employee's hiring to be formally finalized some date after the employee began working, with the hiring retroactively effective on the date the employee began working. *See*, *e.g.*, *David v. King*, 109 F.4th 653, 664 (4th Cir. 2024) (discussing the common practice of retroactively appointing attorneys retained by bankruptcy trustees who began

41

working before being formally appointed); *Stumm v. Wilkie*, 796 F. App'x 292, 294 (7th Cir. 2019) (discussing an employer's employment offer with a "retroactive start date"). The district court cited no support (and the government is aware of none) for its conclusion that the Attorney General, who enjoys plenary authority over the hiring of Department of Justice attorneys, could not clarify the source of authority for an attorney's hiring some weeks after that attorney began working.

Importantly, the district court also ignored the implications of its reasoning. If Halligan was not an "attorney for the government" for purposes of the indictment requirements in Rules 6(d)(1) and 7(c)(1), then she necessarily also was not an "attorney for the government" for purposes of Rule 6(e)(2)(B)(vi)'s grand-jury secrecy requirements. Accordingly, that would mean Halligan is free to publicly disclose grand-jury matters merely because the title of her appointment may have been inaccurate—an utterly implausible construction of the rules and one that this Court should be wary to adopt.

**B.    Even if Halligan were not a government attorney, her actions in securing and signing the indictments would be entitled to de facto validity**

Because Halligan obtained and signed the indictments under the color of an official office, the indictments would be entitled to "de facto validity" even if she were unlawfully appointed to that office. *Buckley v. Valeo*, 424 U.S. 1, 142

(1976). "The de facto officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States*, 515 U.S. 177, 180 (1995). That doctrine "springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question." *Id.* It has such deep roots in Anglo-American law that early American courts considered it "too well settled to be discussed." *People ex rel. Bush v. Collins*, 7 Johns. 549, 552 (N.Y. Sup. Ct. 1811) (Kent, C.J.). Thus, even if the Attorney General failed to properly appoint Halligan as "an officer de jure," she was acting under color of official title and her past actions are "valid and binding." *Phillips v. Payne*, 92 U.S. 130, 132 (1876).

Yet the district court refused to apply the de facto officer doctrine because, in its view, Halligan's appointment violated the Appointments Clause and the de facto officer doctrine is categorically inapplicable to officers whose appointments violate that clause. J.A. 110-111, J.A. 302-304. The court erred on both counts.

First, the purported violation here is at worst that the Attorney General's appointment of Halligan as interim U.S. Attorney was unauthorized by Section 546. The Supreme Court has distinguished between claims "based on the

Appointments Clause" and claims based on "a misapplication of a statute" governing appointments. *Ryder*, 515 U.S. at 182. The appointment of an inferior officer like an interim U.S. Attorney by the head of a department like the Attorney General does not run afoul of the Appointments Clause. *See* U.S. Const. art. II, § 2, cl. 2. The dispute here is only whether Section 546 authorized the Attorney General to make the appointment. That is why the district court's opinions and the briefing in these cases center entirely on the meaning of Section 546, not the Appointments Clause.

Yet as the district court would have it, any appointment that does not comply with a statute governing inferior-officer appointments is necessarily an Appointments Clause violation because that Clause requires that appointment of inferior officers occur pursuant to laws enacted by Congress. J.A. 106, J.A. 298-299. By that logic, it would be a constitutional violation *most* of the time a government official exceeded her statutory authority. After all, absent inherent Article II power, executive officers may act only where Congress has authorized them to do so. But the Supreme Court has rejected exactly that reasoning, declining to treat "every action by [an] executive official in excess of his statutory authority [as] *ipso facto* in violation of the Constitution." *Dalton v. Specter*, 511 U.S. 462, 472 (1994).

Second, the district court was mistaken to conclude that the de facto officer doctrine categorically does not apply to Appointments Clause violations. The Supreme Court in *Buckley* applied the doctrine to officers whose appointments violated the Appointments Clause. *See* 424 U.S. at 142. But in the district court's view, it was free to ignore *Buckley* because the Supreme Court purportedly "buried" it in *Ryder*. J.A. 111, J.A. 303. Whatever it means to "bury" a precedent, nothing in *Ryder* purported to overrule *Buckley*, and lower courts may not "conclude [the Supreme Court's] more recent cases have, by implication, overruled an earlier precedent." *Agostini v. Felton*, 521 U.S. 203, 237 (1997). That is especially true where the two cases can be easily reconciled. *Ryder* held only that the de facto officer doctrine did not apply when a litigant "makes a timely challenge [on direct appellate review] to the constitutional validity of the appointment of an officer *who adjudicates his case*." 515 U.S. at 182 (emphasis added). The Court feared that applying the doctrine would "create a disincentive to raise Appointments Clause challenges *with respect to questionable judicial appointments*." *Id.* at 183 (emphasis added). The Court explained that in the context of adjudicatory officers, the only past acts that would be affected by holding their appointments invalid would be the relatively few judgments then "pending on direct review." *Id.* at 185. Therefore, the historic rationale for the de facto officer doctrine—preventing chaos that would ensue from invalidating

45

countless prior acts taken under color of official authority—applies with less force to adjudicatory officers than to officers like the commissioners in *Buckley* or the prosecutor at issue here.

