# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Appellant*

*v.*

JAMES B. COMEY, JR.,

*Appellee.*

On Appeal from the United States District Court
for the Eastern District of Virginia (No. 1:25-cr-00272-MSN)
The Honorable Cameron McGowan Currie (sitting by designation)

## BRIEF OF DEFENDANT-APPELLEE JAMES B. COMEY, JR.

Jessica N. Carmichael
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, First Floor
Alexandria, VA 22314
(703) 684-7908

Patrick J. Fitzgerald
P.O. Box 277
New Buffalo, MI 49177
(312) 758-4454

Michael R. Dreeben
600 New Jersey Ave. NW
Washington, DC 20001
(202) 695-2562

Ephraim A. McDowell
Elias S. Kim
COOLEY LLP
1299 Pennsylvania Ave., NW, Suite 700
Washington, DC 20004
(202) 842-7800
emcdowell@cooley.com

Rebekah Donaleski
COOLEY LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000

Connie L. Wang
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

*Counsel for Defendant-Appellee*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

STATEMENT OF THE ISSUES.........................................................................2

STATEMENT OF THE CASE.............................................................................2

    A.    Legal Background ...............................................................................2

    B.    Factual Background.............................................................................5

    C.    Proceedings Below .............................................................................8

SUMMARY OF ARGUMENT ..........................................................................11

ARGUMENT ......................................................................................................14

I.    Ms. Halligan's Appointment As Interim U.S. Attorney Violated Section 546 And The Appointments Clause ...........................................................15

    A.    Section 546 Did Not Authorize Ms. Halligan's Appointment...........15

        1.    Ms. Halligan's appointment contravened Section 546's text ..16

        2.    Statutory structure confirms the best reading of the text.........24

        3.    Statutory history further refutes the government's reading.....26

    B.    Ms. Halligan's Appointment Also Violated The Appointments Clause ...............................................................................................32

II.    The District Court Correctly Dismissed The Indictment ...........................34

    A.    Ms. Halligan's Unlawful Appointment Requires Dismissal Of The Indictment .................................................................................34

        1.    Appointments Clause precedents require dismissal ................34

        2.    Criminal law remedial principles also require dismissal.........39

    B.    The Government's Post Hoc Attempts To Cure The Appointment And Indictment Fail ......................................................43

        1.    The Attorney General purported to appoint Ms. Halligan only as interim U.S. Attorney, not any other type of attorney for the government....................................................43

        2.    The Attorney General cannot retroactively appoint Ms. Halligan to a different office....................................................47

        3.    The Attorney General cannot ratify the indictment.................49

CONCLUSION...................................................................................................56

REQUEST FOR ORAL ARGUMENT………………………………………..56

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advoc. Health Care Network v. Stapleton*,
    581 U.S. 468 (2017).............................................................30

*Babb v. Wilkie*,
    589 U.S. 399 (2020).............................................................16

*Bank of Nova Scotia v. United States*,
    487 U.S. 250 (1988).................................................39, 41, 43

*Bouie v. City of Columbia*,
    378 U.S. 347 (1964).............................................................50

*Bowen v. Georgetown Univ. Hosp.*,
    488 U.S. 204 (1988).............................................................48

*Brooks v. Kijakazi*,
    60 F.4th 735 (4th Cir. 2023) ...........................................34, 37

*Buckley v. Valeo*,
    424 U.S. 1 (1976)............................................................36, 37

*Collins v. Yellen*,
    594 U.S. 220 (2021).................................................18, 34, 35

*Curran v. Off. of Pers. Mgmt. Bureau of Ret., Ins., & Occupational
    Health*, 566 F. Supp. 1511 (D.D.C. 1983).............................46

*Dalton v. Specter*,
    511 U.S. 462 (1994).................................................33, 34

*Diaz v. United States*,
    602 U.S. 526 (2024).............................................................24

*Edmond v. United States*,
    520 U.S. 651 (1997)...........................................................3, 14

*Ex parte Farley*,
    40 F. 66 (C.C.W.D. Ark. 1889) ............................................51

*FEC v. NRA Pol. Victory Fund*,
    513 U.S. 88 (1994)..........................................................52, 53

*The Floyd Acceptances*,
    74 U.S. 666 (1868).............................................................45

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Ganger v. Peyton*,
379 F.2d 709 (4th Cir. 1967) ................................................... 38

*Garcia v. United States*,
469 U.S. 70 (1984) ................................................................... 30

*In re Grand Jury Proceedings*,
671 F. Supp. 5 (D. Mass. 1987) .......................................... 30, 31

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995) ................................................................. 19

*Hewitt v. United States*,
606 U.S. 419 (2025) ................................................................. 55

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
589 U.S. 178 (2020) ................................................................. 29

*Island Creek Coal Co. v. Henline*,
456 F.3d 421 (4th Cir. 2006) ................................................... 45

*Jama v. Immigr. & Customs Enf't*,
543 U.S. 335 (2005) ................................................................. 30

*Kelly v. United States*,
989 F.3d 67 (1st Cir. 2021) ...................................................... 42

*Kennedy v. Braidwood Mgmt., Inc.*,
606 U.S. 748 (2025) ................................................................. 33

*King v. Donnkenny, Inc.*,
64 F. App'x 376 (4th Cir. 2003) .............................................. 51

*Learning Resources, Inc. v. Trump*,
No. 24-1287, 2026 WL 477534 (S. Ct. Feb. 20, 2026) ........... 31

*Leland v. Fed. Ins. Adm'r*,
934 F.2d 524 (4th Cir. 1991) ................................................... 48

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ................................................................. 28

*Lucia v. SEC*,
585 U.S. 237 (2018) ............................................. 35, 36, 37, 47

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) ................................................... 46

iv

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Marx v. Gen. Revenue Corp.*,
568 U.S. 371 (2013) .................................................. 20

*McDowell v. United States*,
159 U.S. 596 (1895) .................................................. 33

*McFadden v. United States*,
576 U.S. 186 (2015) .................................................. 17

*Medellín v. Texas*,
552 U.S. 491 (2008) .................................................. 31

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*,
583 U.S. 366 (2018) .................................................. 24

*Morrison v. Olson*,
487 U.S. 654 (1988) ............................................ 23, 44

*Myers v. United States*,
272 U.S. 52 (1926) ..................................................... 3

*Nasewaupee v. Sturgeon Bay*,
251 N.W.2d 845 (Wis. 1977) ................................... 53

*Nguyen v. United States*,
539 U.S. 69 (2003) .................................................. 38

*Niz-Chavez v. Garland*,
593 U.S. 155 (2021) .................................................. 48

*NLRB v. SW Gen., Inc.*,
580 U.S. 288 (2017) ............................................ 31, 32

*Norton v. Shelby Cnty.*,
118 U.S. 425 (1886) .................................................. 44

*Rivera v. Garland*,
108 F.4th 600 (8th Cir. 2024) ................................... 22

*Rop v. FHFA*,
50 F.4th 562 (6th Cir. 2022) ..................................... 37

*Ryder v. United States*,
515 U.S. 177 (1995) ...................... 33, 35, 36, 37, 47

*Salomon-Guillen v. Garland*,
123 F.4th 709 (4th Cir. 2024) ................................... 22

v

*SEC v. Chenery Corp.*,
332 U.S. 194 (1947)......................................................................45

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)......................................................................19

*Sosa v. Alvarez-Machain*,
542 U.S. 692 (2004)......................................................................21

*State v. Rockafellow*,
6 N.J.L. 332 (N.J. 1796) ...............................................................51

*SW Gen., Inc. v. NLRB*,
796 F.3d 67 (D.C. Cir. 2015)..................................................38, 39

*Trump v. United States*,
603 U.S. 593 (2024)......................................................................44

*TRW Inc. v. Andrews*,
534 U.S. 19 (2001)........................................................................21

*U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*,
590 U.S. 604 (2020)......................................................................27

*United States v. Baldwin*,
541 F. Supp. 2d 1184 (D.N.M. 2008)..........................................4, 23

*United States v. Bolton*,
893 F.2d 894 (7th Cir. 1990) .........................................................51

*United States v. Crysopt Corp.*,
781 F. Supp. 375 (D. Md. 1991).....................................................55

*United States v. Garcia*,
No. 25-cr-230, 2025 WL 2784640 (D. Nev. Sept. 30, 2025)............26

*United States v. Garcia-Andrade*,
No. 13-cr-993, 2013 WL 4027859 (S.D. Cal. Aug. 6, 2013)............42

*United States v. Germaine*,
99 U.S. 508 (1878)..........................................................................2

*United States v. Giraud*,
160 F.4th 390 (3d Cir. 2025) ....................................................24, 26

*United States v. Giraud*,
795 F. Supp. 3d 560 (D.N.J. 2025).................................................49

*United States v. Hansen*,
599 U.S. 762 (2023).......................................................26

*United States v. Hilario*,
218 F.3d 19 (1st Cir. 2000)..............................................23

*United States v. Nixon*,
418 U.S. 683 (1974).......................................................46

*United States v. Ojedokun*,
16 F.4th 1091 (4th Cir. 2021) .............................53, 55, 56

*United States v. Perkins*,
116 U.S. 483 (1886).................................................13, 32

*United States v. Rosenthal*,
121 F. 862 (C.C.S.D.N.Y. 1903) ....................................40

*United States v. Slape*,
44 F.4th 356 (5th Cir. 2022) ..........................................51

*United States v. Smith*,
962 F.3d 755 (4th Cir. 2020) ....................................41, 42

*United States v. Sotomayor Vazquez*,
69 F. Supp. 2d 286 (D.P.R. 1999) .............................25, 26

*United States v. Suescun*,
237 F.3d 1284 (11th Cir. 2001) .....................................40

*United States v. Testan*,
424 U.S. 392 (1976).......................................................45

*United States v. Trump*,
740 F. Supp. 3d 1245 (S.D. Fla. 2024).......................35, 49

*Wille v. Lutnick*,
158 F.4th 539 (4th Cir. 2025) .........................47, 50, 52, 53

*Young v. U.S. ex rel. Vuitton et Fils S.A.*,
481 U.S. 787 (1987).......................................................40

## Constitution, Statutes, and Regulations

U.S. Const. amend. V.....................................................54

U.S. Const. art. II, § 2, cl. 2 .................. 2, 3, 13, 15, 23, 32, 44

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Act of Mar. 3, 1863, ch. 93, § 2, 12 Stat. 768....................................................4, 27

Act of June 24, 1898, ch. 495, § 2, 30 Stat. 487....................................................27

Act of May 10, 1934, ch. 278, Pub. L. No. 73-217, 48 Stat. 772...........................54

Act of Sept. 6, 1966, Pub. L. No. 89-554, § 4(c), 80 Stat. 618 .......................3, 4, 27

Criminal Law and Procedure Technical Amendments Act of 1986,
   Pub. L. No. 99-646, § 69, 100 Stat. 3616 ........................................................4, 27

Judiciary Act of 1789, ch. 20, § 35, 1 Stat. 92........................................................3

