Nos. 25-4673(L); 25-4674

———————————————

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————————

UNITED STATES OF AMERICA,

Plaintiff – Appellant,

v.

LETITIA JAMES,

Defendant – Appellee.

———————————————

UNITED STATES OF AMERICA,

Plaintiff – Appellant,

v.

JAMES B. COMEY, JR.,

Defendant – Appellee.

———————————————

On Appeal from the United States District Court
for the Eastern District of Virginia (No. 1:25-cr-00272-MSN)
The Honorable Cameron McGowan Currie (sitting by designation)

———————————————

**BRIEF AMICUS CURIAE OF PACIFIC LEGAL FOUNDATION
IN SUPPORT OF CONSOLIDATED APPELLEES
FOR AFFIRMANCE**

———————————————

Michael Poon
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
MPoon@pacificlegal.org
*Attorney for Amicus Curiae*
*Pacific Legal Foundation*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Amicus Curiae Pacific Legal Foundation, a nonprofit corporation organized under the laws of California, hereby states that it has no parent companies, subsidiaries, or affiliates that have issued shares to the public.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................i

TABLE OF AUTHORITIES ................................................................ iii

IDENTITY AND INTERESTS OF AMICUS CURIAE AND AUTHORITY TO FILE BRIEF ............................................................................... 1

ARGUMENT ....................................................................................... 3

    I.      Introduction ........................................................................ 3

    II.    The Attorney General's Ratification ................................... 3

       A.  The *Wille* Claim ............................................................. 3

       B.  The *Wille* Decision and Common Law Limitations ..................... 6

          1.  Common Law Limitations Apply .............................. 6

          2.  Common Law Limitations Forbid the Attorney General's Ratification ............................................... 9

              a. The Delegation Rule .............................................. 9

              b. The Timing Rule ................................................... 15

       C.  Statutory Authority for Ratification .............................. 20

    III.   The Attorney General's Retroactive Appointment of Halligan . 21

       A.  The Presumption Against Retroactive Government Action ....... 21

       B.  The Absence of Statutory Authority and *Wille*'s Retroactivity Analysis ................................................................. 26

    IV.   Conclusion ........................................................................ 28

CERTIFICATE OF COMPLIANCE ..................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Blanco de Belbruno v. Ashcroft,*
  362 F.3d 272 (4th Cir. 2004) ............................................................ 22

*Bowen v. Georgetown Univ. Hosp.,*
  488 U.S. 204 (1988) ................................................................. *passim*

*Collins v. Yellen,*
  594 U.S. 220 (2021) ...................................................................... 19

*Cook v. Tullis,*
  85 U.S. 332 (1873) ........................................................................ 12

*Dash v. Van Kleeck,*
  7 Johns. 477 (N.Y. 1811) ............................................................... 22

*FEC v. NRA Political Victory Fund,*
  513 U.S. 88 (1994) .................................................................. *passim*

*Fed. Election Comm'n v. Cruz,*
  596 U.S. 289 (2022) ........................................................................ 7

*Gonzalez v. Cuccinelli,*
  985 F.3d 357 (4th Cir. 2021) ...................................................... 21–22

*Hope Natural Gas Co. v. Fed. Power Comm'n,*
  196 F.2d 803 (4th Cir. 1952) ...................................................... 26–28

*INS v. St. Cyr,*
  533 U.S. 289 (2001) ...................................................................... 22

*Isbrandtsen Co. v. Johnson,*
  343 U.S. 779 (1952) ...................................................................... 7–8

*Isbrandtsen-Moller Co. v. United States,*
  300 U.S. 139 (1937) .................................................................. 12–13

iii

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994)......................................................22–24, 27

*Leland v. Fed. Ins. Adm'r*,
    934 F.2d 524 (4th Cir. 1991)................................................25, 27–28

*Lucia v. SEC*,
    585 U.S. 237 (2018)..........................................................18

*McMellon v. United States*,
    387 F.3d 329 (4th Cir. 2004)..................................................28

*Michigan v. EPA*,
    268 F.3d 1075 (D.C. Cir. 2001)................................................20

*Moose Jooce v. FDA*,
    981 F.3d 26 (D.C. Cir. 2020)...................................................1

*Olatunji v. Ashcroft*,
    387 F.3d 383 (4th Cir. 2004)..................................................25

*Ryder v. United States*,
    515 U.S. 177 (1995)........................................................18–19

