Nos. 25-4673 (L) and 25-4674

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

UNITED STATES OF AMERICA,
Plaintiff-Appellant
v.
LETITIA JAMES,
Defendant-Appellee

_____

UNITED STATES OF AMERICA,
Plaintiff-Appellant
v.
JAMES COMEY, JR.,
Defendant-Appellee

_____

On Appeal from the United States District Court for the
Eastern District of Virginia, Nos. 2:25-CR-122, 1:25-CR-272
(Hon. Cameron McGowan Currie (D.S.C.))

_____

**REPLY BRIEF FOR THE UNITED STATES**

_____

PAMELA BONDI
  Attorney General

TODD W. BLANCHE
  Deputy Attorney General

HENRY C. WHITAKER
  Counselor to the Attorney General
950 Pennsylvania Ave. NW
Washington, D.C. 20530
Tel: (202) 445-8942
henry.whitaker@usdoj.gov

.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................... 1

ARGUMENT ........................................................................................... 4

I.    SECTION 546 DOES NOT LIMIT THE ATTORNEY
GENERAL'S APPOINTMENT AUTHORITY TO A SINGLE
120-DAY PERIOD ............................................................................ 4

    A.    Nothing in Section 546's text purports to limit the Attorney
General's appointment authority to a single 120-day period ......... 4

    B.    Section 546's structure does not support limiting the Attorney
General's appointment authority to a single 120-day period ......... 9

    C.    History does not support limiting the Attorney General's
appointment authority to a single 120-day period ...................... 13

II.    THE INDICTMENTS ARE VALID REGARDLESS OF THE
VALIDITY OF HALLIGAN'S APPOINTMENT ............................ 16

    A.    Halligan validly obtained and signed the indictments as an
attorney for the government ....................................................... 16

    B.    Even if Halligan were not a government attorney, her actions in
securing and signing the indictments would be entitled to de facto
validity ...................................................................................... 19

    C.    The Attorney General has ratified the indictments, curing any
defect ........................................................................................ 22

    D.    Any defect in securing the indictments was harmless ................ 27

CONCLUSION ...................................................................................... 29

CERTIFICATE OF COMPLIANCE ...................................................... 30

CERTIFICATE OF SERVICE ............................................................... 31

.

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Agostini v. Felton*, 521 U.S. 203 (1997)............................................................ 21

*Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005)................................ 1

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988)................................ 28

*Buckley v. Valeo*, 424 U.S. 1 (1976).................................................................. 21

*Dalton v. Specter*, 511 U.S. 462 (1994)............................................................. 20

*FEC v. NRA Pol. Victory Fund*, 513 U.S. 88 (1994) ......................................... 25

*Hamling v. United States*, 418 U.S. 87 (1974) .................................................. 28

*In re Grand Jury Proceedings*, 671 F. Supp. 5 (D. Mass. 1987) ..................... 2, 15

*Lucia v. SEC*, 585 U.S. 237 (2018)............................................................... 18, 21

*Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235 (1964) ........... 16

*Missouri v. Jenkins*, 495 U.S. 33 (1990) .......................................................... 25

*Navy Fed. Credit Union v. LTD Fin. Servs.*, 972 F.3d 344 (4th Cir. 2020)........ 8, 9

*Nguyen v. United States*, 539 U.S. 69 (2003) ................................................... 21

*NLRB v. SW General, Inc.*, 580 U.S. 288 (2017).............................................. 14

*Norton v. Shelby County*, 118 U.S. 425 (1886)........................................... 19, 21

*People ex rel. Bush v. Collins*, 7 Johns. 549 (N.Y. Sup. Ct. 1811) .................... 19

.

*Robers v. United States*, 572 U.S. 639 (2014) ..................................................... 7

*Ryder v. United States*, 515 U.S. 177 (1995) ............................................. 21, 22

*Salomon-Guillen v. Garland*, 123 F.4th 709 (4th Cir. 2024) ............... 2, 5, 13, 15

*Trump v. United States*, 603 U.S. 593 (2024)................................................... 10

*United States v. Hilario*, 218 F.3d 19 (1st Cir. 2000) ...................................... 10

*United States v. Johnson*, 529 U.S. 53 (2000) .................................................. 5

*United States v. Kelley*, 404 F. Supp. 3d 447 (D. Mass. 2019)......................... 23

*United States v. Nixon*, 418 U.S. 683 (1974) ................................................... 17

*United States v. Ojedokun*, 16 F.4th 1091 (4th Cir. 2021).......................... 25, 26

*United States v. Smith*, 962 F.3d 755 (4th Cir. 2020)........................................ 9

*Wille v. Lutnick*, 158 F.4th 539 (4th Cir. 2025)......................................passim

## Statutes, Rules, and Other Authorities

5 U.S.C. § 3346.................................................................................................. 8

18 U.S.C. § 3288 ............................................................................................... 25

28 U.S.C. § 509.................................................................................................. 17

28 U.S.C. § 510.................................................................................................. 17

28 U.S.C. § 515.................................................................................................. 17

28 U.S.C. § 533.................................................................................................. 17

28 U.S.C. § 541.............................................................................................2, 9, 11

28 U.S.C. § 545.................................................................................................. 6

.