## C. The Attorney General has ratified the indictments, curing any defect

Even if Halligan could not obtain indictments as an attorney for the government or a de facto officer, the indictments would remain valid because the Attorney General ratified Halligan's actions in obtaining and signing them, thus curing any defects. *See* J.A. 38-39, J.A. 50, J.A. 282; Order No. 6584-2026, Ratification of Certain Actions in the Eastern District of Virginia (Jan. 13, 2026), https://tinyurl.com/2xuc2dza.

"Ratification is a doctrine derived from agency law that has long colored both constitutional and administrative-law questions." *Wille v. Lutnick*, 158 F.4th 539, 546 (4th Cir. 2025). Under agency law, when an agent purports to perform an act for which she lacks authority, the principal can subsequently "affirm[] [the] prior unauthorized act," and "the act is given effect as if originally authorized." *Id.* at 547. This principle "operates within the Executive Branch" as well. *Id.* at 549. If an officer takes an action for which she lacks authority due to an invalid appointment, a validly appointed officer's "subsequent ratification" validates the action, "thereby curing any Appointments Clause defects that may have existed when" the action was taken. *Id.* at 550. The

ratifying official need only have the authority to take the action herself and to delegate that authority to others. *See id.* If so, then her ratification of the challenged action "ma[kes] it such that [s]he did" perform the act in the first instance. *Id.* (emphasis omitted).

The Attorney General without question has the authority to obtain and sign indictments herself. *See* 28 U.S.C. §§ 509, 515(a), 516, 518(b). Those functions are delegable: They "do not require personal performance by the" Attorney General. *Wille*, 158 F.4th at 547; *see id.* at 548 (noting that authority is delegable unless delegation is "expressly forbidden"); 28 U.S.C. §§ 510, 515(a), 518(b). Thus, the Attorney General has the authority to ratify actions taken to obtain and sign indictments, making it as if she did so herself in the first instance.

Notwithstanding that straightforward principle, the district court determined that the Attorney General could not ratify the indictments because "Halligan's original appointment was invalid" and thus "the Attorney General could not have authorized" her to obtain and sign indictments at the time Halligan took those acts. J.A. 113, J.A. 305. That is not how ratification works. It is the "party ratifying," not the party who took the action, who must have had authority "to do the act ratified at the time the act was done." *FEC v. NRA Pol. Victory Fund*, 513 U.S. 88, 98 (1994); *see also Wille*, 158 F.4th at 550 (upholding ratification of a rule because the ratifying official "had the authority to

47

promulgate the Rule when it was initially published").  If the party who took the action had the authority to do so at the time, there would be no need for ratification—the action would already be valid.  And it would make no sense for ratification to be unavailable because the appointment of the official who took the action "was invalid" when the entire point of ratification in this context is to "cur[e] any Appointments Clause defects."  *Wille*, 158 F.4th at 550.  Requiring Halligan already to have been properly appointed and authorized to seek indictments before there can be any ratification is not an application of the ratification doctrine.  It is a rejection of the doctrine altogether.[2]

As to the indictment of Comey (but not James), the district court also concluded that the ratification was ineffective because the statute of limitations had purportedly expired by the time the Attorney General had ratified the indictment.  Thus, according to the district court, the Attorney General could not have obtained and signed the indictments "at the time the ratification was made."  J.A. 114 (emphasis omitted).  That additional rationale is also flawed.

---

[2] In any event, the Attorney General did "possess the authority to authorize" Halligan to seek indictments at the time because she had authority to hire Halligan as a Special Attorney or Assistant U.S. Attorney. *Wille*, 158 F.4th at 547. It is no response that the Attorney General had not exercised this authority because the very premise of ratification is that the principal had not authorized the agent to perform the act at the time the agent did so.