Preserving United States Attorney Independence Act, Pub. L. No.
   110-34, § 2, 121 Stat. 224..............................................................................29

USA Patriot Improvement and Reauthorization Act of 2005, Pub. L.
   No. 109-177, Tit. V, § 502, 120 Stat. 246 ........................................................29

18 U.S.C.
   § 1001(a)(2) ....................................................................................................8
   § 1505 .............................................................................................................8
   § 3282(a) .........................................................................................................6
   § 3288.....................................................................................................53, 54, 55

28 U.S.C.
   § 509................................................................................................................48
   § 510................................................................................................................48
   § 515................................................................................................................48
   § 541..........................................................................................15, 16, 21, 24, 25
   § 541(a) ................................................................................................3, 15, 24
   § 546......................................1, 5, 9, 11, 14, 15, 16, 20, 22-25, 27, 32, 43, 44, 46
   § 546(a) ..........................................................................................4, 12, 16, 17
   § 546(b) .........................................................................................................4, 21
   § 546(c).............................................................................................................5
   § 546(c)(1) ......................................................................................................19
   § 546(c)(2) ...............................................................................5, 12, 16, 17, 20, 21
   § 546(d)..................................................................5, 12, 16-19, 21, 23, 25, 27, 49

8 C.F.R. § 1003.1(a)(4).............................................................................................22

Fed. R. Crim. P. 1(b)(1)(D).......................................................................................40

Fed. R. Crim. P. 6(d)(1) ...........................................................................................40

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Fed. R. Crim. P. 6(e)(2)(B)(vi) ...............................................................46

**Miscellaneous**

Memorandum from Samuel A. Alito, Jr., DAAG, OLC, on Definition of
Vacancy for the Purpose of Interim Appointment of United States
Attorneys Pursuant to 28 U.S.C. 546, as amended (Nov. 13, 1986) .................28

Black's Law Dictionary (3d ed. 1933)......................................................55

DOJ, *White House and Justice Department Begin U.S. Attorney
Transition* (Mar. 14, 2001) ...............................................................28

*The Federalist* (Alexander Hamilton) (Clinton Rossiter ed. 1961)..........................4

James A. Heilpern, *Interim United States Attorneys*, 28 Geo. Mason
L. Rev. 187 (2020) ..........................................................................3

H.R. Rep. No. 110-58 (Mar. 20, 2007) ............................................29, 30

Robert H. Jackson, *The Federal Prosecutor*, 31 J. Crim. L &
Criminology (May-June 1940) ...............................................................3

Floyd R. Mechem, *A Treatise on the Law of Public Offices and
Officers* § 531 (1890)........................................................................50

*Merriam-Webster's Collegiate Dictionary* (10th ed. 1997) .....................................18

Restatement (Second) of Agency
§ 82 cmt. *a*...................................................................................50
§ 84 cmt. *b*...................................................................................52

Restatement (Third) of Agency § 4.02 .....................................................50

*Webster's New International Dictionary* (2d ed. 1954) .........................................17

1 *Wright & Miller's Federal Practice & Procedure* § 102 (5th ed.
2025) ...........................................................................................39

23 Op. O.L.C. 123 (1999) ...................................................................22

153 Cong. Rec. S3302 (Mar. 20, 2007) ......................................................30

## **INTRODUCTION**

The purported indictment of James Comey is fatally flawed because it resulted directly from a violation of 28 U.S.C. § 546 and the Appointments Clause. Lindsey Halligan was the sole person who presented the case to the grand jury and signed the purported indictment. And yet she was improperly appointed to her office as interim U.S. Attorney and thus could not validly exercise any governmental power.

Since the Founding, U.S. Attorney nominees have been subject to the advice and consent of the Senate. And since 1863, courts have appointed interim U.S. Attorneys when an office is vacant. Those two structural safeguards help ensure that individuals who wield the enormous powers of a chief prosecutor will be qualified for the position and faithful to the rule of law—not personally allied with the President and eager to do his bidding.

The government's position here would upend that longstanding tradition. Under the government's reading of Section 546, the Attorney General (at the President's direction) can successively appoint the same person as U.S. Attorney so that she can serve indefinitely without Senate confirmation. As a result, there will never be a vacancy for district courts to fill. That unprecedented interpretation of Section 546 conflicts with the statutory text, structure, and history. The district court correctly rejected it and held that Ms. Halligan was unlawfully appointed.

The district court also correctly dismissed the indictment based on Ms. Halligan's unlawful appointment. The Supreme Court has repeatedly held that actions taken by someone who lacks a valid appointment are void. And because no properly appointed Executive Branch official sought and obtained the purported indictment in this case, that indictment is equally void. The government seeks to excuse its unlawful actions on the ground that it perhaps *could have* appointed Ms. Halligan differently. But that argument lacks force where, as here, fundamental constitutional protections and individual liberty are at stake. In short, the United States cannot charge and prosecute a case through a person who is not entitled to exercise governmental authority. This Court should affirm.

## STATEMENT OF THE ISSUES

1.    Whether Ms. Halligan's appointment as interim U.S. Attorney violates Section 546 and the Appointments Clause.

2.    Whether the indictment should be dismissed based on Ms. Halligan's unlawful appointment.

## STATEMENT OF THE CASE

### A.    Legal Background

1.    The Appointments Clause specifies how "Officers of the United States" must be appointed. U.S. Const. art. II, § 2, cl. 2. The Clause "divides all . . . officers into two classes": principal officers and inferior officers. *United States v. Germaine*, 99 U.S. 508, 509 (1878). Principal officers must be appointed by the President "with

the Advice and Consent of the Senate." U.S. Const. art. II, § 2, cl. 2. Inferior officers by "default" must be appointed in the same manner. *Edmond v. United States*, 520 U.S. 651, 660 (1997). But the Constitution allows Congress to "by Law vest" the appointment of inferior officers "in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2.

U.S. Attorneys are inferior officers. *See Myers v. United States*, 272 U.S. 52, 159 (1926). Since 1789, Congress has always provided for the appointment of U.S. Attorneys through presidential nomination. *See* Judiciary Act of 1789, ch. 20, § 35, 1 Stat. 92; 28 U.S.C. § 541(a). And beginning with President Washington, presidents all sought the advice and consent of the Senate when making these appointments. *See* James A. Heilpern, *Interim United States Attorneys*, 28 Geo. Mason L. Rev. 187, 190-91 (2020). In 1966, Congress codified that longstanding appointment mechanism for U.S. Attorneys. Act of Sept. 6, 1966, Pub. L. No. 89-554, § 4(c), 80 Stat. 617.

Congress has required Senate advice and consent because U.S. Attorneys wield immense power over individual liberty. Then-Attorney General Robert Jackson maintained that "[t]he prosecutor has more control over life, liberty, and reputation than any other person in America." Robert H. Jackson, *The Federal Prosecutor*, 31 J. Crim. L & Criminology 3 (May-June 1940). By requiring joint participation of the President and Senate, Congress sought to ensure "a judicious

choice" for U.S. Attorney and to prevent selection of someone "who had no other merit" except for being "personally allied" with the President. *The Federalist* No. 76, at 455, 458 (Alexander Hamilton) (Clinton Rossiter ed. 1961). As the Framers recognized, vesting appointment authority solely in the President could "render" an officer "the obsequious instrument of [the President's] pleasure." *Id.* at 458.

2. Congress has long ensured that an interim appointee can fill the office of U.S. Attorney during a vacancy. From 1863 until 1986, Congress vested authority to appoint interim U.S. Attorneys in courts alone. *See* Act of Mar. 3, 1863, ch. 93, § 2, 12 Stat. 768; Act of Sept. 6, 1966, Pub. L. No. 89-554, § 4(c), 80 Stat. 618. In 1986, Congress first gave the Attorney General a complementary role in appointing interim U.S. Attorneys. Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. No. 99-646, § 69, 100 Stat. 3616-17.

That 1986 version of the statute, which tracks the current statutory language, "divide[s] the responsibility for making interim appointments between the Attorney General and the district courts." *United States v. Baldwin*, 541 F. Supp. 2d 1184, 1192 (D.N.M. 2008). Subsections (a) and (b) provide that "the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant," except that "[t]he Attorney General shall not appoint" someone whose appointment has been rejected by the Senate. 28 U.S.C. §§ 546(a), (b). Subsection (c) specifies that "[a] person appointed as United States attorney

under this section may serve until the earlier of" "(1) the qualification of a United States attorney for such district appointed by the President" and confirmed by the Senate "or (2) the expiration of 120 days after appointment by the Attorney General under this section." *Id.* § 546(c). Finally, subsection (d) states that "[i]f an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled." *Id.* § 546(d).

## B. Factual Background

1. On January 21, 2025, Jessica Aber resigned as U.S. Attorney for the Eastern District of Virginia. J.A.92. The next day, Attorney General Bondi appointed Erik Siebert as interim U.S. Attorney under Section 546. J.A.92. Mr. Siebert's appointment expired "120 days after appointment by the Attorney General under [Section 546]," 28 U.S.C. § 546(c)(2)—*i.e.*, on May 21, 2025. J.A.92. At that time, the district judges of the Eastern District of Virginia exercised their authority under Section 546(d) to appoint Mr. Siebert to continue serving. J.A.92.

On September 19, 2025, Mr. Siebert resigned. J.A.92. According to news reports, Mr. Siebert had expressed concerns to senior Department of Justice (DOJ) officials about pursuing an indictment of Mr. Comey and New York Attorney General Letitia James. J.A.92-93. "Mr. Siebert's resignation came hours after President Trump told reporters" that "he 'want[ed] [Mr. Siebert] out.'" J.A.93 (citation omitted).

The next day, President Trump publicly posted a statement on social media urging the Attorney General to prosecute Mr. Comey, Attorney General James, and Senator Adam Schiff—all prominent critics of the President. J.A.93. That post capped an eight-year pattern of President Trump publicly attacking Mr. Comey and calling for his prosecution. *See* D. Ct. Doc. 59 at 4-12. The post asserted that Mr. Comey was "guilty as hell" and emphasized that "JUSTICE MUST BE SERVED" because "[t]hey impeached me twice, and indicted me (5 times!)." J.A.93. The post also called Mr. Siebert a "Woke RINO, who was never going to do his job" and stated that "Lindsey Halligan is a really good lawyer, and likes you, a lot." J.A.93.

Less than 48 hours later, the Attorney General issued an order stating that "[b]y virtue of the authority vested in the Attorney General by 28 U.S.C. § 546, I designate and appoint Lindsey Halligan to serve as the United States Attorney for the Eastern District of Virginia." J.A.35. Before her appointment, Ms. Halligan served as a special assistant to the President and worked as his personal lawyer. She had no prosecutorial experience. J.A.89.