*Samantar v. Yousuf*,
    560 U.S. 305 (2010)...........................................................7

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
    580 U.S. 328 (2017).........................................................7–8

*United States v. Texas*,
    507 U.S. 529 (1993)...........................................................7

*Ward v. Dixie Nat'l Life Ins. Co.*,
    595 F.3d 164 (4th Cir. 2010)...............................................21, 24, 26

*West Virginia v. EPA*,
    597 U.S. 697 (2022).........................................................25

*Wille v. Lutnick*,
    158 F.4th 539 (4th Cir. 2025) ...............................................*passim*

iv

## Statutes

16 U.S.C. § 1382(a) ............................................................................ 4, 10

18 U.S.C. § 3288 .................................................................................. 17

## Regulations

86 Fed. Reg. 53,818 (Sept. 28, 2021) ................................................. 3–5

## Other Authorities

Poon, Michael A., *Ratification of Rules as Retroactive Rulemaking*,
   21 Geo. J.L. & Pub. Pol'y 425 (2023) ................................................. 1

Restatement (Second) of Agency (1958) ........................................ 9–10, 16

Schiff, Damien M., *Neither Safe, Nor Legal, Nor Rare: The
   D.C. Circuit's Use of the Doctrine of Ratification to Shield
   Agency Action from Appointments Clause Challenges*,
   44 Seattle Univ. L. Rev. 771 (2021) ..................................................... 1

v

## IDENTITY AND INTERESTS OF AMICUS CURIAE AND AUTHORITY TO FILE BRIEF

Pacific Legal Foundation ("PLF") is a nonprofit public interest law firm and a leading litigator on the Appointments Clause, with significant expertise on ratifications in the context of the Appointments Clause. PLF attorneys have litigated the Fourth Circuit's only precedent on ratification, *Wille v. Lutnick*, 158 F.4th 539 (4th Cir. 2025), as well as the D.C. Circuit's primary precedent on ratification, *Moose Jooce v. FDA*, 981 F.3d 26 (D.C. Cir. 2020), and have published two academic works on the subject, Michael A. Poon, *Ratification of Rules as Retroactive Rulemaking*, 21 Geo. J.L. & Pub. Pol'y 425 (2023); Damien M. Schiff, *Neither Safe, Nor Legal, Nor Rare: The D.C. Circuit's Use of the Doctrine of Ratification to Shield Agency Action from Appointments Clause Challenges*, 44 Seattle Univ. L. Rev. 771 (2021). PLF writes to discuss the proper framework for evaluating the ratification in this case and to shed light on the reasoning and holding of *Wille*. PLF also writes to discuss the pitfalls of the attempted retroactive appointment in this case in light of retroactivity principles.

All parties have consented to the filing of this brief.

1

This brief was not authored in whole or in part by counsel for any party, and no person other than amicus has financially contributed to its preparation or submission.

## ARGUMENT

### I.    Introduction

The issue in this case is whether Ms. Halligan lawfully obtained indictments against Ms. James and Mr. Comey as Interim U.S. Attorney. The Attorney General took two steps to attempt to cure that defect and validate the indictments: she ratified Halligan's actions in obtaining the indictments, and she retroactively appointed Halligan as Special Attorney. Both actions are *ultra vires*.

### II.    The Attorney General's Ratification

This section will explain the plaintiffs' claims in *Wille v. Lutnick*, 158 F.4th 539 (4th Cir. 2025), and the *Wille* panel's analysis of the ratification there, together with the ratification analysis that this panel should conduct here in light of *Wille*. These explanations will assist this panel because the *Wille* panel's reasoning was complex and can be properly understood only with *Wille*'s procedural history in mind. Amicus will conclude that *Wille* requires this Court to reject the Attorney General's ratification.

#### A.    The *Wille* Claim

*Wille* challenged a 2021 rule that banned swimming with or approaching wild spinner dolphins in the waters surrounding Hawaii. 86

Fed. Reg. 53,818 (Sep. 28, 2021) ("Approach Rule"). The *Wille* plaintiffs sued in March 2022, alleging that the rule's issuance violated the Appointments Clause because it had not been issued by a Senate-confirmed principal officer. *Wille*, 158 F.4th at 545.