28 U.S.C. § 546.................................................................................passim

Fed. R. Crim. P. 1.................................................................... 18

Fed. R. Crim. P. 6................................................................16, 17

Fed. R. Crim. P. 7................................................................16, 17

U.S. Const. art. II .................................................................. 20

Black's Law Dictionary (12th ed. 2024)..................................... 25

Memorandum from Samuel A. Alito, Jr., Deputy Ass't Att'y Gen., to William
    P. Tyson, Director, Exec. Office for U.S. Att'ys (Nov. 13, 1986) .............. 14

.

# INTRODUCTION

For all the ink they spill, defendants and their squad of amici do not refute the simple logic showing that the Attorney General lawfully appointed Lindsey Halligan to the position of interim U.S. Attorney under the plain terms of 28 U.S.C. § 546. The Attorney General may "appoint a United States attorney for the district in which the office of United States attorney is vacant." *Id.* § 546(a). No one disputes that the office was vacant. The statute contains a single express exception to the Attorney General's appointment power—for individuals whom the Senate voted down. *Id.* § 546(b). No one disputes that the Senate never rejected Halligan's nomination. The Attorney General's appointment carries with it a maximum term of 120 days, *id.* § 546(c)(2), but nothing in the statutory text limits the Attorney General to only one such appointment. It follows that the Attorney General was fully empowered to appoint Halligan, even though a previous interim appointee served. Far from "meaningless formalism," James Br. 18, that is "simply interpret[ing] the statute as written," *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005), as the Court should.

Defendants err in contending that the presence of a 120-day term in Section 546(c)(2), or the fact that the district court gains appointment authority once that term expires under Section 546(d), impliedly preclude the Attorney General from making another appointment once an initial appointee's 120-day

.

term expires. Time-limited appointments do not in themselves preclude reappointment. *See, e.g.*, 28 U.S.C. § 541(b); *Salomon-Guillen v. Garland*, 123 F.4th 709, 716-17 (4th Cir. 2024). And defendants offer no good reason why the district court's appointment authority in Section 546(d) would oust the Attorney General's equally express authority in Section 546(a). Congress commonly authorizes parallel means for temporarily addressing vacancies to enable the government to continue to function. And although defendants, like the district court, fret that the Attorney General's position would render the district court's authority under Section 546(d) insignificant, that worry overlooks that Congress expressly amended the statute in 1986 to give the Attorney General primary authority to make appointments. That regime, contrary to defendants' suggestion, gives Section 546(d) a wide scope: the Executive Branch has since 1986 typically worked with district courts to identify mutually agreeable appointees, despite taking the position at least since 1987 that the Attorney General has parallel appointment authority alongside the district court even once Section 546(d) kicks in.

Far from "unprecedented," Comey Br. 1, a successive appointment was upheld in 1987 by the first court that ever addressed this question after Congress amended the statute in 1986. *See In re Grand Jury Proceedings*, 671 F. Supp. 5, 6-7 (D. Mass. 1987). Although defendants dismiss the significance of that

2

.

decision, they do not deny that, in the ensuing decade, the Executive Branch repeatedly made successive appointments and that Congress amended the statute against the backdrop of that precedent and practice. U.S. Br. 31-33. That history underscores that the text of the statute in fact means what it says.

Defendants fare no better in arguing the alleged appointment defect requires dismissal of the indictments. They do not dispute that the Attorney General had ample authority, apart from Section 546, to authorize Halligan to seek and obtain the indictments here. But defendants offer no cogent reason to think that conferring on Halligan the title "U.S. Attorney," as opposed to some other title that equally would have authorized their prosecution, prejudiced them. They contend that Halligan's appointment somehow conferred on her all the obligations of a government attorney (like grand-jury secrecy) but none of the authority of one (like obtaining indictments). They urge this Court to overrule centuries of Supreme Court precedent on the de facto officer doctrine based on the inferences they draw from a few inapposite cases dealing with the invalid appointments of adjudicators. And they resist the Attorney General's ratification of their indictments but do not defend the district court's primary conclusion on that point.

The Court should reverse.

.

## ARGUMENT

### I.   SECTION 546 DOES NOT LIMIT THE ATTORNEY GENERAL'S APPOINTMENT AUTHORITY TO A SINGLE 120-DAY PERIOD

#### A.   Nothing in Section 546's text purports to limit the Attorney General's appointment authority to a single 120-day period

Defendants cannot overcome Section 546's text.  Subsection (a) gives the Attorney General the authority to "appoint a United States attorney" any time "the office . . . is vacant."  28 U.S.C. § 546(a).  The office was indeed vacant when Halligan was appointed.  When Congress wanted to limit that authority, it did so expressly, specifying that the Attorney General could make appointments "[e]xcept as provided in subsection (b)," which prohibits the Attorney General from appointing someone who was previously nominated by the President but rejected by the Senate.  *Id.* § 546(a)-(b).  Halligan was not rejected by the Senate.  The statute contains no other exceptions.  So the Attorney General properly appointed Halligan to a 120-day term.

Defendants urge the Court to engraft an additional exception on the Attorney General's appointment authority, although they do not seem to agree on what that exception precisely is.  James, like the district court, contends that the statute "affords the Attorney General a single 120-day period between the departure of one Senate-confirmed U.S. Attorney and the appointment of another."  James Br. 10. Comey contends that "the Attorney General's initial

.

appointment of an interim U.S. Attorney starts the 120-day clock; and the clock runs out on the 120th day that an Attorney General appointee is in office." Comey Br. 16; *see also* Comey Br. 31.