Although the district court is correct that "the party ratifying should be able not merely to do the act ratified at the time the act was done, but also at the time the ratification was made," *NRA*, 513 U.S. at 98 (emphasis omitted), the court is incorrect that it was too late for the Attorney General to obtain an indictment.  At the time of ratification, the indictment against Comey was still pending.  Thus, the Attorney General could have obtained a "superseding indictment" that would have "relat[ed] back to the date of the original indictment" "so long as it neither materially broaden[ed] nor substantially amend[ed] the charges." *United States v. Ojedokun*, 16 F.4th 1091, 1109 (4th Cir. 2021).

Invoking two nearly 40-year-old district court opinions, the district court held that tolling would not apply because the original indictment was "invalid." J.A. 114 n.21 (citing *United States v. Crysopt Corp.*, 781 F. Supp. 375 (D. Md. 1991) and *United States v. Gillespie*, 666 F. Supp. 1137 (N.D. Ill. 1987)).  But this Court has held that even a "defective" indictment tolls the statute of limitations for a superseding indictment "provided the original indictment contained sufficient factual allegations to put the defendant on notice of the later charges against him." *Ojedokun*, 16 F.4th at 1109 n.9.  Other circuits agree. *See United States v. Milstein*, 401 F.3d 53, 67 (2d Cir. 2005) ("*Gillespie* is not the law of this Circuit."); *United States v. Italiano*, 894 F.2d 1280, 1286 (11th Cir. 1990) (rejecting

an "attempt to equate indictments invalid . . . with indictments insufficient to toll the statute of limitations"); *United States v. Friedman*, 649 F.2d 199, 202, 204 (3d Cir. 1981) (holding that a five-count indictment tolled the statute of limitations even though four of the counts were deficient).  That is because the "touchstone of the [relation-back] analysis is whether the original indictment fairly alerted the defendant to the subsequent charges against him."  *Ojedokun*, 16 F.4th at 1109. "Notice to the defendant is the central policy underlying the statutes of limitation," so if "the allegations and charges are substantially the same in the old and new indictments," the defendant received adequate notice and the superseding indictment relates back to the original regardless of its formal validity.  *Italiano*, 894 F.2d at 1283.  Here, the only purported defect in Comey's indictment was that it was obtained and signed by an invalidly appointed prosecutor.  Because the indictment provided Comey with adequate notice of the charges, it tolled the statute of limitations for those charges, and the Attorney General could have obtained a superseding indictment.

Moreover, even without relation-back tolling, the Attorney General still could obtain an indictment because 18 U.S.C. § 3288 provides a grace period permitting reindictment after a felony indictment "is dismissed for any reason after the period prescribed by the applicable statute of limitations has expired."

Because of Section 3288's grace period, the Attorney General had ample authority to reindict even if the statute of limitations had expired.

Yet the district court rejected that too on the ground that Section 3288 is triggered only once the indictment is dismissed, but the indictment had not yet been dismissed when the Attorney General ratified it. J.A. 114-115. That reasoning is the posterchild for hyper technicality, given that the district court then dismissed the indictment, thereby triggering Section 3288 even on the court's own reasoning. It is difficult to understand what conceivable purpose is served by holding that the Attorney General lacked authority to preemptively inform the court of her intent to rely on Section 3288 and ratify the indictment, saving the court the pointless ritual of dismissing the indictment only to reverse itself (or be reversed by this Court) after the Attorney General ratifies the original indictment again immediately upon dismissal. Nonetheless, if this Court agrees that the Attorney General could ratify the indictment under Section 3288 only after it was dismissed, the Attorney General has now done so. Order No. 6584-2026, Ratification of Certain Actions in the Eastern District of Virginia (Jan. 13, 2026), https://tinyurl.com/2xuc2dza. So one way or the other, the Attorney General has ratified the Comey indictment at a time when she has the authority to do so.

In sum, the Attorney General had the authority to obtain and sign both indictments at the time they were returned and at the time of ratification. Therefore, her ratification "made it such that [s]he did [obtain and sign them] at that time, thereby curing any Appointments Clause defects that may have existed when the [indictments] w[ere] initially [obtained and] signed by [Halligan]." *Wille*, 158 F.4th at 550.

### D.     Any defect in securing the indictments was harmless

Finally, even if the Court rejects all of the foregoing and determines that Halligan's appointment constituted an incurable defect in obtaining the indictments, it still would not render them invalid because the defect did not prejudice the defendants. "[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988); *accord* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). That is because the grand jury "is a constitutional fixture in its own right" that "act[s] independently of [the] prosecuting attorney," *United States v. Williams*, 504 U.S. 36, 47, 49 (1992) (cleaned up), and "gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime," *Kaley v. United States*, 571 U.S. 320, 328 (2014). Historically, "the grand

jury was competent to act solely on its own volition," even without a prosecutor. *Hale v. Henkel*, 201 U.S. 43, 60 (1906). "An indictment returned by a legally constituted and unbiased grand jury" is thus "enough to call for trial of the charge on the merits." *Costello v. United States,* 350 U.S. 359, 363 (1956).