2. On her fourth day in office, September 25, 2025, Ms. Halligan sought a grand jury indictment of Mr. Comey—just five days before the five-year limitations period on Mr. Comey's purported offenses was set to expire. *See* 18 U.S.C. § 3282(a). Ms. Halligan did so even though multiple DOJ and Federal Bureau of Investigation (FBI) investigations across several years closed without

criminal charges against Mr. Comey. *See* D. Ct. Doc. 59 at 3-4. And she did so even though career prosecutors in her own office had recently concluded that no charges should be brought. *Id.* at 9.

"Ms. Halligan was the only prosecutor who participated in the Government's presentation to the grand jury." J.A.94. After reviewing the grand jury materials *in camera*, the district court identified significant irregularities in Ms. Halligan's presentation. Among other things, Magistrate Judge Fitzpatrick found that Ms. Halligan misstated key legal issues, including by "suggest[ing] to the grand jury that Mr. Comey does not have a Fifth Amendment right not to testify at trial." J.A.65; *see* J.A.65-66.

The irregularities continued even after Ms. Halligan's presentation. After deliberating for more than two hours, J.A.49, the grand jury returned a "no true bill" reporting its "failure to concur in an indictment," J.A.30. "At some point, however, a second, two-count indictment was prepared (it is unclear by whom), which removed Count One of the original indictment." J.A.94 n.10. Ms. Halligan and the foreperson signed the new indictment. J.A.94 n.10. But there is no record of the grand jury seeing the new indictment—let alone voting on it. The government later admitted that Ms. Halligan never presented the supposedly operative two-count indictment to the grand jury, D. Ct. Doc. 207 at 48:16-22, though it then purported to retract that admission, D. Ct. Doc. 206 at 1.

Magistrate Judge Vaala ultimately "accepted the return of the second, two-count indictment." J.A.94 n.10. The record suggests that just 14 grand jurors concurred in the two operative counts. J.A.84. Only Ms. Halligan's signature appears on the putative indictment. J.A.94.

Count One of the putative indictment charges Mr. Comey with making false statements to Congress, in alleged violation of 18 U.S.C. § 1001(a)(2). J.A.28. Count Two charges him with "corruptly endeavor[ing] to influence, obstruct and impede" a Senate Judiciary Committee investigation, in alleged violation of 18 U.S.C. § 1505. J.A.29.

### C.   Proceedings Below

1.   Mr. Comey moved to dismiss the indictment on numerous grounds, including because it was secured by an unlawfully appointed U.S. Attorney. J.A.13. Chief Judge Diaz assigned the motion to Judge Currie of the District of South Carolina. D. Ct. Doc. 62-1.

After Mr. Comey filed his motion, the government submitted an order from the Attorney General dated October 31, 2025, that purports to "hereby appoint Ms. Halligan to the additional position of Special Attorney, as of September 22, 2025, and thereby ratify her employment as an attorney of the Department of Justice from that date going forward." J.A.38. "In addition," the order continues, "based on my review of the grand jury proceedings in *United States v. Comey* and *United States v.*

*James*, I hereby exercise the authority vested in the Attorney General by law, including 28 U.S.C. § 509, 510, and 518(b), to ratify Ms. Halligan's actions before the grand jury and her signature on the indictments returned by the grand jury in each case." J.A.38-39.[1]

2.      The district court granted Mr. Comey's motion to dismiss the indictment based on Ms. Halligan's unlawful appointment.  The court held that Ms. Halligan's appointment violated Section 546.  J.A.98.  The court explained that "Section 546 is unambiguous" and "make[s] clear the appointment power (1) shifts to the district court after the 120-day period and (2) does not revert to the Attorney General if a court-appointed U.S. Attorney leaves office before a Senate-confirmed U.S. Attorney is installed." J.A.99.  Thus, the court concluded that when "[t]he 120-day clock . . . expired on May 21, 2025, so too did the Attorney General's appointment authority." J.A.105.

The district court reasoned that "[u]nder the Government's interpretation," "Attorney General appointees can 'serve indefinitely' 'without Senate confirmation' as long as the Attorney General 'revisit[s] her interim appointments every 120 days.'"  J.A.101 (alterations in original) (citation omitted).  "But if that were

_____

[1] On November 14, 2025, the Attorney General issued a second order purporting to "ratify Ms. Halligan's actions before the grand jury and her signature on the indictment." J.A.50.  The Attorney General did so yet again on January 13, 2026. Br.46.

9

correct," the court emphasized, "the Attorney General could prevent interim appointments from ever 'expir[ing] under subsection (c)(2),' which in turn would prevent the district court from ever exercising its appointment power under subsection (d)." J.A.101 (alterations in original) (citation omitted).

The district court additionally held that Ms. Halligan's appointment violates the Appointments Clause. J.A.106. "Because Ms. Halligan was appointed in violation of [the statutory] scheme," the court observed, "her appointment was not authorized 'by Law' and thus also violates the Appointments Clause." J.A.106.

As a remedy, the district court dismissed the indictment. J.A.107.[2] The court explained that Ms. Halligan's "purported official actions" were "void *ab initio*" because she "was not lawfully exercising executive power when she appeared before the grand jury alone and obtained [the] indictment." J.A.107. And the court rejected the Attorney General's attempt "to retroactively appoint Ms. Halligan to the 'additional position' of 'Special Attorney,'" reasoning that "the Government has identified no authority allowing the Attorney General to reach back in time and rewrite the terms of a past appointment." J.A.108-109.

Finally, the district court held that the Attorney General had not properly "ratified Ms. Halligan's actions before the grand jury and her signature on the

---

[2] The district court dismissed the indictment "without prejudice" because it believed that doing so would "return[] Mr. Comey to the status he occupied before being indicted." J.A.116.

indictment." J.A.113. The court deemed "[t]he implications" of the government's ratification argument to be "extraordinary" because "[i]t would mean the Government could send any private citizen off the street — attorney or not — into the grand jury room to secure an indictment so long as the Attorney General gives her approval after the fact." J.A.113-114. In any event, the court concluded that "the Attorney General's attempt to ratify Mr. Comey's indictment on October 31 'came too late in the day to be effective,' as the statute of limitations for the charged offenses expired 31 days earlier on September 30." J.A.114.

## SUMMARY OF ARGUMENT

The Attorney General appointed Ms. Halligan in violation of Section 546 and the Appointments Clause. The indictment that Ms. Halligan secured and signed is thus void and was correctly dismissed.

I.     Ms. Halligan's appointment as interim U.S. Attorney violated Section 546 and the Appointments Clause.

A.     Statutory text, structure, and history show that Section 546 did not authorize Ms. Halligan's appointment. Under Section 546, the Attorney General "may appoint" an interim U.S. Attorney for a district; Attorney General appointees may serve for "120 days" following the Attorney General's invocation of her appointment authority; and after that period "expires," the "district court for such district may appoint a United States attorney to serve until the vacancy is filled." 28

11

U.S.C. §§ 546(a), (c)(2), (d). Notably, subsection (d) transfers appointment authority to the district court alone "if an appointment expires under subsection (c)(2)," *id.* § 546(d)—without any reference to the Attorney General. Here, then, the 120-day clock began when the Attorney General first appointed Mr. Siebert as interim U.S. Attorney; after that period expired, the interim appointment power shifted to the district court.

The government argues that subsection (c)(2)'s 120-day limit applies on a per-appointment basis and allows the Attorney General to renew her appointments every 120 days. That argument has multiple flaws. Most glaringly, it would empower the Attorney General to appoint the same interim U.S. Attorney every 120 days—thus allowing the same person to serve indefinitely without ever being subject to Senate confirmation. The government's interpretation would also nullify the district courts' appointment authority under subsection (d)—which has existed since 1863 and provides a critical check on executive appointments of interim U.S. Attorneys.

Nor can the government's interpretation be reconciled with the statutory history. In 2006, Congress removed the 120-day limit and the district courts' role from Section 546. But after the Executive Branch began firing Senate-confirmed U.S. Attorneys and replacing them with appointees who could serve indefinitely without Senate confirmation, Congress restored the prior language in 2007. Yet the government would read that 2007 amendment to have virtually no effect.

B.     Ms. Halligan's appointment also violated the Appointments Clause.  A "head of department has no constitutional prerogative of appointment to offices independently of the legislation of Congress."  *United States v. Perkins*, 116 U.S. 483, 485 (1886).  Instead, a head of department may appoint an inferior officer only "by Law."  U.S. Const., art. II, § 2, cl. 2.  Because the Attorney General's appointment of Ms. Halligan as an inferior officer was not authorized "by Law," it violates the Appointments Clause.

II.     The district court correctly dismissed the indictment.

A.     Ms. Halligan's unlawful appointment requires dismissal of the indictment for multiple independent reasons.  First, that remedy follows from the Supreme Court's Appointments Clause precedents.  The Court has repeatedly invalidated actions taken by improperly appointed officials and rejected application of the de facto officer doctrine.  The same result follows here.

Second, criminal law remedial principles mandate dismissal.  Where, as here, the single person who presents an indictment to a grand jury lacks a valid appointment to a prosecutorial office, that error is fundamental and requires dismissal.  In any event, an ordinary harmless-error analysis produces the same conclusion: absent Ms. Halligan's unlawful appointment as interim U.S. Attorney, there is every reason to presume that Mr. Comey would not have been indicted before the statute of limitations expired.

B.    The government's post hoc attempts to cure the appointment and indictment fail.  On September 22, 2025, the Attorney General purported to appoint Ms. Halligan only to the position of U.S. Attorney.  Section 546 thus provided the only possible source of governmental authority for Ms. Halligan's actions before the grand jury.  Bedrock administrative-law principles foreclose the Attorney General's late-breaking justification for her invalid appointment.

The Attorney General's attempt to ratify the indictment fares no better. Ratification doctrine has no application in the context of a grand jury indictment— where individual liberty and Fifth Amendment protections are at stake.  Even if ratification doctrine could apply in this context, its preconditions are not satisfied here for multiple reasons.  For one, the putative indictment was void (not just voidable), and a void act cannot be ratified.  For another, the Attorney General's purported ratification came after the limitations period for Mr. Comey's alleged offenses expired.

## ARGUMENT

The Appointments Clause "is among the significant structural safeguards of the constitutional scheme."  *Edmond v. United States*, 520 U.S. 651, 659 (1997). Here, the Attorney General sought to circumvent that safeguard by appointing Ms. Halligan as interim U.S. Attorney in violation of Section 546—and thus acted without the authority of "Law" that the Appointments Clause requires.  Because an

unlawfully appointed official lacks governmental authority, Ms. Halligan's actions are void *ab initio*, the indictment she obtained is a nullity, and it must be dismissed.

## I.    MS. HALLIGAN'S APPOINTMENT AS INTERIM U.S. ATTORNEY VIOLATED SECTION 546 AND THE APPOINTMENTS CLAUSE

Congress has established "by Law" the manner in which U.S. Attorneys and interim U.S. Attorneys shall be appointed.  U.S. Const., art. II, § 2, cl. 2.  As a default rule, "[t]he President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district."  28 U.S.C. § 541(a).  And as an exception to that default rule, Congress has created a reticulated scheme for addressing "[v]acancies" in the office of U.S. Attorney.  *Id.* § 546.