Central to the outcome in *Wille* was a series of departmental delegations of rulemaking power. The Approach Rule was issued under the Marine Mammal Protection Act, which vests rulemaking power in the Secretary of Commerce. 16 U.S.C. § 1382(a). The Secretary delegated that authority to the NOAA Administrator, who delegated it to the Assistant Administrator for Fisheries. *See* Response Brief of Defendants-Appellees, *Wille*, No. 24-1734, 2024 WL 5237872, ECF No. 15, at *5–6 (4th Cir. Dec. 19, 2024). No party disputed this.

The next delegation was disputed: the Assistant Administrator had delegated to the Deputy Assistant Administrator for Regulatory Programs ("DAARP"), an employee, the authority for the "[s]ignature of material for publication in the Federal Register and the Code of Federal Regulations." *Wille*, 158 F.4th at 550 n.9. The *Wille* plaintiffs alleged that this delegated the § 1382(a) rulemaking power to the DAARP and that DAARP Rauch had, in fact, relied on this delegation to issue the

4

Approach Rule—both in violation of the Appointments Clause. Appellants' Opening Brief, *Wille*, No. 24-1734, 2024 WL 5214542, ECF No. 11, at *5–6 (4th Cir. Oct. 7, 2024). To support this contention, the plaintiffs pointed out that DAARP Rauch had signed the Approach Rule and that there was no indication that another official had approved the Approach Rule. *Id.* at *5; 86 Fed. Reg. at 53,841.

The government, however, maintained that this last delegation conferred only a ministerial signature function, not substantive rulemaking power, and that the rulemaking power remained with the Assistant Administrator who, the government insisted, was the one to approve the rule's issuance as a substantive matter. *Wille* Response Brief of Defendants-Appellees, *supra*, at *6, *12 n.1. This approval was never confirmed. While the rulemaking record would have revealed whether the Assistant Administrator or DAARP Rauch gave final approval for the Approach Rule, the government never produced the record. Thus, the identity of the rule's issuer remained unsettled.

In July 2022, NOAA Administrator Spinrad ratified the rule to undercut the litigation, though he did not withdraw the delegations. *Wille*, 158 F.4th at 545.

5

To resolve the case, the district court bifurcated summary judgment between ratification, to be decided first, and the Appointments Clause merits, to be decided only if the plaintiffs overcame the ratification. Production of the administrative record was similarly bifurcated, with only the record on the ratification to be released at first, and the full administrative record to be released only if the second stage of summary judgment were reached. *Wille* Appellants' Opening Brief, *supra*, at 9.

The district court held that the ratification resolved the plaintiffs' claim and entered judgment for the government. The plaintiffs appealed.

**B.    The *Wille* Decision and Common Law Limitations**

On appeal, the *Wille* plaintiffs argued, as relevant here, that any statutory authority for Spinrad's ratification presumptively incorporated relevant common law principles, including the common law limits on ratification—and Spinrad's ratification exceeded those limits. The *Wille* panel's holdings on that issue require rejecting the Attorney General's ratification in this case.

**1.    Common Law Limitations Apply**

To start, the *Wille* panel agreed that common law limitations on ratification apply to executive officials' ratification. *See, e.g., Wille*, 158 F.4th at 552 ("All the evidence we have suggests that when officers use

agents, ordinary agency principles apply."); *id.* at 550 (applying the various requirements and finding them satisfied).

This is the proper outcome, because—assuming there is statutory authority for the Attorney General to ratify subordinates' actions[1]—that statute incorporates relevant common law principles. "Congress is understood to legislate against a background of common-law principles." *Samantar v. Yousuf*, 560 U.S. 305, 320 n.13 (2010) (simplified). Thus, "when a statute covers an issue previously governed by the common law, [the courts] interpret the statute with the presumption that Congress intended to retain the substance of the common law." *Id.*

And no statute authorizing ratification abrogates ratification's common law limits. "In order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law." *United States v. Texas*, 507 U.S. 529, 534–35 (1993) (simplified). Congressional intent to abrogate the common law must be "evident." *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952). And the "burden"

---

[1] Of course, if there is no statutory authority covering the Attorney General's ratification, it fails for that reason. An agency, including its officials, "literally has no power to act . . . unless and until Congress authorizes it to do so by statute." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 301 (2022) (simplified).

falls on the party who seeks "to show that Congress departed from the traditional common-law rule[s]." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 344 (2017). No such clear statement abrogating the common law limitations on ratification exists, and so they apply.[2]

Consistent with these principles, the Supreme Court has applied "principles of agency law, and in particular the doctrine of ratification" to determine the validity of an executive official's ratification. *FEC v. NRA Political Victory Fund*, 513 U.S. 88 (1994).