Defendants derive both of those proposed exceptions from subsections (c) and (d) of the statute, but they support nothing of the sort. "When Congress provides exceptions in a statute, . . . [t]he proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v. Johnson*, 529 U.S. 53, 58 (2000). When Congress wrote that the Attorney General is authorized to appoint interim U.S. Attorneys "[e]xcept as provided in subsection (b)," 28 U.S.C. § 546(a), it could easily have added "(c) and (d)." It did not. This Court should respect that deliberate omission.

Defendants contend that the Court should infer other, atextual exceptions to Section 546 because subsection (c)(2) limits the term of Attorney General appointments to 120 days, which would prevent, for example, an appointment to a 130-day term. Comey Br. 20; James Br. 20. But the fact that subsection (c)(2) establishes a *time limit* for an appointment says nothing about the Attorney General's authority to make *additional* appointments for new 120-day terms. *See Salomon-Guillen*, 123 F.4th at 717-18. Nor, contrary to James' suggestion (at 20) does the fact that the statute generally requires U.S. Attorneys to live in the

.

district, once appointed, 28 U.S.C. § 545, bolster defendants' notion that the text of subsection (c) implicitly limits the Attorney General's appointment authority if she previously made an appointment more than 120 days prior.

Comey strains (at 17) to locate that proposed exception in subsection (c)'s use of the indefinite article "a," which he surmises means that an appointee's 120-day term runs from "the Attorney General's initial appointment of *any* interim U.S. Attorney," not her own appointment. But if Congress had intended that rule, it would have said that the 120-day term runs "after any appointment" or "after an initial appointment," *not* "after appointment," which naturally refers to the appointment of the person appointed. 28 U.S.C. § 546(c)(2). And even that amendment would not yield the reticulated rule, championed both by James and the district court (but apparently not Comey), that the only "initial" appointment that counts is one following the departure of a "Senate-confirmed U.S. Attorney." James Br. 10; J.A. 99.

If anything, subsection (c)'s use of "a person appointed" refutes Comey's argument. "[P]erson appointed" is the precise phrase modified by "a." 28 U.S.C. § 546(c). In other words, *any* "person appointed" by the Attorney General "may serve until . . . the expiration of 120 days after appointment" of that person. 28 U.S.C. § 546(c)(2). The indefinite article "a" only confirms that

.

multiple, unspecified persons may be appointed by the Attorney General, rather than just one, as even Comey concedes (at 19) the statute allows.

Comey also agrees (at 20-21) that his interpretation would make the word "appointment" mean something different in subsection (c)(2) than it does every other time Section 546 uses it. But "identical words used in different parts of the same statute are presumed to have the same meaning." *Robers v. United States*, 572 U.S. 639, 643 (2014) (cleaned up). As explained in the government's opening brief (at 20-21), subsections (b) and (d) both use the word "appointment" to refer to the appointment of the specific person at issue, not some "initial" appointment of a different person in the past. Comey's only response (at 20-21) is that those subsections do not use the words "[a] person" and "after" before "appointment." But those minor surrounding differences do not give those same words such a massively "different meaning."

Unable to locate any textual support for her position in Section 546, James turns to other statutes. According to James, because the 210-day time limit in the Federal Vacancies Reform Act (FVRA) for acting officials designated under *that* statute runs from the date the office became vacant rather than the date the acting official was designated, then Section 546(c)(2)'s 120-day term for an interim U.S. Attorney appointed by the Attorney General somehow must begin to run not on the date of that appointment, but from the first such appointment.

.

*See* James Br. 25.  But that feature of the FVRA only underscores that when Congress wants to make an appointee's term run from some date other than the date of her appointment, it says so expressly.  5 U.S.C. § 3346(a)(1) ("210 days *beginning on the date the vacancy occurs*" (emphasis added)).  It said nothing of the sort in Section 546(c)(2).

As for subsection (d), defendants invoke the negative-implication canon, arguing that the grant of authority to the district court to appoint interim U.S. Attorneys upon the expiration of an Attorney General appointment implies that the Attorney General lacks such authority.  Comey Br. 18, James Br. 17-18.  But the negative-implication canon applies when a statute expresses "one item" and leaves another "unmentioned."  *Navy Fed. Credit Union v. LTD Fin. Servs.*, 972 F.3d 344, 360-61 (4th Cir. 2020).  Section 546(a) expressly mentions that the Attorney General may appoint an interim U.S. Attorney *whenever* the office "is vacant."  Relying on a negative implication to exclude something the statute expressly provides would flip the canon on its head.

Subsection (d) states only that the district court "may" appoint an interim U.S. Attorney once its authority is triggered, not that *only* the district court may do so.  Comey responds (at 18-19) that the word "may" "confer[s] categorical permission that cannot be displaced." (quotation omitted)  But the point is not that the district court lacks "categorical permission" to make an appointment,

8

.

only that the Attorney General *also* has permission to do so. Anyway, as Comey concedes (at 18, 23), Section 546(d) effectively *can* be displaced because the President can fire a judicial appointee and designate an acting U.S. Attorney under the FVRA instead. Congress frequently specifies multiple ways for the government to address vacancies. *See United States v. Smith*, 962 F.3d 755, 763 n.1 (4th Cir. 2020). Thus, subsection (d)'s conferral of appointment authority on the district court cannot "reasonably be thought to occupy the field" sufficient to oust the Attorney General's appointment authority under subsection (a). *Navy Fed. Credit Union*, 972 F.3d at 361.