Because an indictment comes from the grand jury, not the prosecutor, any error by the prosecution in obtaining the indictment will not invalidate the grand jury's indictment unless the error "substantially influenced the grand jury's decision to indict" or "there is grave doubt that the decision to indict was free from the substantial influence of" the error. *Bank of Nova Scotia*, 487 U.S. at 256; *Unites States v. Derrick*, 163 F.3d 799, 808 (4th Cir. 1998). This "harmless-error inquiry is applicable" any time "a court is asked to dismiss an indictment prior to the conclusion of the trial," including because of a purportedly invalid appointment. *Bank of Nova Scotia*, 487 U.S. at 256; *see Smith*, 962 F.3d at 766 (holding that a defendant making an Appointments Clause challenge must show that the official's "tenure somehow affected his proceeding and prejudiced him in some way"); *Kelley v. United States*, 989 F.3d 67, 70 (1st Cir. 2021) (noting that many courts have declined to dismiss indictments that were obtained by prosecutors who were suspended from the practice of law because the defendants "c[ould] not prove prejudice").

53

It would strain credulity to suggest that Halligan's appointment to the office of interim U.S. Attorney "substantially influenced" the grand juries' decisions to indict the defendants. As explained above, even if she were not the U.S. Attorney, Halligan could have sought indictments as a Special Attorney or an Assistant U.S. Attorney. Defendants cannot seriously claim that the grand juries would have declined to indict had Halligan simply been given a different title.

The district court did not disagree. Instead, it summarily declared that "[h]armless-error analysis does not apply" because "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair." J.A. 112, J.A. 304. Yet it is unclear how what is at most a paperwork error in citing the wrong statute could have possibly "compromised" the grand juries and rendered their deliberations "fundamentally unfair." Again, it is undisputed that the Attorney General could have appointed Halligan as a Special Attorney under Section 515 or an Assistant U.S. Attorney under Section 542, after which the proceedings would have played out *exactly the same*, as there is no basis to think that the grand juries would have given material weight to the entirely irrelevant matter of Halligan's title. *See Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974) (agreeing that grand juries enjoy a "presumption of regularity" in their decision making). As the

54

Eleventh Circuit has explained in rejecting a claim that invalid appointments constitute fundamental error, "an error in the appointment of the United States Attorney" affects "the structure of the federal government"—it "does not implicate the overall fairness of the trial." *United States v. Suescun*, 237 F.3d 1284, 1288 n.12 (11th Cir. 2001).

Fundamental errors are those that so egregiously infect the grand jury itself that they "allow[] the presumption of prejudice." *Bank of Nova Scotia*, 487 U.S. at 257. In other words, fundamental errors are *per se* harmful because they necessarily give rise to grave doubt that the grand jury was not influenced by the error. Such errors are "exemplified" by cases where the government discriminated against members of the defendant's race or sex in selecting the grand jury. *Id.* That is a far cry from the cases here where the district court did not find anything improper about the structure and deliberations of the grand jury itself, and the only claim is that the attorney who presented the evidence had the wrong title.

Defendants were not indicted by Halligan. They were "charged by a group of [their] fellow citizens acting independently of [her]" who found probable cause to believe that they committed federal crimes. *United States v. Promise*, 255 F.3d 150, 189 (4th Cir. 2001) (quoting *Stirone v. United States*, 361 U.S. 212, 218 (1960)). The grand juries' indictments should not be invalidated

based on Halligan's purportedly unlawful appointment when there is no colorable basis to conclude that their decisions would have been any different had the defect in title been cured.

## CONCLUSION

The Court should reverse the orders of the district court.

February 9, 2026                    Respectfully submitted,


                                    PAMELA BONDI
                                      Attorney General

                                    TODD W. BLANCHE
                                      Deputy Attorney General

                                    HENRY C. WHITAKER
                                      Counselor to the Attorney General
                                    950 Pennsylvania Ave. NW
                                    Washington, D.C. 20530
                                    Tel: (202) 445-8942
                                    henry.whitaker@usdoj.gov

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 12,511 words, not including items excluded in accordance with Fed. R. App. P. 32(f).

2.      This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Calisto MT 14-point font in text and Calisto MT 14-point font in footnotes.

Dated:      February 9, 2026

/s/ Henry C. Whitaker
HENRY C. WHITAKER

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2026, I electronically filed the foregoing document with the United States Court of Appeals for the Fourth Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Henry C. Whitaker
HENRY C. WHITAKER