Ms. Halligan's appointment was not authorized under this framework.  She was not appointed by the President and confirmed by the Senate under Section 541. And her appointment as interim U.S. Attorney was inconsistent with Section 546. Accordingly, her appointment as an inferior officer lacked any legal basis and violated the Appointments Clause.

### A.    Section 546 Did Not Authorize Ms. Halligan's Appointment

Section 546's text, structure, and history preclude serial, unlimited appointments by the Attorney General.  Ms. Halligan's appointment therefore lacked any statutory foundation.

### 1.     Ms. Halligan's appointment contravened Section 546's text

Where "[t]he plain meaning of the statutory text" yields a clear answer to the question presented, "it is not necessary to go any further." *Babb v. Wilkie*, 589 U.S. 399, 404 (2020). As the district court correctly held, that is the case here. J.A.99 ("Section 546 is unambiguous."). Section 546 establishes a clear framework: The Attorney General "may appoint" an interim U.S. Attorney for a district; Attorney General appointees may serve for "120 days" following the Attorney General's invocation of her appointment authority; and after that period "expires," the "district court for such district may appoint a United States attorney to serve until the vacancy is filled." 28 U.S.C. §§ 546(a), (c)(2), (d). Under that framework, the Attorney General's initial appointment of an interim U.S. Attorney starts the 120-day clock; and the clock runs out on the 120th day that an Attorney General appointee is in office. That is the only logical reading of the provision: If the Attorney General could make successive appointments of interim U.S. Attorneys, the 120-day period would be rendered meaningless, and the government could nullify Section 541's default requirement of Senate confirmation and the district court's longstanding appointment authority under subsection (d). The text thus precludes an additional appointment by the Attorney General after the 120-day period expires.

a.     Section 546(a) begins by authorizing the Attorney General to "appoint a United States attorney for the district in which the office of United States attorney

16

is vacant." 28 U.S.C. § 546(a). But subsection (c) imposes a durational limit on that means of temporarily filling the office: "*A* person appointed as United States attorney under this section may serve until" the "expiration of 120 days after appointment by the Attorney General under this section." *Id.* § 546(c)(2) (emphasis added). By using the word "a" as an "indefinite article" to describe the time-limited interim U.S. Attorney, Congress referred to "unspecified" persons appointed by the Attorney General—not "particular" ones. *McFadden v. United States*, 576 U.S. 186, 191 (2015) (quoting *Webster's New International Dictionary* 1 (2d ed. 1954)). Subsection (c) therefore establishes a total 120-day limit tied to the Attorney General's initial appointment of *any* interim U.S. Attorney.

That reading is reinforced by Congress's instructions for what happens after the 120-day period elapses. Subsection (d) provides that, "if an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled." 28 U.S.C. § 546(d). "The first word in subsection (d) — 'if' — introduces a conditional clause that establishes the condition triggering the district court's authority." J.A.99. "That condition is met once '*an* appointment expires under subsection (c)(2),'"—meaning that the "expiration of any single Attorney General appointment satisfies the condition." J.A.99 (quoting 28 U.S.C. § 546(d)). In turn, the word "until" in subsection (d) "defines the duration of the district court's authority": "[i]t lasts from the moment"

an appointment expires under subsection (c)(2) "'up to the time that' the vacancy is filled by a Senate-confirmed appointee." J.A.100 (quoting *Merriam-Webster's Collegiate Dictionary* 1297 (10th ed. 1997)).

Notably, subsection (d) empowers the district court alone to appoint an interim U.S. Attorney "if an appointment expires under subsection (c)(2)," 28 U.S.C. § 546(d)—without any mention of the Attorney General. "[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Collins v. Yellen*, 594 U.S. 220, 248 (2021) (citation omitted). Here, "[t]he omission of the Attorney General in subsection (d), when combined with her inclusion in subsection (a), is strong evidence Congress did not intend for the Attorney General to retain appointment power beyond 120 days." J.A.100.

Contrary to the government's suggestion (at 24), it is immaterial that subsection (d) states that the district court "may appoint," and not that it "shall appoint." As an initial matter, Congress presumably used "may appoint" because the district court would not need to appoint an interim U.S. Attorney if the President were to appoint an Acting U.S. Attorney under the Federal Vacancies Reform Act (FVRA) after the 120-day period expired. And regardless, "federal statutes that establish procedural entitlements" "regularly use 'may' to confer categorical

permission" that cannot be displaced. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398-99 (2010).

The government likewise errs in asserting that the phrase "until the vacancy is filled," 28 U.S.C. § 546(d), "establishes the durational limit of a court-appointed U.S. Attorney's term, not the duration" of the district court's "exclusive appointment authority," Br.24. Subsection (c) *already* establishes that "[a] person appointed as United States attorney under this section"—which includes subsection (d)—"may serve until . . . the qualification of a United States attorney for such district appointed by the President under section 541." 28 U.S.C. § 546(c)(1). Thus, the government construes "until the vacancy is filled" in subsection (d), *id.* § 546(d), to be "altogether redundant"—a result this Court should "avoid," *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995).

The government (at 20) also contends that the district court's interpretation is too restrictive because it might require an Attorney General to make "multiple interim U.S. Attorney appointments" in a 120-day period. But in most instances, a single appointee will serve the full 120-day term. Congress allowed the Attorney General to appoint additional persons within the 120-day period so that her appointment authority would not be cut short in the unusual circumstance that an interim appointee could not serve for 120 days.

b.　　According to the government, "[s]ubsection (c)(2)'s time limit appl[ies] on a per-appointment basis," Br.18, and allows the Attorney General to "revisit and renew her interim appointments every 120 days," Br.29.  But had Congress intended that result, it would have written: "A person appointed as United States attorney under this section may serve until . . . the expiration of 120 days after *that* appointment."  Instead, Congress started the 120-day clock "after appointment by the Attorney General."  28 U.S.C § 546(c)(2).

The government argues (at 19) that because subsection (a) "identifies only" subsection (b) as an exception to the Attorney General's appointment authority, no other exceptions can exist.  But "[t]he force of any negative implication . . . depends on context."  *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013).  And the government does not even believe in the supposed negative implication here.  After all, if the government's reading were correct, then the Attorney General could expressly appoint an interim U.S. Attorney for a 130-day period.  Yet the government admits that, under its interpretation, "each new appointment of an interim U.S. Attorney by the Attorney General" is subject to "a new 120-day clock." Br.20.

The government also contends (at 20) that because Section 546 elsewhere uses "appointment" to reference "an appointment specific to that person," it must mean the same thing in subsection (c)(2).  But those other parts of Section 546 use phrases

such as "*whose* appointment," 28 U.S.C. § 546(b) (emphasis added), and "*the order of* appointment," *id.* § 546(d) (emphasis added), that clearly reference appointments of specific persons.  By contrast, subsection (c)(2) refers generically to "[a] person" and "after appointment." *Id.* § 546(c)(2).  That distinct language implies that a "different meaning[] [was] intended." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) (citation omitted).

The government's interpretation would "in practical effect render [subsection (d)] entirely superfluous in all but the most unusual circumstances." *TRW Inc. v. Andrews*, 534 U.S. 19, 29 (2001).  By appointing a new interim U.S. Attorney or re-appointing the same one every 119th day, "the Attorney General could prevent interim appointments from ever 'expir[ing] under subsection (c)(2),' which in turn would prevent the district court from ever exercising its appointment power under subsection (d)." J.A.101 (alteration in original).  While the government insists (at 23) that subsection (d) gives the district court and Attorney General "parallel authority" to "make further interim appointments," the government's reading would confer *plenary* authority on the Executive Branch—because the President and Attorney General could always remove and replace the district court's appointee. *See* Br.26.

Lacking textual support, the government invokes the so-called "presumption" that "when a statute provides for an appointee to serve a term of years, the specified

21

term of service begins with the appointment." Br.20 (citation omitted). But the government's only cited applications of that presumption involve *Senate-confirmed* officials. *See* 28 U.S.C. § 541 (U.S. Attorneys); 23 Op. O.L.C. 123 (1999) (officials "appointed by the President with the advice and consent of the Senate"). Applying that presumption to acting or interim officials would impermissibly allow the Executive Branch to evade Senate confirmation by making consecutive appointments that each restart the clock. Regardless, Section 546's text—and the established role of district courts under subsection (d)—would rebut any presumption.

The government's reliance (at 22) on case law fares no better. In *Salomon-Guillen v. Garland*, 123 F.4th 709 (4th Cir. 2024), this Court interpreted a regulation providing for the appointment of "temporary Board members for renewable terms not to exceed six months," 8 C.F.R. § 1003.1(a)(4), to allow "the same person" to be appointed "to multiple consecutive terms," *Salomon-Guillen*, 123 F.4th at 717; *see Rivera v. Garland*, 108 F.4th 600, 606 (8th Cir. 2024) (same). But the Court concluded that the regulatory text "simply does not address the issue of additional terms." *Salomon-Guillen*, 123 F.4th at 718 (quoting *Rivera*, 108 F.4th at 606). It thus relied on regulatory "structure" and "history" supporting "the government's reading." *Id.* Here, by contrast, Section 546 expressly bars successive 120-day

22

appointments *and* the statutory structure and history reinforce that interpretation. *See infra* Part I.A.2 and 3.

Ultimately, the government resorts to "constitutional avoidance." Br.30. But as the government acknowledges, that canon is triggered only if the statutory text is "ambiguous," Br.30 (citation omitted)—and Section 546 is not. Nor is there any constitutional problem to avoid. The Appointments Clause states that Congress "may by Law vest the Appointment" of inferior officers "in the Courts of Law." U.S. Const., art. II, § 2, cl. 2. Courts have thus uniformly rejected constitutional challenges to court-appointed U.S. Attorneys under Section 546(d). *See, e.g.*, *United States v. Hilario*, 218 F.3d 19, 26-29 (1st Cir. 2000); *United States v. Baldwin*, 541 F. Supp. 2d 1184, 1220-25 (D.N.M. 2008). And the Supreme Court has approvingly cited Section 546(d) while explaining that there is no "incongruity about a court having the power to appoint prosecutorial officers"; to the contrary, "it could be said that courts are especially well qualified to appoint prosecutors." *Morrison v. Olson*, 487 U.S. 654, 676 & n.13 (1988).

The government nonetheless objects (at 31) that the district court's reading authorizes "Article III courts to control the appointment of a paradigmatic executive official *even over the President's objection*." But that concern is illusory because all agree that the President may remove a district court's appointee. While the government speculates (at 31) that "the court could continue making appointments

unacceptable to the President, and the President could continue removing those appointees," it cites no such examples across the four decades before this Administration. And if that did occur, the President could appoint an Acting U.S. Attorney under the time- and appointee-limited procedures of the FVRA. *See United States v. Giraud*, 160 F.4th 390, 399 (3d Cir. 2025). The government admits (at 28) that district courts have generally "reappointed the Attorney General's choice"— which confirms that Section 541 and 546 have long struck a balance between respecting the President's prerogatives and preserving court appointments to encourage the President to seek Senate confirmation of permanent U.S. Attorneys. The government's interpretation would upend that balance.