The common law limitations on ratification likewise apply to the Attorney General's ratification.

---

[2] The government may argue that not all parts of the common law of ratification are possible to apply in the administrative context. Congressional intent answers that concern. To the extent that, due to differences in context, any common law rule is impossible to apply to the ratification of Halligan's actions, there is "evident" congressional intent not to incorporate that rule. *Isbrandtsen*, 343 U.S. at 783. But given Congress's silence, every common law rule that is susceptible of application must be applied, as the Supreme Court did in *NRA Political Victory Fund*.

8

**2.** **Common Law Limitations Forbid the Attorney General's Ratification**

Of the common law limitations, the district court applied two: the delegation rule captured by Restatement (Second) of Agency § 84 (1958) ("Restatement") and applied by *Wille*; and the timing rule captured by Restatement § 90 and applied by the Supreme Court in *NRA Political Victory Fund*. The former prevents the ratification as to both James and Comey, while the latter prevents the ratification as to Comey.

**a.** **The Delegation Rule**

The delegation rule is the requirement that a would-be principal may only ratify those acts that he could have delegated to the would-be agent. Restatement § 84. This rule recognizes that ratification does no more than fix a defective agency relationship by retroactively delegating missing authority to a would-be agent. Thus, where delegation was not possible in the first place, it cannot be made possible retroactively by ratification. Applying this rule, *Wille* held that "[f]or ratification to be effective, the principal must possess the authority to authorize the act . . . when the agent initially took the action . . . ." *Wille*, 158 F.4th at 547 (citing Restatement § 84). Thus, "Spinrad could ratify only those acts of Rauch that he could have originally delegated." *Id.* at 550 (same). And,

9

recognizing that Rauch had not been appointed as an officer and so could not have been delegated substantive powers, the panel further held that "Spinrad could delegate (and therefore ratify) only those acts of Rauch that were ministerial and did not require independent discretion." *Id.*

Although the panel accepted the applicability of this common law limitation, the panel appeared to confuse the nature of the plaintiffs' claims. Specifically, the panel appeared to believe that the plaintiffs challenged only the *signature* of the Approach Rule, not its *issuance* under 16 U.S.C. § 1382(a). This altered the analysis: while issuing a rule is a substantive act limited to officers, "[s]igning the Rule for publication" was a "non-discretionary ministerial act" that was thus "delegable" to a non-officer agency official. *Id.*; *see id.* at 551 ("[N]o constitutional provision or statute limits the ability of an officer to delegate this responsibility to non-officers."). Rauch's signature "was therefore ratifiable" consistent with Restatement § 84. *Id.* at 550. The panel thus accepted Spinrad's ratification and affirmed the district court.

While this confusion led the *Wille* panel to accept the ratification there, the upshot of *Wille* here is that the delegation rule applies to ratifications in the administrative context: "[The Attorney General] could

10

ratify only those acts of [Halligan] that [s]he could have originally delegated." *Id.* at 550. And because Halligan did not properly hold the position of Interim U.S. Attorney or Special Attorney and had not otherwise been appointed as an attorney for the government, she could not be delegated the Attorney General's authority to obtain indictments against Comey and James. As a result, the Attorney General could not ratify Halligan's actions. Thus, the district court's conclusion to this effect was compelled by *Wille*, and this panel should—if it reaches the ratification issue—conclude likewise. J.A. 305–06, *James* Dist. Ct. ECF No. 140 at 23–24; J.A. 113, *Comey* Dist. Ct. ECF No. 213 at 25.

The government attempts to dismiss the delegation rule by arguing that "[i]t is the party ratifying, not the party who took the action, who must have the authority to do the act ratified at the time the act was done." ECF No. 16 at 47 (simplified). This refers to the timing rule, a separate requirement from the delegation rule. The timing rule's existence does not undercut the validity of the delegation rule.

The government further presses that, "[i]f the party who took the action had the authority to do so at the time, there would be no need for ratification—the action would already be valid." *Id.* at 48. This is true,

11

but beside the point. The delegation rule does not require that the would-be agent *already possess* the authority. Rather, it requires that she be capable of being delegated that authority, for example, given her position. *Wille* applied this principle when it acknowledged that, given Rauch's position as a non-officer, he could not be delegated non-ministerial actions that "require independent discretion," and so such actions taken by Rauch could not be ratified. 158 F.4th at 550. As Halligan lacked a position that could be delegated the authority to obtain an indictment, her actions doing so could not be ratified.