## B. Section 546's structure does not support limiting the Attorney General's appointment authority to a single 120-day period

With no textual leg to stand on, defendants level a series of policy arguments recast as "statutory structure." None matter, given the text of Section 546; and none persuade even on their own terms.

Defendants claim that their interpretation is necessary to preserve Section 541(a)'s default rule of U.S. Attorney appointments by the President with advice and consent of the Senate. Comey Br. 24-25; James Br. 22. But under defendants' interpretation, district courts can still unilaterally appoint U.S. Attorneys indefinitely without the President or Senate being involved at all. A district court appointee is permitted to serve indefinitely "until the vacancy is filled," and unlike an Attorney General appointee, does not even need to have

9

.

her appointment revisited every 120 days.  28 U.S.C. § 546(d); *see, e.g.*, *United States v. Hilario*, 218 F.3d 19, 21 (1st Cir. 2000) (court-appointed interim U.S. Attorney served in that capacity over six years).

Comey argues (at 25) that giving the district court indefinite exclusive appointment authority under subsection (d) would at least "provid[e] an incentive" for the President to appoint a permanent U.S. Attorney with the advice and consent of the Senate.  But that assumes that the district courts principally appoint people unsatisfactory to the President, which Comey admits is generally not the case.  *See* Comey Br. 24.  Defendants' interpretation thus provides little disincentive, especially given that a district court appointment is indefinite.

Recognizing that fatal defect, Comey moves the goalposts, arguing (at 26) that court-appointed interim U.S. Attorneys "at least have the backing of a different branch—thereby ensuring that they were selected based on merit rather than loyalty to the President."  Comey may well prefer prosecutors who are loyal to judges rather than to the President. But it is unclear why this Court should attribute that preference to Congress in providing for the appointment of prosecutors, who wield quintessential executive power on the President's behalf. *See Trump v. United States*, 603 U.S. 593, 620 (2024).  Nor is there any indication that Congress agreed with Comey's assumption that district judges are more

10

.

likely to consider "merit" than the Attorney General, who unlike judges is ultimately responsible for supervising her appointees.

In any event, defendants' speculation that authorizing the Attorney General to make successive appointments "would inevitably result in Section 546 displacing Section 541 as the default mechanism for appointing U.S. Attorneys," James Br. 22, is unsupported by history. As defendants agree, appointments under Section 541 have remained the norm. *See* Comey Br. 26; James Br. 22. And that is so even though administrations of both parties have historically agreed, with no court questioning it until last year, that the Attorney General may make successive appointments under Section 546(a). *See* U.S. Br. 32.

Defendants worry that, if the government wins this case, the Executive Branch might exclusively rely on successive 120-day appointments and thus prevent the district court from ever exercising its appointment authority, rendering subsection (d) "superfluous." Comey Br. 21; James Br. 21. Such machinations would burden the Attorney General with the need to personally appoint every 120 days interim U.S. Attorneys in 94 different U.S. Attorney's offices and thus seem most unlikely to come to pass. The Executive Branch has taken the view that the Attorney General has parallel appointment authority alongside the district court since at least 1987, *see infra* pp. 13-15, and has never

11

.

behaved in that way.  Instead, it has generally been able to work with district courts to settle on a mutually agreeable interim U.S. Attorney, thus clearing the way for the district court to make an indefinite appointment under Section 546(d).  In any event, preventing district court appointments is baked into the statute even under defendants' reading for two reasons:  (1) since 1986, the statute has denied the district court any appointment authority unless an Attorney General appointment under Section 546(a) first expires, U.S. Br. 28; and (2) the President may fire at-will any district-court appointee, Comey Br. 23.

Finally, defendants argue that the Attorney General must not have the authority to make sequential appointments because that would render the 120-day limit on an Attorney General appointment meaningless. *See* Comey Br. 26, 29; James Br. 28.  But that 120-day limit fosters accountability in the absence of a Senate-confirmed or court-appointed U.S. Attorney, requiring the Attorney General to periodically revisit any of her choices she wishes to continue running an office.  The need to avoid that cumbersome process preserves ample incentive for the Executive Branch to work with the district courts to find mutually agreeable interim appointees.

This Court rejected a similar argument to defendants' in *Salomon-Guillen*. There, the Court considered whether a regulation that "authorized the Director of the Executive Office for Immigration Review to" appoint temporary members

12

.

of the Board of Immigration Appeals "for terms not to exceed six months" permitted reappointments. *Salomon-Guillen*, 123 F.4th at 714. This Court concluded that making an appointment time-limited "doesn't restrict the power to appoint the same person to multiple consecutive terms." *Id.* at 717. Similarly, Section 546(c)(2) limits an Attorney General appointee's term to 120 days, but that has no bearing on the number of appointments the Attorney General may make.