### 2. Statutory structure confirms the best reading of the text

"The statutory structure also reinforces" the most natural reading of Section 546's text. *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 381 (2018). Section 541 establishes the default rule that "[t]he President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district." 28 U.S.C. § 541(a). The government's sweeping interpretation of "the exception" in Section 546 for interim U.S. Attorneys would "swallow the rule" in Section 541 for permanent U.S. Attorneys. *Diaz v. United States*, 602 U.S. 526, 537 (2024). If the government were correct that the Attorney General could "renew her interim appointments every 120 days," Br.29, then the President would have no

reason to appoint a permanent U.S. Attorney to be confirmed by the Senate. Instead, the Attorney General (at the President's direction) could simply appoint (and reappoint) someone under Section 546 who lacks the qualifications to survive Senate scrutiny. And the President could thus install his personal allies as chief prosecutors across the country, without any check by the Senate.

Similarly, the government's interpretation would render meaningless the one limit that it purports to recognize: that the Attorney General cannot appoint someone whose nomination has been rejected by the Senate. Br.17. If the Senate were to express concerns about a U.S. Attorney nominee, then the President could simply withdraw the nomination and direct the Attorney General to appoint that same person indefinitely as U.S. Attorney under Section 546—thus thwarting the confirmation process.

The government suggests (at 28) that tension exists between Section 546(d)'s authorization of district court appointments and Section 541's default rule of "Senate confirmation." In fact, those two provisions work seamlessly together. By shifting appointment authority from the Attorney General to the district court after 120 days, Congress "provid[ed] an incentive for the President to exercise his statutory power under 28 U.S.C. § 541" to appoint U.S. Attorneys with the Senate's advice and consent. *United States v. Sotomayor Vazquez*, 69 F. Supp. 2d 286, 295 (D.P.R. 1999), *aff'd*, 249 F.3d 1 (1st Cir. 2001). After all, the President will generally prefer

his own Senate-confirmed appointee over the district court's selection. And even if court-appointed interim U.S. Attorneys occasionally served lengthy stints, those individuals would at least have the backing of a different branch—thereby ensuring that they were selected based on merit rather than loyalty to the President.

The government insists (at 30) that the need for the Attorney General to revisit appointments every 120 days is a meaningful safeguard. But asking the Attorney General to check herself is no check at all. While the government claims (at 30) that it will have "little incentive to forgo [the] benefits" of Senate confirmation, that assurance rings hollow given this Administration's actions. In districts throughout the country, it has sought to evade Senate confirmation of U.S. Attorneys through unprecedented machinations—only to be rebuffed by courts. *See Giraud*, 160 F.4th at 400-01; *United States v. Garcia*, No. 25-cr-230, 2025 WL 2784640, at *3 (D. Nev. Sept. 30, 2025). "[P]residential appointment and Senate confirmation [have] remain[ed] the norm," Br.29-30, only because courts have rejected the government's attempts to circumvent the Appointments Clause.

### 3. Statutory history further refutes the government's reading

"Statutory history is an important part of [the] context" that courts must consider. *United States v. Hansen*, 599 U.S. 762, 775 (2023). Here, the government's interpretation "conflicts with [S]ection 546's statutory history." J.A.101.

a.　　Beginning in 1863, Congress provided for exclusive judicial authority to appoint interim U.S. Attorneys—without any involvement from the Attorney General.  *See* Act of Mar. 3, 1863, ch. 93, § 2, 12 Stat. 768; Act of June 24, 1898, ch. 495, § 2, 30 Stat. 487-88.  In 1966, Congress codified district courts' exclusive appointment role in 28 U.S.C. § 546.  *See* Pub. L. No. 89-554, § 4(c), 80 Stat. 618.  It was not until 1986 that Congress for the first time gave the Attorney General a complementary role, adopting a version of the statute that tracks the current language.  Pub. L. No. 99-646, § 69, 100 Stat. 3616-17.

The government's interpretation cannot be squared with that history.  The government asserts that the 1986 law empowered the Attorney General to displace district courts from their longstanding—and, for more than 120 years, *exclusive*— role in appointing interim U.S. Attorneys.  But "when Congress wishes to 'alter the fundamental details of a [statutory] scheme,'" it "speak[s] with the requisite clarity to place that intent beyond dispute."  *U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*, 590 U.S. 604, 621 (2020) (citation omitted).  Here, the government contends that Congress altered the fundamental details of Section 546 by nullifying the district courts' entrenched role in appointing interim U.S. Attorneys—even though nothing in the statute speaks with "the requisite clarity."  *Id.*  To the contrary, Section 546(d) expressly *retained* the district courts' appointment authority.

Just three days after Congress enacted the 1986 law, the Office of Legal Counsel (OLC) interpreted it the same way as the district court here. In a memorandum authored by then-Deputy Assistant Attorney General (DAAG) Samuel Alito, OLC concluded that while a "vacancy exists when the 120-day period expires under the amended section 546," "it does not follow that the Attorney General may make another appointment pursuant to 28 U.S.C. 546(a)." Memorandum from Samuel A. Alito, Jr., DAAG, OLC, on Definition of Vacancy for the Purpose of Interim Appointment of United States Attorneys Pursuant to 28 U.S.C. 546, as amended 3 (Nov. 13, 1986) (OLC Mem.), https://perma.cc/SD5Q-7CPH. Instead, "further interim appointments are to be made by the court rather than by the Attorney General." *Id.* Later administrations adhered to the same view. *See* DOJ, *White House and Justice Department Begin U.S. Attorney Transition* (Mar. 14, 2001), https://perma.cc/8U85-YLSG. Such a "contemporaneous[]" and "consistent" Executive Branch interpretation warrants "respect." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024). Although the government mischaracterizes then-DAAG Alito's reasoning as atextual, Br.35-36, his memorandum considers legislative history only to "support[]" his reading of the text, OLC Mem. 3.

b. In 2006, Congress "amended the statute to abolish 'the 120-day limit and the district court's backstopping role' altogether." J.A.102 (citation omitted);

*see* USA Patriot Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, Tit. V, § 502, 120 Stat. 246.  That change—which was "inserted quietly into the conference report . . . without debate"—"created a possible loophole that could permit United States Attorneys appointed on an interim basis to serve indefinitely without Senate confirmation."  H.R. Rep. No. 110-58, at 4-5 (Mar. 20, 2007).  The Executive Branch swiftly capitalized: The Attorney General began firing Senate-confirmed U.S. Attorneys and replacing them with non-confirmed appointees who could serve indefinitely.  *See id.* at 7-9.

But "[t]he switch to an unlimited appointment was short lived."  J.A.102 (citation omitted).  In June 2007, Congress enacted the Preserving United States Attorney Independence Act, Pub. L. No. 110-34, § 2, 121 Stat. 224, to "reinstat[e] the 120-day limit and the district court's role in the interim appointment process," J.A.102.  "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect."  *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 189 (2020) (citation omitted).  Yet the government would read the 2007 amendment to have none because "it would still allow the Executive to evade the Senate confirmation process indefinitely by stacking successive 120-day appointments."  J.A.102.

The government gives undue weight to unreliable sources of congressional intent.  The House Report states that the 2007 Act sought to address serious concerns

about the Executive Branch "Bypassing the Requirement of Senatorial Advice and Consent." H.R. Rep. No. 110-58, at 6. Such a report represents an "authoritative source for finding the Legislature's intent." *Garcia v. United States*, 469 U.S. 70, 76 (1984). By contrast, the government cites (at 34) Senator Kyl's "floor statement[]" and an "excerpt[] from [a] committee hearing[]"—two of "the least illuminating forms of legislative history." *Advoc. Health Care Network v. Stapleton*, 581 U.S. 468, 481 (2017) (citation omitted). It is thus the government that employs legislative history to "look[] over a crowd and pick[] out [its] friends." Br.34 (citation omitted). And the government's preferred materials are particularly underwhelming because most Members of Congress apparently did not read the pre-2006 statute the same way as Senator Kyl. *See* 153 Cong. Rec. S3302 (Mar. 20, 2007) (rejecting Senator Kyl's proposed amendment).

The government also erroneously contends (at 33) that the 2007 Congress "ratified" the "practice" of "successive appointments by the Attorney General." The government bases that argument primarily on the decision in *In re Grand Jury Proceedings*, 671 F. Supp. 5 (D. Mass. 1987), which upheld a "second interim appointment" with scarce analysis. *Id.* at 7. But that single district court decision—issued two decades before the 2007 amendment—comes nowhere close to establishing a "judicial consensus so broad and unquestioned that we must presume Congress knew of and endorsed it." *Jama v. Immigr. & Customs Enf't*, 543 U.S.

335, 349 (2005) (two courts of appeals decisions insufficient to establish a judicial consensus); *see Learning Resources, Inc. v. Trump*, No. 24-1287, 2026 WL 477534, at *12 (S. Ct. Feb. 20, 2026) ("A single, expressly limited opinion from a . . . [lower] court does not" support ratification). Indeed, it is especially unlikely that the 2007 Congress would have deemed *In re Grand Jury Proceedings* relevant because it arose in the unusual circumstance "where the district court . . . ha[d] expressly declined to exercise its power under § 546(d)." 671 F. Supp. at 7.

The government also cites (at 32) eight successive 120-day appointments across the Clinton and Bush administrations. But "historical evidence," *id.* at 33, is "too grand a title" for the government's argument, *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 308 (2017). Its isolated examples fall far short of the "systematic, unbroken, executive practice" necessary to support a claim of ratification. *Medellín v. Texas*, 552 U.S. 491, 531 (2008) (citation omitted). In *SW General*, for instance, the Court held that "112 [Executive Branch] nominations" over two decades failed to show that Congress had "accept[ed]" the "Executive's practice." 580 U.S. at 308. The same conclusion necessarily follows here.

\*     \*     \*

The district court correctly concluded that "the Attorney General's authority to appoint an interim U.S. Attorney lasts for a total of 120 days from the date she first invokes" the statute. J.A.105. Here, Ms. Halligan "was not appointed in a

manner consistent with th[at] framework," J.A.105, because the 120-day period had long expired when the Attorney General purported to install Ms. Halligan as interim U.S. Attorney. Accordingly, Section 546 did not authorize Ms. Halligan's appointment.

## B. Ms. Halligan's Appointment Also Violated The Appointments Clause

The Appointments Clause allows Congress to "by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const., art. II, § 2, cl. 2. Section 546 vests the appointment of interim U.S. Attorneys "by Law" in a "Head of Department[]"—the Attorney General—for a 120-day period. For the remainder of a vacancy, Section 546 vests the appointment of interim U.S. Attorneys "by Law" in the "the Courts of Law"—district courts.