The government argues that this defeats "the entire point of ratification in this context[, which] is to 'cur[e] any Appointments Clause defects." ECF No. 16 at 48 (quoting *Wille*, 158 F.4th at 550). That is not so. The point of ratification—in any context—is only to authorize retroactively a past action taken by a would-be agent. As a Supreme Court case relied upon by *NRA Political Victory Fund* explains, a successful "ratification operates upon the act ratified precisely as though authority to do the act had been previously given." *Cook v. Tullis*, 85 U.S. 332, 338 (1873). For example, in *Isbrandtsen-Moller Co. v. United States*, 300 U.S. 139 (1937), the Secretary of Commerce issued a subpoena under

12

the Shipping Act of 1916 demanding documents from a shipper. The shipper challenged the subpoena as *ultra vires* because the Act did not vest the Secretary with the relevant powers. But Congress had adopted another statute vesting those powers in the Maritime Commission, which proceeded to ratify the Secretary's actions. The Court accepted the ratification. *Id.* at 149. The *Isbrandtsen-Moller* ratification functioned, not to cure an Appointments Clause defect, but to cure a lack of statutory authority to take the action. Notably, the Secretary's position—as a Senate-confirmed office—was capable of being delegated that statutory authority, consistent with the delegation rule and the Appointments Clause.

The government may argue that, under *Wille*, when a non-officer takes an action reserved for officers, a properly appointed officer can ratify the action to cure the Appointments Clause violation. The government may point, for example, to *Wille*'s approving citation of D.C. Circuit precedent to that effect. *Wille*, 158 F.4th at 551. Or it may point to *Wille*'s statement that Spinrad's ratification "cur[ed] any Appointments Clause defects that may have existed when the Rule was initially signed by Rauch." *Id.* at 550. Yet, in the very next sentences, the

13

panel held the opposite—that, when a non-officer takes an action reserved for officers, that action *cannot* be ratified because the non-officer could not be delegated the authority to take the officer-only action. *Id.*

The tension can be resolved by observing that *Wille* implicitly found that there was no Appointments Clause violation—and thus, *Wille* never held that ratification can cure an Appointments Clause violation. According to the *Wille* panel, the underlying merits issue was whether Rauch, as an employee, violated the Appointments Clause by signing the Approach Rule pursuant to his delegated authority to do so. And as the panel held, signing rules was an act "delegable" to non-officers because it was "non-discretionary" and "ministerial." *Id.* "[N]o constitutional provision . . . limits the ability of an officer to delegate this responsibility to non-officers." *Id.* at 551. That means the initial delegation of rule-signing power to Rauch was lawful, and so necessarily his signature of the Approach Rule was too. There was no violation to begin with. Indeed, the panel never acknowledged that there was a violation. *Id.* at 550 (stating that the ratification resolved "*any* Appointments Clause defects that *may* have existed" (emphasis added)). The panel's further reasoning—that the signature was therefore ratifiable and that the

14

ratification resolved any Appointments Clause violation—were therefore dicta. *Id.*

The government also argues that the Attorney General could have appointed Halligan to a position that could lawfully hold the delegated power to seek indictments. ECF No. 16 at 48 n.2. That makes no difference. The ratification analysis takes officials' positions as they are. In *Wille*, for example, Rauch could have been nominated by the President and confirmed by the Senate as a principal officer, or he could have been appointed by the Secretary of Commerce as an inferior officer. But these hypothetical appointments did not change the analysis. At the time Rauch acted, he was an employee, and so "Spinrad could delegate (and therefore ratify) only those acts of Rauch that were ministerial and did not require independent discretion." *Id.* at 550. If Halligan did not properly occupy a position to which the Attorney General could delegate the authority to obtain the indictments at issue, her actions could not be ratified.

### b.    The Timing Rule

While the delegation rule applies to the Attorney General's ratifications in both *James* and *Comey*, the timing rule appears to apply

15

only in *Comey*. Under the timing rule, "after a person's 'rights have crystallized,' ratification cannot be used to deprive the person of their right." *Wille*, 158 F.4th at 547 (simplified) (quoting Restatement § 90). Or as the Supreme Court phrased it in *NRA Political Victory Fund*, "If an act to be effective in creating a right against another or to deprive him of a right must be performed before a specific time, an affirmance is not effective against the other unless made before such time." 513 U.S. at 98 (quoting Restatement § 90). The rule is phrased broadly because it has many applications. *E.g.*, Restatement § 90, Reporter's Notes (noting that the rule forbids ratification of "an act which was a prerequisite to the suit").