## C. History does not support limiting the Attorney General's appointment authority to a single 120-day period

Defendants also have no good answer for the historical practice immediately following Section 546's enactment and leading up to the 2007 amendment, which reenacted the exact same statutory language that a court and the Executive Branch had construed to permit successive appointments. U.S. Br. 31-33.

Defendants do not dispute that Attorneys General from administrations of both major parties made successive interim U.S. Attorney appointments after initial appointments expired. Nor do they dispute that the only court decision on the lawfulness of any of those subsequent appointments upheld it within a year of the statute's enactment. *See* U.S. Br. 32. Rather than refute that historical practice, defendants dismiss it as "only a handful of anecdotes." James Br. 31; *see* Comey Br. 31. Yet defendants offer no evidence of any

13

.

contrary practice.  And the relative infrequency of subsequent Attorney General appointments is easily explained by Senate confirmation of Presidential appointees under Section 541 and the district courts' typical practice of reappointing the Attorney General's appointee indefinitely, which defendants acknowledge is the norm.  Comey Br. 24; James Br. 33-34.

Contrary to defendants' contentions, Comey Br. 31; James Br. 31, this is not a case like *NLRB v. SW General, Inc.*, 580 U.S. 288, 308 (2017).  There, the United States relied on *post*-enactment Executive Branch practice to support an interpretation of a statute that the Supreme Court concluded was *contrary* to its plain meaning.  Here, the *pre*-enactment Executive Branch practice is *consistent* with the plain meaning of the text that the 2007 Congress re-adopted.

Against the weight of contemporaneous historical practice, defendants point, as the district court did, to a memorandum from the Office of Legal Counsel.  Comey Br. 28; James Br. 32 (citing Memorandum from Samuel A. Alito, Jr., Deputy Ass't Att'y Gen., to William P. Tyson, Director, Exec. Office for U.S. Att'ys 3 (Nov. 13, 1986) (Alito Mem.), https://perma.cc/SD5Q-7CPH).  But even that memorandum concluded that Section 546 may authorize the Attorney General to make subsequent appointments "if the district court refuses to make such appointments, or fails to do so within a reasonable period."  Alito Mem. 4, which is irreconcilable with defendants' arguments that the

.

expiration of an Attorney General appointment transfers exclusive appointment authority to the district court.  And while that memorandum did posit limits on the Attorney General's successive-appointment authority, those limits are not grounded in the text of Section 546—unsurprisingly given the memorandum's focus on "Congressional purpose" and a single legislative floor statement, *see id.* at 3.  *See* U.S. Br. 35-36.  As a district court observed when the Attorney General made a successive appointment not even 10 months later, the only "limit[]" the statute places on a successive appointment by the Attorney General is "subsection (b)."  *In re Grand Jury Proceedings*, 671 F. Supp. at 7.

Defendants emphasize Congress's 2006 repeal of the 120-day limit for Attorney General appointments only for Congress to restore that limit one year later.  Comey Br. 28-29; James Br. 27-28.  But defendants are wrong that the government's position would deny that amendment effect.  Under the 2006 version, an Attorney General could appoint an interim U.S. Attorney to a single, indefinite term.  After Congress reinstated the original 120-day limit, she cannot.  Again, a time-limited appointment is not meaningless just because reappointment is possible.  *See Salomon-Guillen*, 123 F.4th at 717-18.

.

## II.   THE INDICTMENTS ARE VALID REGARDLESS OF THE VALIDITY OF HALLIGAN'S APPOINTMENT

Even if the Attorney General lacked authority to appoint Halligan interim U.S. Attorney, it does not follow that the indictments returned by two duly empaneled grand juries are invalid.

### A.   Halligan validly obtained and signed the indictments as an attorney for the government

Defendants do not dispute that one need not be a U.S. Attorney to obtain and sign indictments because that authority can be exercised by any "attorney for the government" authorized to prosecute crimes. Fed. R. Crim. P. 6(d)(1), 7(c)(1). Nor do defendants dispute that the Attorney General enjoys broad authority to employ attorneys to prosecute crimes. Thus, whether the Attorney General's September 22 appointment order properly conferred on Halligan the office of U.S. Attorney is irrelevant to whether she had authority to obtain and sign the indictments. The only question is whether the order employed Halligan as a government attorney and authorized her to prosecute crime. It plainly did.

Defendants respond that Halligan was not conferred the authority of a government attorney merely because the Attorney General cited the wrong statute. But whether she correctly cited "the source of [her] power is without legal significance." *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248 (1964). A concededly lawful delegation does not become unlawful

16

.

simply because the delegating official failed to correctly cite the statute that authorizes the delegation.  *See id.*

Comey argues (at 44) that the Attorney General could not authorize Halligan to represent the United States in criminal proceedings in a capacity other than interim U.S. Attorney because "someone who seeks a grand jury indictment . . . is an 'Officer of the United States.'"  But that is irrelevant, because Halligan *did* have an appointment to a "statutorily created office," Comey Br. 44, given that Congress has enacted statutes "vest[ing] in [the Attorney General] the power to appoint subordinate officers to assist [her] in the discharge of [her] duties," *United States v. Nixon*, 418 U.S. 683, 694 (1974) (citing 28 U.S.C. §§ 509, 510, 515, 533; and upholding the creation of "a Special Prosecutor" subject, like Halligan, to the Attorney General's ultimate supervision).  Nothing more is required for Halligan to have had the authority to obtain and sign indictments.  Fed. R. Crim. P. 6(d)(1), 7(c)(1).