As explained above, Section 546 did not authorize Ms. Halligan's appointment. And the Attorney General "has no constitutional prerogative of appointment to offices independently of the legislation of Congress." *United States v. Perkins*, 116 U.S. 483, 485 (1886). Ms. Halligan's appointment was not "authorized 'by Law' and thus . . . violate[d] the Appointments Clause." J.A.106.

The government maintains (at 44) that so long as any "head of a department" appoints the relevant "inferior officer," then the appointment "does not run afoul of the Appointments Clause." But the Appointments Clause does not give heads of

departments unilateral authority to appoint inferior officers—it sets a default rule of presidential appointment and Senate confirmation and then allows Congress to deviate from that rule only by assigning the appointment of inferior officers to heads of departments "by statute." *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 804 (2025) (Thomas, J., dissenting).

The government emphasizes (at 44) that *Ryder v. United States*, 515 U.S. 177 (1995), distinguishes between claims "based on the Appointments Clause" and those based on "a mere matter of statutory construction." *Id.* at 181-82 (citation omitted). But the statutory claim referenced in *Ryder* involved a person who had been properly appointed as "a judge of the United States district court, having all the powers attached to such office." *McDowell v. United States*, 159 U.S. 596, 601 (1895). The defect turned on the "misapplication of a statute providing for the assignment of *already appointed* judges to serve in other districts." *Ryder*, 515 U.S. at 182. By contrast, the defect here is constitutional because it goes to whether Ms. Halligan received a proper appointment in the first place—and thus could lawfully exercise the "powers attached to [the] office" of U.S. Attorney at all. *McDowell*, 159 U.S. at 601.

The government's analogy (at 44) to *Dalton v. Specter*, 511 U.S. 462 (1994), is misconceived. There, the Court rejected the argument "that whenever the President acts in excess of his statutory authority, he also violates the constitutional

33

separation-of-powers doctrine." *Id.* at 471. But unlike the separation-of-powers doctrine, the Appointments Clause contains express text requiring that the relevant action be taken "by Law." *Dalton* thus says nothing about whether an Appointments Clause claim is cognizable here.

## II. THE DISTRICT COURT CORRECTLY DISMISSED THE INDICTMENT

This Court should affirm the district court's dismissal of the indictment. That remedy follows as a matter of course from Appointments Clause and criminal law principles. The Attorney General's post hoc efforts to cure the appointment and indictment lack merit.

### A. Ms. Halligan's Unlawful Appointment Requires Dismissal Of The Indictment

#### 1. Appointments Clause precedents require dismissal

a. The district court followed settled law in dismissing the indictment upon holding that Ms. Halligan was not lawfully appointed when she alone secured and signed that indictment. When a court determines that a putative officer exercised "power that the actor did not lawfully possess," including because she was not "properly appointed," that ruling renders her past actions "void." *Collins*, 594 U.S. at 257-58. Without a proper appointment, the putative officer "lack[s] constitutional authority to do [her] job." *Brooks v. Kijakazi*, 60 F.4th 735, 742 (4th Cir. 2023) (citation omitted). And because "officials cannot wield executive power except as

Article II provides," "[a]ttempts to do so are void." *Collins*, 594 U.S. at 283 (Gorsuch, J., concurring in part).

Applying these principles, the Supreme Court has invalidated judgments issued or reviewed by improperly appointed adjudicators. In *Ryder*, the Court "reversed" the court-martial conviction of a defendant after he successfully challenged the appointment of the appellate judges who reviewed his case. 515 U.S. at 188. And in *Lucia v. SEC*, 585 U.S. 237 (2018), the Court set aside an agency adjudication conducted by an improperly appointed official. *Id.* at 251.

In *United States v. Trump*, 740 F. Supp. 3d 1245 (S.D. Fla. 2024), the court applied these principles when dismissing an indictment after concluding that the prosecutor who secured it lacked a valid appointment. The court explained that because the individual's "exercise of prosecutorial power has not been authorized by law," there was "no way forward aside from dismissal of the Superseding Indictment." *Id.* at 1302. Indeed, the government there did not even "propose an alternative course." *Id.* The court reasoned that "[i]nvalidation follows directly from the government actor's lack of authority to take the challenged action in the first place." *Id.* at 1302-03 (citation omitted).

Here, the district court adhered to established law in setting aside the product of Ms. Halligan's unlawful appointment. J.A.107-108. When Ms. Halligan purported to secure and sign the indictment in this case, she was exercising power

35

that she "did not lawfully possess." *Collins*, 594 U.S. at 258. It was no different than if a private citizen, not representing the Executive Branch, went before the grand jury and purported to authorize its issuance of a charging instrument. Thus, the indictment is "void *ab initio*" and cannot stand. J.A.107.

b. The government contends that Ms. Halligan's actions should be given "'de facto validity' even if she were unlawfully appointed." Br.42 (quoting *Buckley v. Valeo*, 424 U.S. 1, 142 (1976) (per curiam)). As the district court correctly concluded, J.A.110-111, the Supreme Court's Appointments Clause precedents foreclose application of the de facto officer doctrine here. In *Ryder*, the Court rejected the government's de facto officer argument where a criminal defendant raised an Appointments Clause challenge to his conviction on direct review. 515 U.S. at 182-84. The Court explained that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred." *Id.* at 182-83. "Any other rule," the Court emphasized, "would create a disincentive to raise Appointments Clause challenges." *Id.* And in *Lucia*, the Court reiterated *Ryder*'s logic when invalidating "an adjudication tainted with an appointments violation." 585 U.S. at 251; *see id.* at 251 n.5.

Here, Mr. Comey made "a timely challenge to the constitutional validity" of Ms. Halligan's appointment by immediately moving to dismiss on that basis. *Ryder*, 515 U.S. at 182-83. He is therefore "entitled to a decision on the merits of the question and whatever relief may be appropriate." *Id.* Yet applying the de facto officer doctrine would deny Mr. Comey any remedy—thus "creat[ing] a disincentive to raise Appointments Clause challenges," *id.*, in contravention of *Ryder* and *Lucia*.

The government rests (at 45) its de facto officer argument on the Court's earlier decision in *Buckley*. But *Buckley* was a "civil case[]" in which the Court "summarily held" that the past acts of Federal Election Commission (FEC) members were "accorded *de facto* validity" despite their invalid appointments. *Ryder*, 515 U.S. at 183 (quoting *Buckley*, 424 U.S. at 142). And in *Ryder*, the Court concluded that "[t]o the extent" that *Buckley* "may be thought to have implicitly applied a form of the *de facto* officer doctrine," it was "not inclined to extend [*Buckley*] beyond [its] facts." *Id.* at 184. Thus, *Ryder* "buried past precedents," including *Buckley*, that had "appl[ied] the doctrine." *Rop v. FHFA*, 50 F.4th 562, 587 (6th Cir. 2022) (Thapar, J., concurring in part and dissenting in part).

The government asserts (at 45) that *Ryder* and *Lucia* are limited to "adjudicatory officers," while *Buckley* applies elsewhere. But that assertion ignores the Supreme Court's categorical statements that "Appointments Clause remedies are designed . . . to create '[i]ncentive[s] to raise Appointments Clause challenges,'"

*Lucia*, 585 U.S. at 251 n.5 (citation omitted), as well as this Court's categorical statements that "'remedies with bite' should be applied to appointments that run afoul of the Clause's restrictions," *Brooks*, 60 F.4th at 740 (citation omitted). Indeed, other circuits have rejected the government's position that meaningful Appointments Clause remedies are limited to cases involving adjudicators. *See, e.g.*, *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 82 (D.C. Cir. 2015) (Acting General Counsel of the NLRB). Nor is there any coherent basis for applying the de facto officer doctrine to prosecutors but not adjudicators. "[T]he discretionary power exercised by the prosecuting attorney in initiation, accusation, and discontinuance of prosecution gives him more control over an individual's liberty and reputation than any other public official." *Ganger v. Peyton*, 379 F.2d 709, 712 n.4 (4th Cir. 1967) (citation omitted). Because the Appointments Clause is designed to protect liberty, it must be vigorously enforced—not discarded—in cases of improperly appointed prosecutors.

The government also maintains (at 43-44) that the de facto officer doctrine applies because (in its view) this case involves a statutory, not constitutional, violation. As already explained, the government's premise is wrong—Ms. Halligan's purported appointment violated the Appointments Clause. *See supra* at 32-34. Regardless, the de facto officer doctrine would not apply even if the violation here were solely statutory. In *Nguyen v. United States*, 539 U.S. 69 (2003), the Court

38

remedied a statutory appointments violation and rejected application of the de facto officer doctrine because the violation was "fundamental" and "embodie[d] weighty congressional policy." *Id.* at 79. *Nguyen* thus precludes application of the de facto officer doctrine to cases—like this one—involving "important statutory defects." *SW Gen.*, 796 F.3d at 81.

## 2. Criminal law remedial principles also require dismissal

Dismissal also follows from criminal law remedial principles. While the "customary harmless-error inquiry is [normally] applicable where . . . a court is asked to dismiss an indictment prior to the conclusion of the trial," that is not the case for "fundamental" errors that compromise the "structural protections of the grand jury." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256-57 (1988). Such errors "render the proceedings fundamentally unfair, allowing the presumption of prejudice." *Id.*

a. The district court correctly concluded that this case involves a fundamental error. J.A.112. A grand jury proceeding is a "secret session" where a prosecutor seeks to indict a "citizen" "on the basis of his one-sided presentation of the facts." Jackson, *supra* at 3. "[I]t is the prosecutor who examines the witnesses, summarizes the evidence, and advises the grand jury on the law." J.A.112 n.20. Thus, although a defendant is "not indicted by [the prosecutor]," Br.55, "it is 'easy to overstate the grand jury's independence from the prosecutor,'" J.A.112 n.20

(quoting 1 *Wright & Miller's Federal Practice & Procedure* § 102 (5th ed. 2025)).

Where, as here, the single person who presents an indictment to a grand jury lacks a valid appointment to a prosecutorial office—and is thus no differently situated than a private citizen—that error is fundamental. Under the Federal Rules, only "attorney[s] authorized by law" to act "as a prosecutor" may conduct grand jury proceedings. Fed. R. Crim. P. 1(b)(1)(D); *see* Fed. R. Crim. P. 6(d)(1). Here, Ms. Halligan was not such an authorized prosecutor—and yet she held herself out to the grand jury as the chief prosecutor for the district. Just as the "appointment of an interested prosecutor" is a "fundamental" error that "undermines confidence in the integrity of the criminal proceeding," so too is the *invalid* appointment of a prosecutor who lacks lawful authority to "wield [the] formidable criminal enforcement powers" at all. *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 810 (1987) (plurality op.); *see United States v. Rosenthal*, 121 F. 862, 874 (C.C.S.D.N.Y. 1903) (finding indictments to be "faulty . . . for the single reason that they are based upon proceedings in great part conducted without authority by the special assistant to the Attorney General").

The government's reliance (at 55) on *United States v. Suescun*, 237 F.3d 1284 (11th Cir. 2001), is misplaced. There, the defendant "waived his objection to the validity of the indictment" based on an interim U.S. Attorney's allegedly improper appointment, and a properly appointed "assistant United States Attorney . . .