The application relevant to *Comey* requires a ratifier to "be able not merely to do the act ratified at the time the act was done, but also at the time the ratification was made." *NRA Political Victory Fund*, 513 U.S. at 98 (simplified). This principle deprives an official of the power to ratify an action if, due to the passing of a statutory deadline, he could no longer take the action himself. In *NRA Political Victory Fund*, for example, an agency filed a petition for certiorari without the Solicitor General's statutorily required approval. After the statutory deadline to file the

16

petition passed, the Solicitor General ratified the filing of the petition. The Court held that the ratification was ineffective because, at the time of the ratification, the Solicitor General lacked the power to file the petition himself. *Id.*

The district court correctly applied *NRA Political Victory Fund* to hold that the Attorney General could not ratify Halligan's actions in obtaining an indictment against Comey. As the district court held, the Attorney General could not have herself obtained an indictment against Comey at the time of her ratification, because the statute of limitations for the *Comey* offenses had expired. J.A. 114, *Comey* Dist. Ct. ECF No. 213 at 26. Thus, the timing rule prevented her ratification.

The government argues that the Attorney General satisfied the timing rule because she could have obtained an indictment at the time of the ratification. ECF No. 16 at 49. In particular, the government argues that the Attorney General had the power, at the time of ratification, to obtain a superseding indictment that relates back to a defective indictment. *Id.* at 49–50. In the alternative, the government argues that under 18 U.S.C. § 3288, the Attorney General had the power, after the

17

indictment's dismissal and during her second ratification, to reindict. *Id.* at 50–51.

Comey persuasively argues that this sort of bootstrapping fails. ECF No. 22 at 53–54. But there is a further problem. Both of the government's contentions are premised on there being a preceding indictment to ground a second indictment. Comey argues that this precondition is absent, because the indictment in his case "was no 'indictment'" at all. Comey Brief, ECF No. 22 at 55. Comey is correct if, as he claims, *id.*, an instrument qualifies as an indictment only if a government attorney is involved, *e.g.*, frames the instrument and lays it before the grand jury.[3]

The reason lies in the nature of Appointments Clause violations. The Appointments Clause is the "exclusive means" of filling an office. *Lucia v. SEC*, 585 U.S. 237, 244 (2018). Thus, when an individual's selection does not conform to the Appointments Clause, her "appointment . . . to office is deficient," and she acts only "under the color of official title." *Ryder v. United States*, 515 U.S. 177, 180 (1995). That is, she never

---

[3] Whether that is the case is beyond Amicus's expertise, and Amicus does not opine on it.

18

held the office in question. While formal actions were taken to attempt to appoint Halligan, an unconstitutional act, including an unconstitutional appointment, is "automatically displace[d]" by the Constitution and was "never really part of the body of governing law." *Collins v. Yellen*, 594 U.S. 220, 259 (2021). Thus, Halligan was always a private citizen, and her actions were those of a private citizen. Because of this, her actions are not merely *ultra vires*; they were not actions of the Interim U.S. Attorney at all.

Applied to the purported indictment here: if an instrument cannot be an indictment in the absence of a government attorney's involvement or action, then the purported indictment here is not only defective—it is not an indictment, because Halligan was always a private citizen. Instead, the instrument has only "the color of" an indictment. *Ryder*, 515 U.S. at 180. The district court implicitly recognized this reasoning when it noted that the government's theory would allow it to "send any private citizen off the street—attorney or not—into the grand jury room to secure an indictment so long as the Attorney General gives her approval after the fact." J.A. 113–14, ECF No. 213 at 25–26.

\* \* \*

19

The district court conclusion, that the ratification contravenes the delegation rule and the timing rule, was correct under both *Wille* and first principles. This Court should reach the same conclusion.

## C.    Statutory Authority for Ratification

Amicus addressed the common law limitations first, because it was the basis for the district court's holding. But the common law limits of ratification—incorporated by any statute authorizing ratification—only makes sense if there is a statute authorizing ratification in the first place. After all, the common law cannot directly empower the Attorney General with the power to issue ratifications. Her office, like other agency positions, "has no constitutional or common law existence or authority, but only those authorities conferred upon it by Congress." *Michigan v. EPA*, 268 F.3d 1075, 1081 (D.C. Cir. 2001). Rather, "if there is no statute conferring authority, a federal agency has none." *Id.*

So, the logically prior question is also the fundamental question of administrative law: does any statute authorize the Attorney General to ratify indictments? The Court should consider addressing this threshold issue and, if necessary to do so, order supplemental briefing on this pure

20

question of law. Because this issue has not been raised by the parties or the court below, Amicus does not discuss it further here.