Tellingly, when presented with the absurd consequence that Halligan would not be bound by the grand-jury secrecy rule if she were somehow not an attorney for the government within the meaning of the Federal Rule Rules of Criminal Procedure, Comey proposes giving the phrase "attorney for the government" a different meaning in Rule 6(e)(2)(B)(vi) than in Rules 6(d)(1) and 7(c)(1).  According to Comey (at 46), for purposes of the grand-jury secrecy rule-

17

.

—and only that rule—the phrase "attorney for the government" must mean "those *purporting to be* an attorney for the government."[1] That claim is untenable because all uses of the phrase "attorney for the government" in the rules are governed by a single definition. Fed. R. Crim. P. 1(b)(1). The only plausible construction of the rules is that Halligan had both the authority *and* the obligations that come with status as a government attorney, even if she lacked the full authority of an interim U.S. Attorney.

Finally, even if the September 22 order appointing Halligan interim U.S. Attorney failed to make her an "attorney for the government," the October 31 order appointing Halligan to the office of Special Attorney, effective September 22, did so. U.S. Br. 40-41. Comey claims that this appointment was ineffective because, although unauthorized acts can be ratified, unauthorized appointments cannot be. Comey Br. 47 (citing *Wille v. Lutnick*, 158 F.4th 539, 551 n.11 (4th Cir. 2025) and *Lucia v. SEC*, 585 U.S. 237, 251, 252 n.6 (2018)). But the Attorney General was not attempting to ratify *someone else's* invalid appointment of Halligan in an agency-law sense, which was the matter discussed in the cited footnotes. She was simply clarifying the effective date of *her own* employment

---

[1] Despite contesting the de facto officer doctrine's applicability, *see infra* pp. 19-22, Comey appears to take the position that de facto officers are bound by the grand-jury secrecy rule.

.

of Halligan as a Special Attorney.  And as the government pointed out in its opening brief, it is not uncommon for employers to formalize an employee's start date after the employee has already begun her employment.  U.S. Br. 41-42.  Defendants do not even respond to that point, much less identify anything that prohibits the Attorney General from doing the same when she employs attorneys for the government.

**B.**  **Even if Halligan were not a government attorney, her actions in securing and signing the indictments would be entitled to de facto validity**

For centuries, courts have applied the de facto officer doctrine to uphold the validity of de facto officers' past acts "however illegal the mode of their appointment," even if "unconstitutional."  *Norton v. Shelby County*, 118 U.S. 425, 445-46 (1886).  Defendants do not dispute that the de facto officer doctrine "has such deep roots in Anglo-American law that early American courts considered it 'too well settled to be discussed.'"  U.S. Br. 43 (quoting *People ex rel. Bush v. Collins*, 7 Johns. 549, 552 (N.Y. Sup. Ct. 1811) (Kent, C.J.)).  Defendants' efforts to escape the force of this doctrine fail.

Defendants first claim, like the district court, that notwithstanding Supreme Court precedent to the contrary, this Court may hold the de facto officer doctrine inapplicable to any appointment that violates the Appointments Clause.  But the Court need not address that question because there is no

.

Appointments Clause violation. The Appointments Clause does not prohibit a department head like the Attorney General from appointing an inferior officer. It merely vests Congress with the authority to dictate the manner of appointment "by law." U.S. Const. art. II, § 2, cl. 2. That does not transform any violation of one of those laws into an Appointments Clause violation. The Supreme Court has held that violating a statute does not become a constitutional violation just because the Constitution gave Congress the authority to enact the statute. *See Dalton v. Specter*, 511 U.S. 462, 472 (1994).

Comey attempts (at 34) to distinguish *Dalton* on the ground that the Appointments Clause contains "express text" giving Congress the authority to legislate inferior-officer appointment. But the Constitution also contains "express text" requiring the President to "faithfully execute[]" "the Laws" that Congress enacts, U.S. Const. art. II, § 3, but that does not turn every claim that the President misconstrued the meaning of a statute into a constitutional claim. *See Dalton*, 511 U.S. at 472. As the Supreme Court explained, any other rule would permit evasion of doctrines that limit judicial review of alleged statutory violations compared to constitutional ones, *id.* at 474—which is exactly what defendants are attempting here in straining to characterize their statutory arguments in constitutional terms.

.

Relying on *Nguyen v. United States*, 539 U.S. 69 (2003), defendants argue that the de facto officer doctrine does not apply even if Halligan's appointment was only a statutory violation. Comey Br. 38-39; James Br. 43. But like the other two cases defendants rely on to escape the de facto officer doctrine, *see infra* pp. 21-22, *Nguyen* expressly limited its scope to "alleged irregularities in the assignment of *judges*" and disclaimed that its analysis implicated "the force of the de facto officer doctrine in other circumstances." *Id.* at 77 (emphasis added).