40

prosecuted the case for the Government." *Id.* at 1285, 1288. Here, by contrast, Mr. Comey raised a timely challenge to "the unique, if not unprecedented, situation where an unconstitutionally appointed prosecutor . . . acted alone in conducting a grand jury proceeding and securing an indictment." J.A.112.

b.      In any event, the same result obtains under the "customary harmless-error inquiry." *Bank of Nova Scotia*, 487 U.S. at 256. Absent Ms. Halligan's unlawful appointment, there is every reason to believe that Mr. Comey would not have been indicted before the statute of limitations expired. Neither the lawfully appointed interim U.S. Attorney nor anyone else in the U.S. Attorney's Office was willing to pursue this prosecution. *See* J.A.92-93. Thus, in the waning days of the limitations period, the President directed the Attorney General to appoint a White House aide as U.S. Attorney; and Ms. Halligan presented the case to the grand jury without the participation of any other prosecutor. J.A.112. In turn, the grand jury was led to believe that the chief prosecutor in the district had presented the case—when in fact that supposed prosecutor possessed the same authority as someone who walked in off the street. Ms. Halligan's improper appointment as U.S. Attorney thus "substantially influenced the grand jury's" purported issuance of the indictment. *Bank of Nova Scotia*, 487 U.S. at 256.[3]

---

[3] As noted above, *supra* at 7-8, there is no record of the grand jury seeing and voting on the purported indictment.

The government's cited authorities (at 53) are inapposite because they involve indictments reviewed and approved by properly appointed officials. In *United States v. Smith*, 962 F.3d 755 (4th Cir. 2020), this Court deemed harmless the allegedly improper appointment of the Acting Attorney General where a Senate-confirmed U.S. Attorney had prosecuted the case, and the defendant could not "provide[] a single concrete example of how" the Acting Attorney General "influenced his criminal proceeding." *Id.* at 766. Similarly, in *Kelly v. United States*, 989 F.3d 67 (1st Cir. 2021), the First Circuit declined to vacate a conviction on habeas review based on the lead prosecutor's lack of a valid license where the properly appointed "United States Attorney, through his designees, reviewed and approved the indictment." *Id.* at 71. The court "distinguish[ed]" cases like this one where no attorneys other than the unauthorized official had "examined and approved the indictment." *Id.* Indeed, where (as here) a prosecutor is not "a proper representative" of the government and "no other attorneys [are] working . . . on th[e] case," courts have found that dismissal is the only remedy commensurate with the violation. *United States v. Garcia-Andrade*, No. 13-cr-993, 2013 WL 4027859, at *5-6 & n.2 (S.D. Cal. Aug. 6, 2013).

The government nonetheless insists (at 54) that the "proceedings would have played out *exactly the same*" if Ms. Halligan had been appointed to a position other than U.S. Attorney. But even assuming that some valid case-specific appointment

for Ms. Halligan had been possible, the grand jury may have viewed any indictment with a more skeptical eye if it were presented by an attorney tasked specifically with "conduct[ing] and supervis[ing] the prosecution[] in *United States v. Comey*," J.A.38, instead of by an attorney supposedly cloaked with the authority of a U.S. Attorney. Particularly given Magistrate Judge Fitzpatrick's finding of significant errors in Ms. Halligan's presentation, the grand jury's issuance of a no true bill on at least one count, and the narrow margin of the (purported) indictment on two other counts, J.A.84-85, there is at least "grave doubt" that Ms. Halligan's unlawful appointment played a "substantial" role in the supposed issuance of an indictment before the statute of limitations expired, *Bank of Nova Scotia*, 487 U.S. at 256.

## B. The Government's Post Hoc Attempts To Cure The Appointment And Indictment Fail

As a last-ditch effort, the government seeks to save the indictment through various post hoc maneuvers. But the indictment can stand only on what the government did—not what it hypothetically could have done—and here it must fall. Requiring the government to turn square corners is particularly important when it seeks to deprive someone of his liberty.

### 1. The Attorney General purported to appoint Ms. Halligan only as interim U.S. Attorney, not any other type of attorney for the government

On September 22, 2025, the Attorney General purported to appoint Ms. Halligan to only one position: U.S. Attorney. The appointment order provides that

43

"[b]y virtue of the authority vested in the Attorney General by 28 U.S.C. § 546, I designate and appoint Lindsey Halligan to serve as the United States Attorney for the Eastern District of Virginia." J.A.35. The order cites no provision other than Section 546 and references no office other than U.S. Attorney. Thus, when Ms. Halligan presented the case to the grand jury on September 25, 2025, her only possible source of governmental authority could have stemmed from Section 546.

The government argues (at 37-38) that "[e]ven if the Attorney General" did not properly "appoint Halligan to the office of interim U.S. Attorney," she still "authorized [Ms. Halligan] to represent the United States" in seeking a grand jury indictment. But someone who seeks a grand jury indictment—particularly without the participation or oversight of any other official—is an "Officer[] of the United States." U.S. Const. art. II, § 2, cl. 2. In *Morrison*, for instance, the Court found it "clear that [the independent counsel was] an 'officer' of the United States," and the only question was whether she was "an 'inferior' or a 'principal' officer." 487 U.S. at 671 & n.12. Indeed, "it is difficult to see how an official exercising the Department of Justice's duties to enforce the criminal law by leading a prosecution could be anything but an officer." *Trump v. United States*, 603 U.S. 593, 644 n.1 (2024) (Thomas, J., concurring).

To exercise the powers of an officer of the United States, a person must have a valid appointment to a specific statutorily created office. As the Supreme Court

has explained, "there can be no officer, . . . if there [is] no office." *Norton v. Shelby Cnty.*, 118 U.S. 425, 441 (1886); *see id.* at 442. And an officer's authority derives only from the office she holds. "We have no officer[] in this government, from the President down to the most subordinate agent, who does not hold office under the law, with prescribed duties and limited authority." *The Floyd Acceptances*, 74 U.S. 666, 676-77 (1868).

Under those principles, Ms. Halligan could obtain and sign indictments only if she were validly appointed to an office giving her that authority. But the only office to which she was purportedly appointed was interim U.S. Attorney—and that appointment was invalid. Absent a proper appointment to an office with indictment-securing power, it is immaterial whether the Attorney General "intended" Ms. Halligan to "obtain[] and sign[]" the indictment. Br.39.

The government's effort to elevate "the Attorney General's intent" over her actions flouts bedrock principles. Br.40. Ordinarily, a court reviewing an administrative order "is confined exclusively to the grounds actually invoked by the" agency. *Island Creek Coal Co. v. Henline*, 456 F.3d 421, 426 (4th Cir. 2006). "If those grounds are inadequate or improper, the court is powerless to affirm the administrative action" based on other reasons. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). As to appointments specifically, "[t]he established rule is that one is not entitled to the benefit of a position until he has been duly appointed to it." *United*

*States v. Testan*, 424 U.S. 392, 402 (1976).  Courts thus typically require "conclusive evidence" of the appointment in the form of a "commission" or another formal document.  *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 156-57 (1803).  And they reject requests—like the government's here—to infer an appointment by examining the "intent of the parties as manifested by the totality of facts and circumstances." *Curran v. Off. of Pers. Mgmt. Bureau of Ret., Ins., & Occupational Health*, 566 F. Supp. 1511, 1513-14 (D.D.C. 1983), *aff'd*, 735 F.2d 617 (D.C. Cir. 1984).

The government observes that the Attorney General has the "power 'to appoint subordinate officers to assist [her] in the discharge of [her] duties.'"  Br.38 (alteration in original) (quoting *United States v. Nixon*, 418 U.S. 683, 694 (1974)). But that power is not free-floating—as *Nixon* recognizes, the Attorney General may make appointments only "[a]cting pursuant to [applicable] statutes."  418 U.S. at 694.  Here, the lone statute that the Attorney General invoked on September 22 was Section 546.

The government further argues (at 42) that Ms. Halligan must have been properly appointed, because otherwise she "was not an 'attorney for the government' for purposes of Rule 6(e)(2)(B)(vi)'s grand-jury secrecy requirements" and is "free to publicly disclose grand-jury matters."  But to protect the core value of grand jury secrecy, Rule 6(e)(2)(B)(vi) must apply to those *purporting to be* "an attorney for the government."  Regardless, even if the government's cramped interpretation of

Rule 6(e)(2)(B)(vi) were correct, that would mean only that Ms. Halligan could disclose what happened before the grand jury—it would not make her an authorized prosecutor despite her invalid appointment.

> **2.    The Attorney General cannot retroactively appoint Ms. Halligan to a different office**

On October 31—five weeks after the grand jury indictment and in response to Mr. Comey's appointments-based motion to dismiss—the Attorney General purported to appoint Ms. Halligan "to the additional position of Special Attorney, as of September 22, 2025," and to "ratify her employment as an attorney of the Department of Justice from that date going forward." J.A.38. That attempted retroactive appointment is invalid.

This Court has recognized that while a principal officer's "ratification" can sometimes "retroactively cure *acts*," it cannot retroactively cure "*agents*." *Wille v. Lutnick*, 158 F.4th 539, 551 n.11 (4th Cir. 2025). "[A] purported 'ratification' that covers only one's status as an officer cannot retroactively bequeath officer status to a non-officer and thereby cure each and every unauthorized act performed by that non-officer." *Id.* In *Lucia*, for instance, the Supreme Court invalidated an adjudication by an improperly appointed official even though his "prior appointment[]" had been "ratif[ied]" by a head of department after the adjudication was completed and "[w]hile th[e] case was on judicial review." 585 U.S. at 251, 252 n.6. The government's contrary approach would "create a disincentive to raise

Appointments Clause challenges," *Ryder*, 515 U.S. at 182-83, by allowing it to cure any appointments defect through a retroactive appointment during the pendency of litigation.

Nor do the statutes cited by the Attorney General even authorize her retroactive appointment of Ms. Halligan. J.A.38 (citing 28 U.S.C. §§ 509, 510, and 515). "[C]ongressional enactments . . . will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Here, none of the cited statutes contain the requisite "plain language" to have "retroactive application." *Leland v. Fed. Ins. Adm'r*, 934 F.2d 524, 527-28 (4th Cir. 1991).