## III. The Attorney General's Retroactive Appointment of Halligan

Separate from the ratification arguments, the government proposes that the indictments are valid because the Attorney General appointed Halligan as a Special Attorney retroactive to September 22, 2025, before either James or Comey had been indicted. ECF No. 16 at 41–42. The district court rightly dismissed this retroactive appointment. J.A. 301, ECF No. 140 at 19. As Comey pointed out, the appointment statutes do not clearly authorize retroactive appointments, and "congressional enactments . . . will not be construed to have retroactive effect unless their language requires this result." ECF No. 22 at 48 (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)). This argument bears further explanation.

### A. The Presumption Against Retroactive Government Action

"The law disfavors retroactivity." *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 176–77 (4th Cir. 2010) (citing *Bowen*, 488 U.S. at 208). A retroactive act is one that "attaches new legal consequences to events completed before its enactment." *Gonzalez v. Cuccinelli*, 985 F.3d 357,

21

372 (4th Cir. 2021) (quoting *INS v. St. Cyr*, 533 U.S. 289, 321 (2001)). Our legal tradition's disapproval of retroactive government action is "as ancient as the law itself." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 n.17 (1994) (quoting *Dash v. Van Kleeck*, 7 Johns. 477, 503 (N.Y. 1811)). While "[r]etroactivity provisions often serve entirely benign and legitimate purposes, whether to respond to emergencies, to correct mistakes, to prevent circumvention of a new statute in the interval immediately preceding its passage, or simply to give comprehensive effect to a new law Congress considers salutary," retroactive government action nevertheless "raise[s] particular concerns" related to "fair warning," "arbitrary and potentially vindictive" power, and "[e]lementary considerations of fairness." *Landgraf*, 511 U.S. at 265, 266–68 (simplified).

Some forms of retroactive government action, such as *ex post facto* laws, are so noxious as to be "constitutionally impermissible." *Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 283 (4th Cir. 2004). The rest, while constitutionally permissible, are subject to an anti-retroactivity presumption captured by *Bowen*: "congressional enactments and

22

administrative rules will not be construed to have retroactive effect unless their language requires this result." 488 U.S. at 208.

The presumption spawned two rules. First, courts should not apply a new statute or regulation to conduct predating the provision "absent clear congressional intent favoring such a result." *Landgraf*, 511 U.S. at 280. This rule is not relevant here and should not be confused with the second rule, which applies here: a statute authorizes retroactive agency action only when it does so in express terms.

The key case for this clear-statement rule is *Bowen*. The question there was whether a retroactive regulation was supported by a statutory provision that authorized rulemaking but did not explicitly authorize *retroactive* rulemaking. In that case, the Secretary of Health and Human Services had promulgated a regulation prospectively lowering the wage index, a key figure in calculating Medicare reimbursements to hospitals. *Bowen*, 488 U.S. at 206. The regulation was successfully challenged for failure to comply with notice-and-comment requirements and so was set aside. *Id.* at 206–07. The Secretary later reissued the rule with notice and comment, retroactive to the promulgation of the original rule. *Id.* at 207. The "net result was as if the original rule had never been set aside." *Id.*

23

This second rule, and especially its purported retroactive effect, was challenged in *Bowen.*

A unanimous Supreme Court held that the Medicare Act did not authorize the Secretary to issue the rule. The Court's reasoning was succinct. "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* at 208. Any statutory authorization of retroactive rulemaking would, of course, lead to retroactive effects. So, "[b]y the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Id.*

As the Supreme Court later explained, the judiciary must ensure that retroactive action is allowed only after "Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." *Landgraf,* 511 U.S. at 272–73; *accord Ward,* 595 F.3d at 176. Because "the proper temporal reach of statutes" is a "fundamental policy judgment[]," *Landgraf,* 511 U.S. at 273, Congress