And even if Halligan's appointment violated the Appointments Clause, Supreme Court precedent requires applying the de facto officer doctrine. *See* U.S. Br. 45 (citing *Buckley v. Valeo*, 424 U.S. 1, 142 (1976)); *Norton*, 118 U.S. at 446. Defendants urge that those cases have been impliedly overruled by *Ryder v. United States*, 515 U.S. 177 (1995), and *Lucia v. SEC*, 585 U.S. 237 (2018). But they ignore that this Court has no authority to disregard on-point Supreme Court precedent based on perceived tension with later precedent. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997). In any event, defendants cannot point to a single case where, contrary to *Buckley* and *Norton*, the Supreme Court has declined to apply the de facto officer doctrine to a non-adjudicatory officer. And although Comey declares (at 38) that there is no "coherent basis" for applying the doctrine to prosecutors but not adjudicators, the Court provided the basis for doing so in *Ryder*. The Court explained that the reason for the de facto officer doctrine—

.

preventing the disruption to public order by calling into question every past official act taken by an unlawfully appointed officer—applies with much less force to an adjudicator whose only acts that will be undone will be the relatively few judgments "pending on direct review." 515 U.S. at 185. The same cannot be said of a prosecutor.

### C. The Attorney General has ratified the indictments, curing any defect

Ultimately, it does not matter whether Halligan could validly obtain and sign the indictments, because in ratifying Halligan's actions, the Attorney General "made it such that [s]he" obtained and signed the indictments herself. *Wille*, 158 F.4th at 550; *see* U.S. Br. 46-47.

Defendants do not even defend the principal basis (and the only basis for James) on which the district court held the Attorney General's ratification invalid—namely, that the Attorney General could not ratify Halligan's actions because Halligan was unlawfully appointed. *See* U.S. Br. 47-48. For good reason—the whole point of ratification doctrine is for a principal to cure the actions of an unlawfully appointed agent, which is why this Court and others routinely apply ratification to the actions of officers allegedly appointed in violation of the Appointments Clause. U.S. Br. 47-48. So defendants pivot to arguing that an indictment categorically is not subject to ratification, despite citing no authority. Comey Br. 49-50; James Br. 43-45.

22

.

At the outset, defendants are wrong that no court has ever applied anything like ratification to an indictment. Many courts, for example, have relied in part on a U.S. Attorney's approval of an indictment to reject a defendant's attempt to invalidate it on the ground that the prosecutor who obtained and signed it was not a licensed attorney. *See United States v. Kelley*, 404 F. Supp. 3d 447, 453 (D. Mass. 2019), *aff'd*, 989 F.3d 67 (1st Cir. 2021); *see id.* at 452-53 (collecting cases). That makes sense because criminal prosecution, like most government activity, "functions through chains of principals and agents." *Wille*, 158 F.4th at 547-48; *see* 28 U.S.C. § 509 ("All functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General . . . ."). Thus, "ordinary agency principles," including ratification, govern the principal–agent relationships involved in criminal prosecution. *Wille*, 158 F.4th at 548. As this Court explained in *Wille*, "ordinary agency principles" like ratification "will apply absent statutory evidence to the contrary." *Id.*

Defendants cite no statutory evidence that Congress foreclosed ratification as a mechanism to cure an indictment obtained by an invalidly appointed prosecutor. Their argument fails for that reason alone. Instead, defendants claim ratification should not apply because prosecution implicates a person's liberty. But so did the regulation in *Wille*, which deprived the plaintiffs of

.

"access to . . . their livelihoods."  158 F.4th at 543 (cleaned up).  In any event, it is unclear how ratification negatively impacts defendants' liberty interests unless their liberty interest is just avoiding prosecution despite duly empaneled grand juries finding probable cause that they committed federal crimes.  Ratification *cures* the defect by ensuring that the principal with authority—the Attorney General—stands behind the indictments.  *See id.* at 551 (explaining that ratification ensures compliance with the Appointments Clause).  "So ratification fixes [defendants'] problem.  There's no inequity in that."  *Id.*

Defendants further argue that Halligan's invalid appointment rendered the indictments "void" and a void act "cannot be ratified."  Comey Br. 51; James Br. 45.  But the indictment was not "void" in the sense used in defendants' cited authorities—namely, that it would have been defective even if obtained by the Attorney General.  It was "void" only in the sense that the Attorney General allegedly did not properly authorize Halligan to obtain it.  And that is precisely the type of "voidness" that ratification is designed to cure.  The regulation in *Wille* too was assumed "void" until it was ratified.  *See* 158 F.4th at 543-44.

Comey (but not James) also argues (at 52) that his indictment could not be ratified because the Attorney General lacked authority to obtain and sign the indictment at the time of ratification because the "statute of limitations . . . ha[d] accrued."  But "[t]he return of an indictment tolls the statute of limitations on

24

.

the charges contained in the indictment . . . ." *United States v. Ojedokun*, 16 F.4th 1091, 1109 (4th Cir. 2021). "Toll" means "to stop the running of." *Toll*, Black's Law Dictionary (12th ed. 2024). Thus, the statute of limitations had not run because it stopped running when the grand jury returned the indictment in this case. That makes this case different from *FEC v. NRA Pol. Victory Fund*, 513 U.S. 88 (1994). There, the Solicitor General tried to ratify an unauthorized certiorari petition out of time. *Id.* at 98. Although Comey (at 52) equates that situation to this case, unlike the statute of limitations, the deadline to file a certiorari petition in a civil case is jurisdictional and not subject to tolling. *See Missouri v. Jenkins*, 495 U.S. 33, 45 (1990). Comey is simply wrong (at 53) that the Solicitor General "could have filed an amended petition" out of time.