Ultimately, the government suggests (at 40) that it would be unfair to dismiss the indictment "simply because the appointment happened to label Halligan an interim U.S. Attorney instead of a Special Attorney or Assistant U.S. Attorney." But "[i]f men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021). And in truth, the government made calculated decisions—not "paperwork error[s]." Br.54. The President and Attorney General specifically intended to make Ms. Halligan the U.S. Attorney, not merely a Special Attorney. If that role lacked unique significance, then they would have seen no urgent need to get rid of Mr. Siebert. And when they tried to install

Ms. Halligan in that role, they knew the risk—the District of New Jersey had already ruled that Section 546(d) bars successive appointments—and yet they pursued the Section 546(d) appointment anyway. *United States v. Giraud*, 795 F. Supp. 3d 560, 579 (D.N.J. 2025). The government cannot now escape the consequences of its decisions by retroactively appointing Ms. Halligan to a lesser office than the one she purported to occupy when she presented the case to the grand jury.[4]

### 3. The Attorney General cannot ratify the indictment

On three occasions, the Attorney General has purported to "ratify" Ms. Halligan's actions before the grand jury. *See* J.A.38-39, J.A.50; Br.51. Those efforts to save the indictment are fatally flawed. Ratification doctrine does not apply to grand jury indictments. But even if it could apply, its preconditions are not satisfied here.

a. "[T]he Government cites no authority holding" that the "agency-law doctrine of ratification can be used to cure a defective indictment." J.A.113. That is for good reason—ratification originated as a commercial-law concept "describing

---

[4] The government's claim that the defective appointment of Ms. Halligan is a "paperwork error" rendered inconsequential by the retroactive invocation of Section 515, Br.54, sharply contrasts with the government's position in *United States v. Trump*, where the appointment of a Special Counsel pursuant to Section 515 (and other provisions) was at issue. *See* United States's Resp. to Dec. 22, 2025 Order at 3, *United States v. Trump*, No. 23-cr-80101 (S.D. Fla. Jan. 23, 2026), Dkt. 773.

the relations between the parties after affirmance by a person of a transaction done or purported to be done for him." Restatement (Second) of Agency § 82 cmt. *a*. Courts thus allowed ratification because all the parties—the principal, agent, and counterparty—had "consent[ed]" to the terms of the transaction. *Id.* § 82 cmt. *c*. Although courts have extended ratification doctrine to the administrative-law context under certain circumstances, *see Wille*, 158 F.4th at 545, they have not extended it to grand jury indictments—where individual liberty is squarely at stake.

This Court should not be the first to do so. Because "ratification retroactively creates the effects of actual authority," Restatement (Third) of Agency § 4.02, it is a poor fit for criminal law—which abhors retroactivity, *e.g.*, *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964). Indeed, if the government's ratification theory were correct, "the Government could send any private citizen off the street — attorney or not — into the grand jury room to secure an indictment so long as the Attorney General gives her approval after the fact." J.A.113-114. That result would undermine the Fifth Amendment's protections by allowing the government to mislead grand jurors about the purported prosecutor's authority and then cure that deception later through the Attorney General's ratification.

b.     Even if ratification doctrine could apply in this context, its prerequisites are not satisfied here.

i.     "An act which was absolutely void at the time it was done can not be ratified."  Floyd R. Mechem, *A Treatise on the Law of Public Offices and Officers* § 531, at 347 (1890).  As already explained, the Appointments Clause violation here rendered the indictment "void *ab initio*."  J.A.107.  And just as "a void contract cannot" be ratified, a void indictment cannot be either.  *King v. Donnkenny, Inc.*, 64 F. App'x 376, 378 (4th Cir. 2003).

Even apart from Appointments Clause violations, defective indictments are ordinarily deemed void.  That rule dates back to the Founding era.  *See State v. Rockafellow*, 6 N.J.L. 332, 341 (N.J. 1796) (bill "found by eleven [grand] jurors only" is "void").  And a consistent body of "caselaw supports the view that an invalid indictment is a nullity."  *United States v. Bolton*, 893 F.2d 894, 899 (7th Cir. 1990); *see, e.g.*, *United States v. Slape*, 44 F.4th 356, 361 (5th Cir. 2022) (holding that an indictment returned by a "defunct, out-of-term grand jury is void *ab initio*"); *Ex parte Farley*, 40 F. 66, 70 (C.C.W.D. Ark. 1889) (holding that an invalid indictment is "simply a nullity").

ii.     Additionally, as the district court correctly held, the "Attorney General's attempt to ratify Mr. Comey's indictment on October 31 'came too late in the day to be effective,' as the statute of limitations for the charged offenses expired 31 days earlier on September 30."  J.A.114.  The same logic applies to the Attorney General's second and third attempts to ratify the indictment.

Two related principles of ratification doctrine compel that conclusion. First, "the party ratifying should be able not merely to do the act ratified at the time the act was done, *but also at the time the ratification was made*." *FEC v. NRA Pol. Victory Fund*, 513 U.S. 88, 98 (1994) (citation omitted). Second, "[i]f an act to be effective in creating a right against another or to deprive him of a right must be performed before a specific time, an affirmance is not effective against the other unless made before such time." *Id.* (citation omitted). As this Court has put the point, "once a third party's '[r]ights have [c]rystallized,' ratification cannot be used to deprive that person of their rights." *Wille*, 158 F.4th at 550 (alteration in original) (citation omitted).

Those principles mean that "[t]he bringing or continuing of an action" cannot be ratified where—as here—"a statute of limitations or other bar has accrued before the affirmance." Restatement (Second) of Agency § 84 cmt. *b*. Applying that rule, the Supreme Court rejected the Solicitor General's attempt to ratify an unauthorized petition for a writ of certiorari filed by the FEC because the ratification came after "the 90-day time period for filing a petition had expired." *NRA Political Victory Fund*, 513 U.S. at 98. The same result should follow here. The Attorney General's attempts to ratify Mr. Comey's indictment all took place after the limitations period expired and thus after Mr. Comey acquired the right to repose. Her attempted "authorization[s] simply came too late in the day to be effective." *Id.*

The government contends (at 49-50) that the limitations period does not bar the Attorney General's attempted ratifications because the Attorney General could have sought either a new indictment under 18 U.S.C. § 3288 or a superseding indictment. That contention misunderstands the ratification inquiry. The question is whether the Attorney General could have sought an indictment "in the first instance" at the time she purported to ratify it. *Wille*, 158 F.4th at 550. But both Section 3288 and superseding indictments presuppose the existence of a *prior* indictment. *See* 18 U.S.C. § 3288 ("Whenever an indictment . . . is dismissed"); *United States v. Ojedokun*, 16 F.4th 1091, 1109 (4th Cir. 2021) (superseding indictment can "relate[] back to the date of the original indictment"). The Attorney General's claim of independent authority to "do the act ratified" cannot rest on the very invalid act she is purporting to ratify. *NRA Political Victory Fund*, 513 U.S. at 98. Accepting the government's circular reasoning would nullify the requirement that the principal may ratify only acts that she can independently perform at the time of ratification.

The government's theory is also inconsistent with *NRA Political Victory Fund*. On the government's view, the Solicitor General could have ratified the FEC's certiorari petition even after the filing period had expired simply because he could have filed an amended petition at that time. Or in *Nasewaupee v. Sturgeon Bay*, 251 N.W.2d 845 (Wis. 1977)—a case cited by *NRA Political Victory Fund*, 513

U.S. at 98-99—a town board could have ratified a private attorney's unauthorized commencement of a lawsuit after the limitations period had expired simply because the board could have filed an amended complaint at that time. *NRA Political Victory Fund*'s rule cannot be evaded so easily.

Even on their own terms, Section 3288 and superseding-indictment doctrine would not license the Attorney General's maneuver here. When an indictment is dismissed, Section 3288 authorizes the government to take only one course—seek a "new indictment." 18 U.S.C. § 3288. And recent experience shows that securing a new indictment would not be foreordained. But under the government's reasoning, it could skip that process entirely because Section 3288 empowers the Attorney General to ratify the original indictment by mere say-so. That interpretation contravenes not only Section 3288's design, but also the Fifth Amendment's command that a "Grand Jury" participate in the return of any "indictment." U.S. Const. amend. V.

To adopt the government's ratification argument based on Section 3288, this Court would also need to conclude—without the benefit of any lower-court consideration of the issue—that Section 3288 could apply even if the government *did* seek to reindict Mr. Comey. Mr. Comey vigorously disputes that assertion. Section 3288 applies only when "an indictment . . . is dismissed." 18 U.S.C. § 3288. And when Congress enacted the original version of Section 3288, *see* Act of May

10, 1934, ch. 278, Pub. L. No. 73-217, 48 Stat. 772, the term "indictment" had an established legal meaning: A charging document "framed" by a "prosecuting officer of the government, and by him laid before the grand jury." Black's Law Dictionary 952 (3d ed. 1933). Here, both because the only person who presented the case to the grand jury was not a "prosecuting officer of the government," and because the grand jury was not presented with the purported indictment, there was no "indictment" that could trigger Section 3288's grace period. But more fundamentally, this Court should not resolve the meaning of Section 3288 in this posture—before the government has even sought "a new indictment." 18 U.S.C. § 3288. Instead, it should simply hold that the government cannot bootstrap a ratification argument on a (dubious) Section 3288 argument.

Nor can the Attorney General escape the statute of limitations by purporting to ratify via a hypothetical superseding indictment. The government cannot seek a superseding indictment after the statute of limitations has expired if the original indictment was "*invalid*." J.A.114 n.21 (citing *United States v. Crysopt Corp.*, 781 F. Supp. 375, 378 (D. Md. 1991)). As already explained, the Appointments Clause violation here rendered the purported indictment "void *ab initio*"—which means that "[b]y operation of legal fiction, the law acts as though [it] never occurred." *Hewitt v. United States*, 606 U.S. 419, 431 (2025). And the government cannot supersede an indictment that never occurred. Nothing in *Ojedokun* is to the contrary. There,

the original indictment was defective only because it failed to "identify 'a valid overt act.'" 16 F.4th at 1109 n.9. Unlike an Appointments Clause violation, that sort of technical error does not void an indictment.

## **CONCLUSION**

For the foregoing reasons, the district court's order should be affirmed.

## **REQUEST FOR ORAL ARGUMENT**

Mr. Comey respectfully requests oral argument. Given the importance of the statutory and constitutional questions in the case, oral argument would assist the Court's consideration.

Dated: March 3, 2026

Respectfully submitted,

/s/ Ephraim A. McDowell

Jessica N. Carmichael
CARMICHAEL ELLIS & BROCK, PLLC
108 N. Alfred Street, First Floor
Alexandria, VA 22314
(703) 684-7908

Ephraim A. McDowell
Elias S. Kim
COOLEY LLP
1299 Pennsylvania Ave., NW, Suite 700
Washington, DC 20004
(202) 842-7800
emcdowell@cooley.com

Patrick J. Fitzgerald
P.O. Box 277
New Buffalo, MI 49177
(312) 758-4454

Rebekah Donaleski
COOLEY LLP
55 Hudson Yards
New York, NY 10001
(212) 479-6000

Michael R. Dreeben
600 New Jersey Ave. NW
Washington, DC 20001
(202) 695-2562

Connie L. Wang
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

*Counsel for Defendant-Appellee*
*James B. Comey Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2026, I electronically filed the foregoing with

the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit

by using the appellate CM/ECF system. Participants in the case are registered

CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Ephraim A. McDowell*
Ephraim A. McDowell

# **CERTIFICATE OF COMPLIANCE**

I certify that:

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it consists of 12,909 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced, serif typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Ephraim A. McDowell*
Ephraim A. McDowell