24

must explicitly provide for retroactivity, "[e]ven where some substantial justification for retroactive rulemaking is presented," *Bowen*, 488 U.S. at 208. *Accord Leland v. Fed. Ins. Adm'r*, 934 F.2d 524, 528 (4th Cir. 1991) (observing that *Bowen* means that, "even where some substantial justification for retroactivity is presented, courts should be reluctant to find such authority absent an express statutory grant"). "In other words, where Congress has apparently given no thought to the question of retroactivity whatever, there is no basis for inferring that Congress' intent was any more nuanced than that the statutes should not be held to apply retroactively." *Olatunji v. Ashcroft*, 387 F.3d 383, 394 (4th Cir. 2004). Any retroactive agency action must be supported by a statute's clear statement authorizing that action. *See West Virginia v. EPA*, 597 U.S. 697, 736 (2022) (Gorsuch, J., concurring) (summarizing clear-statement rules, including the presumption against retroactivity).

It therefore did not matter in *Bowen* that the "judicial invalidation" of the original rule meant that "congressional intent and important administrative goals may be frustrated unless an invalidated rule can be cured of its defect" retroactively. *Bowen*, 488 U.S. at 215. Nor did it matter that the original rule had "provided at least some notice" as to the

25

retroactive rule's contents. *Id.* "Whatever weight" these concerns had, Congress had not expressly authorized retroactive action and so had not affirmatively decided that such concerns outweighed the potential for unfairness. *Id.* Thus, this Court has held that even where retroactivity is "reasonable," the lack of express authority controls. *Hope Natural Gas Co. v. Fed. Power Comm'n*, 196 F.2d 803, 806 (4th Cir. 1952).

### B.  The Absence of Statutory Authority and *Wille*'s Retroactivity Analysis

Under these principles, the Attorney General could not retroactively appoint Halligan as Special Attorney in the absence of express statutory authority to do so. The standard this Court set for a clear statement in this context is "undeniably high": the statute can leave "no room for reasonable doubt" that Congress authorized retroactive action; the statute must be "so clear that it could sustain only one interpretation." *Ward*, 595 F.3d. at 174 (simplified). There is no such express authority for retroactive appointments of Special Attorneys.

*Wille* bears some explanation. The plaintiffs there made a similar argument: that Spinrad's ratification was *ultra vires* because ratification is a retroactive power requiring express authority under *Bowen* and no such authority existed. The panel acknowledged that ratification has "a

26

retroactive effect," *Wille*, 158 F.4th at 552, but it refused to apply the *Bowen* rule because, weighing the harms of ratification, the panel decided that ratification of a rule in that context was not "[d]isfavored retroactivity" or "improperly retrospective," *id.* at 553. This panel should not engage in a similar weighing for two reasons.

First, whether a retroactive action is sufficiently harmless and beneficial to be permitted is a "fundamental policy judgment[]" reserved for Congress. *Landgraf*, 511 U.S. at 273. The very purpose of the presumption against retroactivity is to permit retroactive action only where "*Congress itself* has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." *Id.* at 272–73 (emphasis added). Thus, in deciding for itself whether ratification was a "disfavored" or "improper" sort of retroactivity, the *Wille* panel usurped Congress's role. This panel should not follow suit.

Second, this part of *Wille* contradicts earlier Fourth Circuit decisions, discussed above, which required express authority for retroactivity even where retroactivity would be "reasonable," *Hope Natural Gas Co.*, 196 F.2d at 806, or "substantial[ly] justifi[ed]," *Leland*,

27

934 F.2d at 528. As earlier decisions, *Hope Natural Gas Co.* and *Leland*—not *Wille*—control. *McMellon v. United States*, 387 F.3d 329, 332 (4th Cir. 2004) (en banc).

## IV. Conclusion

The district court correctly held that the Attorney General's ratification is forbidden by the common law's delegation rule and, as to Comey, the timing rule. It likewise properly concluded that the Attorney General's retroactive appointment of Halligan as Special Attorney is *ultra vires*. Should this Court reach those issues, it should affirm the district court's conclusions.

DATED: March 10, 2026.

Respectfully submitted,

s/ Michael Poon
MICHAEL POON

*Attorney for Amicus Curiae*
*Pacific Legal Foundation*

28

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. 25-4673(L)    Caption: United States v. Letitia James

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines.  Appellee's Opening/Response Brief  may not exceed 15,300 words or 1,500 lines.  A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type.  See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words.  Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains _____5288_____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word 265 [*identify word processing program*] in
Century Schoolbook, 14-point [*identify font, size, and type style*];

**or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) Michael Poon

Party Name Pacific Legal Foundation        Date: 3/10/2026

12/09/2024  NA/MEO