Aside from the tolling effect of the indictment, the statute of limitations also was extended by six months under 18 U.S.C. § 3288 following the indictment's dismissal. That serves as another reason the Attorney General was not time-barred from obtaining an indictment against Comey at the time of ratification. Yet Comey insists (at 53-54) that the Court must act as if she was because the Court should pretend that the indictment in this case was never returned and then, operating under that fiction, ask whether the Attorney General would have been time-barred at the time of ratification. Again, Comey cites no support for this theory, and it makes no sense. The point of the

25

.

requirement that the ratifier have authority to do the act at the time of ratification is to ensure that the ratifier is not using ratification to do something they otherwise lack authority to do. Ratification thereby "ensures that those who exercise . . . executive power are" lawfully vested with the authority to do so. *Wille*, 158 F.4th at 551. The Attorney General did not use ratification to do something she otherwise could not. On the day of ratification, she had the authority to obtain and sign an indictment against Comey herself.

Lastly, Comey claims that Section 3288 and the superseding-indictment doctrine would not apply because the original indictment was "void." That is not a serious argument. Section 3288 authorizes reindictment within six months if a felony indictment is "dismissed *for any reason*." (emphasis added). There is no dismissed-for-voidness exception, especially since the whole point of the statute is to allow the government to cure dismissals based on legal defects. And this Court expressly rejected Comey's superseding-indictment argument in *Ojedokun*. *See* 16 F.4th at 1109 n.9 (rejecting argument that a "defective" indictment does not toll the statute of limitations). Comey claims (at 56) that the defect in *Ojedokun* was a "technical error" that "does not void an indictment." That purported distinction is untethered to reality. The error in *Ojedokun* was that a money-laundering indictment failed to allege a qualifying "unlawful activity that the proceeds to be laundered derived from"—a necessary

26

.

element of the offense.  *Id.* at 1108.  In other words, the indictment failed to allege a crime.  That is obviously far less of a "technical error" than a prosecutor's use of the wrong title.

### D.  Any defect in securing the indictments was harmless

Defendants come nowhere near establishing prejudice from the Attorney General's use of Section 546, rather than various other statutes, to give Halligan prosecutorial authority.  Defendants do not dispute that the Attorney General could have appointed Halligan as a prosecutor through some other mechanism, such as appointing her a Special Attorney or an Assistant U.S. Attorney.  So the only question is whether the Attorney General's use of Section 546 specifically harmed them.  The question answers itself.

Although the district court held that the Attorney General's use of Section 546 over some other mechanism constituted "fundamental error," James hardly defends that conclusion.  She offers a single sentence (at 45) that simply repeats the conclusion.  Comey spills more ink (at 39-41) on the fundamental-error point, but even he can only muster a description of why Halligan's appointment was error, sprinkled with some conclusory assertions that it was fundamental. To date, neither defendant nor the district court has been able to articulate how the Attorney General's use of Section 546 instead of another statute affected the

.

grand-jury proceedings at all, let alone rendered them "fundamentally unfair." U.S. Br. 54.

Defendants suggest that they would not have been indicted had Halligan not been appointed. Comey Br. 41; James Br. 46-47. But that is not the relevant question. The question is whether the grand jury would have made a different decision had Halligan been appointed lawfully. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (asking whether the error "substantially influenced the grand jury's decision to indict"). And the answer is plainly no.

James does not even argue that Halligan's appointment under Section 546 rather than some other statute affected the grand jury's decision to indict. Comey, for his part, surmises (at 42-43) that perhaps the grand jury indicted him only because Halligan was "cloaked with the authority of a U.S. Attorney," whereas it might have "viewed any indictment with a more skeptical eye" had she appeared under a different title. But grand jurors are oath-bound to make their decisions based on the evidence, and they enjoy a "presumption of regularity" in their decisions. *Hamling v. United States*, 418 U.S. 87, 139 n.23 (1974). Comey's baseless and implausible speculation that the grand jurors in his case may have violated their oaths and engaged in egregious misconduct by basing their decisions on the prosecutor's title cannot sustain a claim of prejudice.

28

.

## CONCLUSION

The Court should reverse the orders of the district court.


March 13, 2026                    Respectfully submitted,


                                  PAMELA BONDI
                                    Attorney General

                                  TODD W. BLANCHE
                                    Deputy Attorney General

                                  /S/ *Henry C. Whitaker*
                                  HENRY C. WHITAKER
                                    Counselor to the Attorney General
                                  950 Pennsylvania Ave. NW
                                  Washington, D.C. 20530
                                  Tel: (202) 445-8942
                                  henry.whitaker@usdoj.gov

.

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6,439 words, not including items excluded in accordance with Fed. R. App. P. 32(f).

2.    This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Calisto MT 14-point font in text and Calisto MT 14-point font in footnotes.

Dated:      March 13, 2026

/s/ *Henry C. Whitaker*
HENRY C. WHITAKER

.

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2026, I electronically filed the foregoing document with the United States Court of Appeals for the Fourth Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Henry C. Whitaker*
HENRY C. WHITAKER